Mildred K. O'Linn (State Bar No. 159055)
   *missy.olinn@manningkass.com*
Yury A. Kolesnikov (State Bar No. 271173)
   *yury.kolesnikov@manningkass.com*
Roslynn Wilfert (State Bar No. 303024)
   *roslynn.wilfert@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

*Attorneys for Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.V. and X.V., minors by and through their guardian *ad litem*, Karla Juarez; D.V., a minor, by and through his guardian *ad litem*, Elias Valdivia; individually and as successors-in-interest to Daniel Luis Valdivia, deceased; JESSICA VALDIVIA; LUIS VALDIVIA JR., individually,<br><br>                      Plaintiffs,<br><br>v.<br><br>CITY OF COVINA; VANESSA CARDOZA; DAVID MEADOWS; BILLY SUN; DOES 1–10, inclusive,<br><br>                      Defendants. | Case No. 5:23-cv-1562 CBM (SHK)<br><br>**Defendants' Statement of Uncontroverted Facts in Support of Motion for Summary Judgment as to Plaintiff's Complaint**<br><br>Date: July 15, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Consuelo B. Marshall<br>Courtroom: 8D<br><br>Filed Dated: August 4, 2023<br>Trial Date: October 21, 2025 |

---

Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary Judgment

Pursuant to Civ. L.R. 56-1, Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun submit their Statement of Uncontroverted Facts.

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 1 | On April 9, 2022, Jonathan Logan, an employee of Country Liquor, located at 124 East Arrow Highway in the City of Covina, went to the parking lot in front of the store to take out the trash and smoke a cigarette. | Ex. 4 at 10:55–11:05 |
| 2 | While he was outside, Logan was approached by Valdivia, who informed Logan that he was with a gang and that he "kill[s] n[****]s like you, all day." | Ex. 4 at 11:00–11:30 |
| 3 | Valdivia also showed Logan what "looked like a g[***] d[***] gun." | Ex. 4 at 11:35–11:42 |
| 4 | According to Logan, Valdivia told him: "I'll shoot you, m[***] f[***]." | Ex. 5 at 22:40–22:45 |
| 5 | When asked to describe the gun, Logan said it was "black" and, after noting that he "know[s] guns," described it as a "45." | Ex. 4 at 11:42–11:48 |
| 6 | According to Logan, "the m[***] f[***] was real." | Ex. 4 at 11:47–11:50; see also Ex. 5 at 24:45–25:05 |
| 7 | When asked what type of gun it was, Logan said: "It was a Glock. It was a g[***] d[***] Glock." | Ex. 4 at 11:49–11:53 |
| 8 | And then he added, twice more: "It was real." | Ex. 4 at 11:53–11:54, 12:29–12:31 |
| 9 | Logan also explained that he has seen fake guns before, and it appeared to him that the gun that Valdivia showed him was "real," not fake. | Ex. 4 at 13:25–13:40; Ex. 5 at 24:45–25:05 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 10 | To Logan, the gun looked like a real Glock because it did not have an orange tip (that a fake gun would normally have). | Ex. 5 at 7:20–7:35 |
| 11 | Logan explained that Valdivia had the gun in his hand and showed it to him about four to five times. | Ex. 4 at 12:00–12:31, 14:30–15:25, 16:52–17:05 |
| 12 | Valdivia told Logan that he wanted to "use" the gun and to shoot somebody. | Ex. 4 at 15:28–15:41; Ex. 5 at 22:20–22:40 |
| 13 | And to Logan, it seemed like Valdivia "wanted to shoot someone tonight" and "wanted to shoot a person." | Ex. 4 at 12:29–12:41, 15:49–15:52 |
| 14 | During his interview with a detective, Logan emphasized several times that the way Valdivia was acting, it looked as if he wanted to kill someone or get himself killed. | Ex. 5 at 23:00–23:30, 24:15–24:30, 25:00–25:20 |
| 15 | The incident was witnessed by multiple persons, who became scared of Valdivia brandishing the gun and threatening people. | *See, e.g.*, Exs. 6, 7, 8; *see also* Ex. 5 at 10:18–10:28 |
| 16 | At least three of those witnesses called 911 to report the incident. | Exs. 6, 7, 8 |
| 17 | Thus, a Starbucks manager called 911 to report that there was a man outside "flashing his gun," which scared the customers. | Ex. 6 at 0:02–0:10, 1:00–1:10, 1:27–1:31, 2:00–2:07 |
| 18 | Another caller told 911 that there was a customer outside of his business having an argument and it seemed like he had a gun. | Ex. 7 at 0:10–0:22 |
| 19 | According to the caller, the man was "arguing with people" and "showing his gun." | Ex. 7 at 0:39–0:46 |

3
Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary Judgment

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 20 | A third person also called 911 to report a man with a gun outside of a liquor store next to Starbucks. | Ex. 8 at 0:00–0:09 |
| 21 | According to the caller, "there were people running away from him." | Ex. 8 at 0:10–0:15 |
| 22 | The caller indicated that the man was holding the gun in his hand. | Ex. 8 at 0:15–0:25 |
| 23 | She described him as a Hispanic male wearing a black sweater and black shorts. | Ex. 8 at 0:25–0:35 |
| 24 | The caller described the gun as "a black handgun." | Ex. 8 at 0:54–1:05 |
| 25 | At approximately 10:12 p.m., dispatch broadcasted to the officers that a 40-year-old Hispanic male with facial hair wearing a black sweater and shorts was at a liquor store "holding a can of beer **and a black handgun** in his hands." | Ex. 9; Ex. 24 at CPD000092 |
| 26 | At approximately 10:15 p.m., dispatch advised the officers that the suspect was **actively disturbing the peace** with others in the area and that there were already three calls received. | Ex. 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47 |
| 27 | At approximately 10:16 p.m., just as the officers arrived at the scene, dispatch advised the officers that the subject **had the gun "in his front pocket."** | Ex. 11; Ex. 24 at CPD000092; Ex. 1 at 2:18–2:23 |
| 28 | Several officers responded to the scene, including Officers Sun, Meadows, and Cardoza. | Ex. 28 at 53:14–54:2; Ex. 29 at 60:15–21 |
| 29 | While enroute, Officer Sun took charge of setting up a containment and directed other units as to where they should park once they are on the scene. | Ex. 28 at 24:12–15, 53:21–54:10; Ex. 13 at 20:9–13; Ex. 29 at 46:23–47:13 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 30 | To that end, Officer Sun (1) told Officer Meadows that he and Officer Sun would park near the Starbucks and approach on foot, (2) directed Officers Dixon and Cardoza to the east side, (3) directed Officer Avila to be on the northwest side, and (4) directed the officer arriving after Officers Sun and Meadows to be on the south side. | Ex. 28 at 52:15–18, 53:21–54:10; Ex. 29 at 47:6–48:2 |
| 31 | Officers Sun and Meadows arrived on the scene and exited their patrol vehicles at approximately **10:16:30 p.m.** | Ex. 1 at 2:23; Ex. 2 at 0:24 |
| 32 | They walked over to the liquor store and obtained visual of Valdivia approximately twenty seconds later. | Ex. 1 at 2:41; Ex. 2 at 0:39. |
| 33 | Officer Cardoza arrived on the scene shortly before Officers Sun and Meadows did and was in the process of observing Valdivia from the north as Officers Sun and Meadows approached him from the west. | Ex. 30 at 14:16–23, 55:6–8, 56:19–21; Ex. 21 at 23:10–16, 24:9–13 |
| 34 | At **10:16:54 p.m.**, Officer Sun yells to Valdivia: "Hey, let me see your hands! Let me see your hands!" and when that fails to get Valdivia's attention, continues with: "Put your hands up! Don't fucking move!" | Ex. 1 at 2:43–2:47 |
| 35 | Officer Meadows similarly tells Valdivia: "Police! Put your hands up! Put your hands up!" | Ex. 2 at 0:40–0:44 |
| 36 | Instead of complying, Valdivia moves the beer bottle that he had in his right hand to his left hand and ***immediately reaches for his waistband with his right hand***. | Ex. 1 at 2:47–2:48 |
| 37 | Officer Sun tells him not to reach: "Hey, get your fucking hands out of your pocket, dude!" | Ex. 1 at 2:47–2:50 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 38 | Valdivia says: "Whatever!" but complies and raises his hands. | Ex. 1 at 2:49–2:51; Ex. 2 at 0:48 |
| 39 | At this point, Officer Meadows tells Valdivia to get on the ground: "Get on the ground, now!" | Ex. 2 at 0:49–0:50; Ex. 1 at 2:51–2:53 |
| 40 | As Valdivia starts getting on the ground, Officer Meadows tells him: "Don't reach for anything!" | Ex. 2 at 0:51–0:53; Ex. 1 at 2:54–2:55 |
| 41 | As Officers Sun and Meadows were giving commands to Valdivia, Officer Cardoza run toward them to provide assistance. | Ex. 30 at 55:9–12, 56:19–23, 57:2–6, 58:10–13; Ex. 21 at 23:18–22 |
| 42 | Valdivia proceeds getting on the ground, but only with the left elbow on the ground and the right hand propping him up. | Ex. 1 at 2:56 |
| 43 | Valdivia then **shifts his weight** to his left elbow and **reaches for his waistband** with his right hand at **10:17:07 p.m.** | Ex. 1 at 2:57 |
| 44 | Officer Sun radios that Valdivia "reached for his waist." | Ex. at 1 2:57 |
| 45 | Simultaneously, Officers Sun and Meadows yell to Valdivia: "Don't reach for it!" | Ex. 1 at 2:57–2:58; Ex. 2 at 0:55–0:56 |
| 46 | Valdivia proceeds to retrieve the gun and bring it forward until it is pointing in the direction of Officers Sun and Meadows. | Ex. 1 at 2:58; Ex. 13 at 28:20–30:6; Ex. 28 at 17:5–20, 71:20–23; Ex. 17 at 24:10–17; Ex. 29 at 55:17–25; |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|-----|------------------------------|---------------------|
|     |                              | Ex. 21 at 25:1–15, 33:16–24; Ex. 23 at 4:3–13; Ex. 30 at 16:15–18, 17:4–9, 68:24–69:5, 69:17–18, 70:5–7 |
| 47  | Shots are fired between **10:17:08 p.m.** and **10:17:11 p.m.** | Ex. 1 at 2:58 – 3:01; Ex. 2 at 0:56–0:58 |
| 48  | Valdivia's gun drops in front of him. | Ex. 1 at 3:01 |
| 49  | Logan, who was standing right next to Valdivia when the officers arrived and during the shooting, confirmed that Valdivia was "ready to pull that thing" (the gun) during his interaction with the officers. | Ex. 4 at 14:05–14:10 |
| 50  | And then, once he got on the ground, Valdivia "pulled it out on the officers." | Ex. 4 at 15:22–15:28 |
| 51  | According to Logan, "it looked like [Valdivia] pointed that s[***] at … them," referring to the officers. | Ex. 5 at 7:00–7:15 |
| 52  | Officer Sun testified that he received the call at around 10:14 p.m. | Ex. 28 at 8:7–9 |
| 53  | He was familiar with the area because it was "undoubtedly our most serviced area of the city" due to a large volume of crime, including stabbings, domestic violence, and narcotics and alcohol violations. | Ex. 13 at 20:17–23, 21:7–10, 21:17–20 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 54 | The initial call informed him that the subject was a Hispanic male in his 40's wearing black sweater and shorts, holding a bear and a gun, and that he was suspected of violating Penal Code § 417 by brandishing a gun. | Ex. 28 at 40:8–18, 45:3–4, 45:13–14, 45:19–23 |
| 55 | While enroute, Officer Sun received additional information, including that more people have called 911 regarding the same subject and that the subject was "actively 415" with several other individuals, which to Officer Sun meant that he was "argumentative, aggressive, trying to start a fight." | Ex. 28 at 41:4–17, 42:16–22, 43:1–5, 44:13–16, 50:1–10; Ex. 13 at 19:8–18 |
| 56 | Officer Sun testified that the fact that there were multiple callers reporting similar information gave more credibility to the received information. | Ex. 28 at 47:3–6; Ex. 13 at 19:19–20:1 |
| 57 | As he was getting out of his patrol car, Officer Sun also received information that the subject placed the gun in his right pocket. | Ex. 28 at 41:12-13; Ex. 13 at 22:6–9 |
| 58 | Upon making his approach, Officer Sun observed Valdivia arguing with two other individuals. | Ex. 28 at 49:1–3; Ex. 13 at 23:11–13 |
| 59 | Given Valdivia's clothing and his actions, which matched the information provided by the 911 callers, Officer Sun was immediately able to identify Valdivia as the subject of the 911 calls. | Ex. 28 at 47:3–6, 49:12–16; Ex. 13 at 23:4–10, 42:16–25 |
| 60 | Upon arrival, Officer Sun commanded Valdivia to show him his hands and then to put up his hands. | Ex. 28 at 58:12–18 |
| 61 | Valdivia did not immediately comply. | Ex. 28 at 58:19–21 |
| 62 | Instead, Valdivia reached for his waistband, which prompted Officer Sun to tell him get his hands out of his pocket. | Ex. 28 at 60:3–8; Ex. 13 at 24:25–25:10 |

Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary Judgment

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|-----|------------------------------|---------------------|
| 63 | Eventually, Valdivia raised his hands and was then ordered to get on ground by Officer Meadows. | Ex. 28 at 60:11–18 |
| 64 | Officer Sun testified that Valdivia did not get fully on the ground as commanded; instead, he "started leaning to his left" and getting into what to Officer Sun looked like "a modified prone shooting position." | Ex. 28 at 60:19–24; Ex. 13 at 26:15–27:1, 27:22–25 |
| 65 | To Officer Sun, Valdivia's actions looked deliberate, as if he was preparing to reach for his gun. | Ex. 13 at 26:15–27:12, 27:20–28:5 |
| 66 | Valdivia then starts reaching for his waistband, causing Officer Sun to yell as loudly as he could not to reach for it. | Ex. 13 at 28:10–14 |
| 67 | Valdivia, however, ignored the command, lowered his hand, and almost immediately pulled out a gun. | Ex. 13 at 28:20–25 |
| 68 | Officer Sun testified that the way Valdivia pulled out the gun and had a good grip on it was another huge flag because it told him that Valdivia was either a "trained shooter" or had "some kind of firearms experience" to be able to get such a good grip on the gun so quickly. | Ex. 13 at 28:25–29:9 |
| 69 | After retrieving the gun, Valdivia proceeded to raise it until it was almost pointing in the direction of Officers Sun and Meadows. | Ex. 13 at 29:9–30:4 |
| 70 | According to Officer Sun, once Valdivia raised the gun so that the barrel was pointing in his direction, he felt that he had no choice but to shoot to avoid Valdivia shooting him or Officer Meadows. | Ex. 13 at 29:12–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13; Ex. 28 at 71:20–23 |
| 71 | At the time Officer Sun fired his first shot, Valdivia was leaning to his left side while on the ground and had the gun in his right hand pointing in the direction of Officers Sun and Meadows. | Ex. 28 at 17:5–15, 17:23–25 |

9
Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary Judgment

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 72 | Officer Sun fired six rounds. | Ex. 28 at 9:20–21; Ex. 13 at 41:3–8 |
| 73 | There was less than a second and a half between the first and the sixth shot. | Ex. 28 at 18:4–6 |
| 74 | Officer Sun testified that he assessed after each shot. | Ex. 28 at 12:9–14 |
| 75 | According to Officer Sun, he perceived Valdivia continuously pointing the gun in his direction between his first and sixth shot. | Ex. 28 at 17:16–20, 72:6–7 |
| 76 | He testified that he genuinely feared that Valdivia would kill him and his partner at the time that he fired. | Ex. 13 at 27:8–12, 29:12–16, 29:20–25, 39:22–40:6, 43:7–13 |
| 77 | Officer Sun stopped shooting when he no longer perceived Valdivia as a threat, which was when the gun was no longer pointed in the officers' direction. | Ex. 28 at 72:1–15 |
| 78 | Officer Meadows testified that he received the call at around 10:13 p.m. | Ex. 29 at 27:11–13 |
| 79 | He was familiar with the location because it was in a high crime area known for narcotics violations, assaults with deadly weapons, and other violent crimes. | Ex. 17 at 18:6–12, 30:19–31:11 |
| 80 | The call indicated that the subject was brandishing a firearm outside of a liquor store, which to Officer Meadows meant that he was showing the gun to others in a threatening manner. | Ex. 29 at 28:1–5, 28:16–21 |
| 81 | Upon receiving the call, Officer Meadows followed Officer Sun to the Starbucks parking lot. | Ex. 29 at 42:11–13 |

Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary Judgment

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 82 | While enroute, Officer Meadows received additional information, including that there were multiple calls and that the subject was either threatening or arguing with other individuals. | Ex. 29 at 30:2–5, 30:13–14; Ex. 17 at 18:17–22 |
| 83 | As he was arriving, Officer Meadows also received information that the subject placed the gun in his right pocket, which was consistent with where he would later observe the gun on Valdivia. | Ex. 29 at 29:8–18; Ex. 17 at 21:20–23 |
| 84 | Upon making his approach, Officer Meadows could hear several persons arguing. | Ex. 17 at 19:24–25, 20:14–15 |
| 85 | Officer Meadows identified Valdivia as the subject of the 911 calls based on his actions and clothing. | Ex. 17 at 20:16–23 |
| 86 | Upon arrival, Officer Meadows identified the officers as "police" and ordered everyone to put their hands up. | Ex. 17 at 21:13–16 |
| 87 | The two individuals with whom Valdivia was arguing complied but Valdivia did not and, instead, started to reach toward his waistband. | Ex. 17 at 21:16–19 |
| 88 | As he raised his hands, Valdivia's sweatshirt lifted and Officer Meadows could see the grip of a firearm protruding from his waistband. | Ex. 29 at 14:2–6; Ex. 17 at 22:20–25, 36:20–25, 37:10–11 |
| 89 | According to Officer Meadows, he could see the finger groves in the handle of the gun, which to him "looked like a Glock pistol." | Ex. 17 at 23:1–7, 37:1–4 |
| 90 | As a result, Officer Meadows ordered Valdivia to get on the ground, which he felt was the safest position to take Valdivia into custody and to prevent Valdivia from fleeing or potentially taking hostages. | Ex. 29 at 14:10–16, 52:10–16; Ex. 17 at 23:8–22 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 91 | As Valdivia started getting on the ground, Officer Meadows observed that he posted himself on the ground with his left arm and begun reaching again for his waistband with his right hand in the direction where his gun was. | Ex. 17 at 23:25–24:6 |
| 92 | Officers Meadows and Sun both gave Valdivia commands not to reach for it. | Ex. 17 at 24:9–10 |
| 93 | Valdivia, however, ignored the commands, removed the gun from his waistband, and started to bring it up in the direction of Officers Meadows and Sun. | Ex. 17 at 24:10–12 |
| 94 | Officer Meadows could see clearly as the muzzle started to raise up in their direction. | Ex. 17 at 24:15–17 |
| 95 | Officer Meadows sidestepped to the side to avoid being in Valdivia's line of fire and pulled the trigger before Valdivia could get a round off. | Ex. 17 at 24:18–25:2; *see also* Ex. 29 at 13:21–14:1 |
| 96 | According to Officer Meadows, at the time that he fired, Valdivia's gun was pointed in the direction of him and Officer Sun. | Ex. 29 at 55:17–25 |
| 97 | He testified that he fired because he was afraid that Valdivia was going to start shooting and kill either him or Officer Sun. | Ex. 29 at 55:14–25; Ex. 17 at 24:15–25:2, 38:14–24, 40:20–25 |
| 98 | Officer Meadows fired only one shot. | Ex. 17 at 25:2–7 |
| 99 | Following his shot, Officer Meadows reassessed and stopped shooting because Valdivia no longer had a gun in his hand. | Ex. 29 at 58:14–20; Ex. 17 at 25:2–7 |
| 100 | Officer Meadows testified that no shots were fired while Valdivia was still reaching for the gun in his waistband. | Ex. 29 at 67:6–8 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 101 | According to Officer Meadows, based on his perception, all of the shots were fired as Valdivia was pointing his gun at him and Officer Sun. | Ex. 29 at 67:9–13 |
| 102 | Officer Meadows further testified that Valdivia's right arm with the gun was extending and moving in the direction of the officers while the shots were being fired. | Ex. 29 at 67:19–24 |
| 103 | Once Valdivia's gun was secured, Officer Meadows immediately checked for pulse and started CPR by doing chest compressions. | Ex. 29 at 25:19–20, 26:2–5 |
| 104 | Officer Meadows also confirmed that emergency medical services were called. | Ex. 17 at 26:7–10 |
| 105 | He continued performing CPR, alternating with Officer Marquez, until he was relieved by other officers on the scene. | Ex. 17 at 26:6–13 |
| 106 | Officer Cardoza similarly indicated that she was familiar with the area where the 911 calls originated, describing it as having a lot of drug sales and physical altercations. | Ex. 21 at 22:7–10, 30:1–4 |
| 107 | When she heard that only three units were initially dispatched, she attached herself to the call to assist the other officers given the area and the nature of the call (man with a gun). | Ex. 21 at 22:2–16 |
| 108 | Officer Cardoza heard dispatch inform the officers that the subject was a Hispanic male in his 40's with facial hair and wearing a black sweater and shorts, that he was waving a firearm, and that people in the area were fearful. | Ex. 30 at 43:10–15, 44:6–7;<br><br>Ex. 21 at 28:5–16 |
| 109 | While enroute, Officer Cardoza also learned that the subject was in a verbal argument with two other persons, that he was holding a beer in his hand, and that he had placed the firearm in his pocket. | Ex. 30 at 44:17–24, 45:13–19 |

Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary Judgment

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 110 | Upon arrival, Cardoza could see Valdivia, whom she was able to identify based on his appearance, which matched the description provided by dispatch. | Ex. 30 at 50:3–20, 53:7–11; Ex. 21 at 23:10–16; Ex. 23 at 2:23–3:6, 3:17–20 |
| 111 | She could see that he was in some sort of verbal altercation with two other individuals. | Ex. 30 at 53:12–20, 70:17–18 |
| 112 | As she was observing Valdivia, she heard Officer Sun announce over the radio that he was arriving on scene. | Ex. 30 at 54:9–12 |
| 113 | Based on prior radio traffic, she knew that Officer Meadows would be with him and that they would park behind Starbucks and make their approach from there. | Ex. 30 54:15–25 |
| 114 | Officer Cardoza was able to observe Valdivia for a only a couple of seconds before Officers Sun and Meadows made their approach. | Ex. 30 at 55:6–8; Ex. 21 at 30:20–25 |
| 115 | She observed the officers start giving Valdivia commands and she run toward them to provide assistance. | Ex. 30 at 55:9–12, 56:19–23, 57:2–6, 58:10–13; Ex. 21 at 23:18–22 |
| 116 | She testified that there was insufficient time to retrieve the non-lethal shotgun. | Ex. 21 at 23:18–22, 30:16–19; Ex. 30 at 57:10–12, 57:20–25 |
| 117 | Officer Cardoza heard additional commands being given to Valdivia as she was running, including not to reach for anything. | Ex. 30 at 59:10–12; Ex. 21 at 24:4–6 |
| 118 | She also observed Valdivia being noncompliant. | Ex. 21 at 24:18–20 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 119 | Given her position (approaching Valdivia from the side), Officer Cardoza was able to observe how Valdivia started lifting up his sweater with his right hand as he started to lay down. | Ex. 21 at 24:13, 25:1–2 |
| 120 | As Valdivia lifted up his sweater, she observed the handle of a black handgun in his waistband. | Ex. 21 at 25:2–4; Ex. 23 at 4:3–10 |
| 121 | Immediately thereafter, she observed Valdivia reach for the gun with his right hand, pull it out, and start to point it at Officers Sun and Meadows. | Ex. 21 at 25:5–7, 33:16–24; Ex. 23 at 4:10–13 |
| 122 | She also testified hearing the other officers tell Valdivia "don't reach for it" before she fired her first shot. | Ex. 30 at 60:3–5 |
| 123 | Officer Cardoza indicated that she started firing when she observed Valdivia pointing the gun at Officers Sun and Meadows because she afraid he was going to shoot and kill one or both of them. | Ex. 21 at 25:8–15, 34:2–12 |
| 124 | Officer Cardoza testified that at the time that she fired her first shot, Valdivia was leaning to the side on his left arm, his legs were in a sort of a "mounted stance," and his right hand was holding a gun that was pointed or in the process of being pointed at Officers Sun and Meadows. | Ex. 30 at 15:15–23, 16:13–18, 17:4–9, 61:19–22, 68:24–69:5, 69:17–18, 70:5–7 |
| 125 | Officer Cardoza fired five rounds during the incident. | Ex. 30 at 9:8–9 |
| 126 | There was less than a second between the first and the fifth shot. | Ex. 30 at 11:21–24 |
| 127 | She testified that she assessed after each shot and that she perceived Valdivia continuously pointing the gun in the direction of Officers Sun and Meadows during her five shots. | Ex. 30 at 11:19–20, 16:19–17:16 |

15
Statement of Uncontroverted Facts in Support of Defendants' Motion for Summary Judgment

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 128 | Officer Cardoza testified that she genuinely feared that Valdivia would kill her partners at the time that she fired. | Ex. 21 at 25:8–15, 34:2–12 |
| 129 | Valdivia was still pointing the gun at the officers at the time of her last shot. | Ex. 30 at 17:14–16, 18:2–4, 18:18–22 |
| 130 | Officer Cardoza testified that Valdivia dropped the firearm after she fired her five rounds. | Ex. 30 at 18:24–19:1 |
| 131 | She stopped shooting once Valdivia dropped the gun because he was no longer a threat. | Ex. 30 at 62:12–15, 62:18–21; Ex. 21 at 25:19–22, 35:13–16 |
| 132 | The Officer Defendants testified that not approaching Valdivia could have caused him to escalate the situation, flee, or take hostages. | Ex. 13 at 23:11–24:1, 34:17–35:7; Ex. 28 at 80:13–81:12, 92:14–93:2; Ex. 29 at 83:25–84:16 |
| 133 | The Officer Defendants testified that they have engaged in de-escalation attempts by setting up the containment and approaching Valdivia and diverting his attention away from the other two individuals with whom he was arguing. | Ex. 28 at 24:12–15, 53:21–54:10, 62:3–14; Ex. 13 at 20:9–13, 24:11–15, 42:1–10; Ex. 29 at 46:23–47:13; Ex. 21 at 32:12–25 |
| 134 | The Officer Defendants testified that given the nature of the call (man with a gun), it would not have been prudent to engage Valdivia with non-lethal weapons, which would have endangered the officers and the public. | Ex. 28 at 93:7–20; Ex. 29 at 83:11–24 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 135 | The CAD log reveals an almost immediate request for paramedics after the shots were fired ("Shots fired[,] roll fire."). | Ex. 24 at CPD000092 |
| 136 | Less than a minute later, at **10:17:59 p.m.**, Officer Sun repeats: "I need fire now." | Ex. 1 at 3:49 – 3:50 |
| 137 | Immediately after the shooting, the officers approached Valdivia, who was lying on the ground next to his gun, and Officer Sun secured the gun by moving it away from Valdivia. | Ex. 1 at 3:02–3:23 |
| 138 | At 10:17:56 p.m., the officers start handcuffing Valdivia. | Ex. 1 at 3:46; Ex. 2 at 1:41. |
| 139 | Officer Meadows immediately asks for a first aid kit. | Ex. 2 at 1:51–1:57; Ex. 1 at 3:54 – 4:01 |
| 140 | Once Valdivia is secured, Officer Meadows checks for pulse and informs: "No pulse. I'm going to start CPR." | Ex. 2 at 2:10 – 2:13 |
| 141 | Officer Meadows starts performing CPR on Valdivia at **10:18:27 p.m.**—approximately 1 minute and 17 seconds after the shooting. | Ex. 2 at 2:12; Ex. 1 at 4:16 |
| 142 | The officers performed CPR *continuously* for more than seven minutes until the paramedics took over. | Ex. 2 at 2:12–9:40 |
| 143 | Paramedics arrived on the scene at approximately 10:25:22 p.m. | Ex. 1 at 11:12; Ex. 2 at 9:09 |
| 144 | Valdivia was taken to a hospital, where he was pronounced deceased at approximately 11:06 p.m. | Ex. 24 at CPD000091 |
| 145 | Testing of Valdivia's blood sample revealed the presence of alcohol and methamphetamine. | Ex. 26; Ex. 25 at CPD001093 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 146 | Immediately after the shooting, Officer Sun approached Valdivia and secured Valdivia's gun by moving it away from him. | Ex. 1 at 3:02–3:23 |
| 147 | After the officers started CPR, Officer Sun grabbed Valdivia's gun and went to secure it in his patrol car. | Ex. 1 at 5:02 – 5:10 |
| 148 | As Officer Sun picked up the gun, he identified it as a "Glock." | Ex. 1 at 5:11 – 5:19 |
| 149 | In addition to being a SWAT operator and a range and rifle instructor, Officer Sun is also a Glock armorer. | Ex. _13 5:10–13; Ex. 15 at 3:5–6 |
| 150 | According to him, when Valdivia pulled out the gun, "it looked like a semiautomatic handgun," similar to the Glock that he had. | Ex. 15 at 2:7–15 |
| 151 | He further explained that when he picked it up, "the weight, the feel of it, everything felt like it was just like" his duty gun. | Ex. 15 at 3:9–11 |
| 152 | According to Officer Sun, the finger grooves, the textured pattern on the grip, and even the magazine release "was consistent with the Generation 3 Glock 17." | Ex. 15 at 3:11–14 |
| 153 | It even had "Glock 17" marking on the side. | Ex. 15 at 3:14–16 |
| 154 | Officer Sun also noticed the metal slide, which was worn down as if the gun has been unholstered and re-holstered multiple times, which was similar to Officer Sun's gun. | Ex. 15 at 3:17–4:2 |
| 155 | It was only after Officer Sun released the magazine and noticed that the gun could not chamber a round that he released that Valdivia's gun was actually a .177 caliber replica Glock 17 BB gun that "was made to be an exact replica" of a Glock 17 gun, including the weight, the texture, the feel, and even | Ex. 15 at 4:3–5:1; see also Ex. 26 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
|  | the operation manipulations. |  |
| 156 | According to the DOJ physical evidence examination report, Valdivia's gun was a "GLOCK, Model 17 Blowback Action Pistol" that "functioned as a semi-automatic air ($CO_2$) powered BB gun." | Ex. 26 |
| 157 | Multiple witnesses at the scene, including the three 911 callers, Logan, and other witnesses at the Country Liquor and Starbucks, as well as the responding officers, all believed that Valdivia was in the possession of a real gun. | Ex. 4 at 11:35–11:54, 12:29–12:31, 13:25–13:40; Ex. 5 at 7:20–7:35, 24:45–25:05; Ex. 6 at 0:02–0:10, 1:00–1:10, 1:27–1:31, 2:00–2:07; Ex. 7 at 0:10–0:22, 0:39–0:46; Ex. 8 at 0:00–0:09, 0:15–0:25, 0:54–1:05; Ex. 29 at 14:2–6; Ex. 17 at 22:20–25, 23:1–7, 36:20–37:4, 37:10–11; Ex. 21 at 25:2–4; Ex. 23 at 4:3–10; Ex. 24 at CPD000103–105, 108–109, 111–112 |

| No. | Defendants' Undisputed Facts | Supporting Evidence |
|---|---|---|
| 158 | The photos of the gun similarly confirm that it looks like a real Glock 17 firearm. | Ex. 31; Ex. 32; Ex. 25 at CPD001087–1088 |
| 159 | Picture of Valdivia's gun. | Ex. 25 at CPD001088 |
| 160 | Pursuant to California Assembly Bill 1506, the California DOJ conducted a thorough investigation of the incident and issued a report in August 2024, concluding that, based on the totality of circumstances, the evidence did not demonstrate that the Officer Defendants' actions were unreasonable. | Ex. 25 at CPD001086, 001104. |

DATED:  June 3, 2025              Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By:      */s/ Yury A. Kolesnikov*
Mildred K. O'Linn
Yury A. Kolesnikov
Roslynn Wilfert

*Attorneys for Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun*