Mildred K. O'Linn (State Bar No. 159055)
  missy.olinn@manningkass.com
Yury A. Kolesnikov (State Bar No. 271173)
  yury.kolesnikov@manningkass.com
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California  90017-3012
Telephone:  (213) 624-6900
Facsimile:   (213) 624-6999

*Attorneys for Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.V. and X.V., minors by and through their guardian *ad litem*, Karla Juarez; D.V., a minor, by and through his guardian *ad litem*, Elias Valdivia; individually and as successors-in-interest to Daniel Luis Valdivia, deceased; JESSICA VALDIVIA; LUIS VALDIVIA JR., individually,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>CITY OF COVINA; VANESSA CARDOZA; DAVID MEADOWS; BILLY SUN; DOES 1–10, inclusive,<br><br>                              Defendants. | Case No. 5:23-cv-1562 CBM (SHK)<br><br>**Defendants' Reply Memorandum of Points and Authorities in Further Support of Motion for Summary Judgment as to Plaintiffs' Complaint**<br><br>*Filed concurrently with Kolesnikov Reply Declaration, Response to Plaintiffs' Statement of Genuine Disputes, Response to Plaintiffs' Statement of Additional Material Facts, and Objections to Plaintiffs' Evidence*<br><br>Date:    August 12, 2025<br>Time:    10:00 a.m.<br>Judge:   Hon. Consuelo B. Marshall<br>Courtroom: 8D<br><br><br>Filed Dated:   August 4, 2023<br>Trial Date:     October 21, 2025 |

**Table of Contents**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................2

    A. The Officer Defendants Are Entitled to Qualified Immunity on Valdivia's Fourth Amendment Excessive-Force Claim (Claim 2) ..................................................................................................2

        1. No Fourth Amendment Violation ...............................................2

        2. No Violation of Any Clearly-Established Law ..........................7

    B. No Violation of Substantive Due Process (Claim 4) ..............................9

    C. Battery, Bane Act, and Negligence Claims Fail (Claims 7, 8, and 9) .................................................................................10

III. CONCLUSION ..................................................................................................10

CERTIFICATION PURSUANT TO LOCAL RULE 11-6.2 .................................12

## I. INTRODUCTION

Long on speculation and conjecture, but short on substance, Plaintiffs' opposition fails to demonstrate that there are any *genuine* issues of *material* fact warranting denial of Defendants' motion.[1] Indeed, undisputed video evidence (as well as Plaintiffs' sanitized still-frame images) confirm that: (1) Valdivia disregarded multiple commands not to reach; (2) he reached for and retrieved a gun from his waistband; (3) the gun looked real; (4) he started bringing the gun forward towards the officers; and (5) after the gun dropped on the ground, the barrel was facing the officers. Indeed, Plaintiffs' entire theory of the case is that Valdivia retrieved the gun from his waistband and brought it forward to "discard" it. Thus, under Plaintiffs' own version of the facts, the officers' use of deadly force was objectively reasonable. *See Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 617, 620–21 (9th Cir. 2023).

Arguing the contrary, Plaintiffs merely quibble with semantics. But it is legally irrelevant whether Valdivia ever "pointed" the gun at the officers; all that matters is that he retrieved it and started to bring it forward. Nor is it dispositive that the gun abruptly left Valdivia's hand milliseconds before the shots were fired—a fact that could only be perceived using sophisticated video technology and 20/20 hindsight, both a luxury that was **not** available to the officers. In any event, even if there could be any debate about the reasonableness of the officers' conduct (there is none), *Strickland* and similar cases confirm that the officers' conduct in responding to the imminent threat presented by Valdivia did not violate any clearly-established law.

Plaintiffs' substantive due process claim fails because there is absolutely no evidence that the officers acted with any purpose to harm. Nor do Plaintiffs identify any case that would have made the officers' conduct unconstitutional beyond debate. Plaintiffs' state-law claims fail for the same reasons as their excessive-force claim. For all these reasons, the Court should grant Defendants' motion in full.

---

[1] This reply brief utilizes all of the defined terms from Defendants' opening brief. All internal citations and quotation marks are omitted, and all emphasis is added.

## II. ARGUMENT

### A. The Officer Defendants Are Entitled to Qualified Immunity on Valdivia's Fourth Amendment Excessive-Force Claim (Claim 2)

#### 1. No Fourth Amendment Violation

The parties agree that the key factor in this case is whether Valdivia posed "an immediate threat to the safety of the officers." *See Strickland*, 69 F.4th at 620. As Defendants' moving papers exhaustively set forth, this factor weighs conclusively in favor of summary judgment because undisputed video evidence shows that Valdivia disregarded multiple commands not to reach for his waistband and, instead, reached for, retrieved, and started pointing a gun at the officers. **UF 36–37, 40, 43, 45–46, 49–51, 62, 66–71, 91–94, 119–124.** In addition, each of the officers testified that they reasonably perceived Valdivia as presenting ***an imminent threat*** when they opened fire. **UF 68–71, 75–76, 95–97, 123–124, 127–129.**

Unable to refute these uncontroverted facts, Plaintiffs resort to contradictory arguments. On the one hand, they quibble as to whether Valdivia reached for or retrieved the gun or "pointed" it at the officers. On the other hand, they argue that his intent all along was to "discard" the gun in front of him. ***But it would have been physically impossible for Valdivia to "discard" the gun <u>in front of him</u> without first <u>reaching</u> for it, then <u>retrieving</u> it from his waistband, and then, crucially, <u>moving the hand with the gun forward</u> to drop the gun in front of him.***

Moreover, videos and Plaintiffs' own still-frame images show that once the gun was on the ground, ***the barrel was pointing toward the officers***, thus confirming the officers' testimony. Apart from speculation, Plaintiffs offer no concrete evidence to refute the officers' ***consistent*** testimony that the gun was "pointed at" Officers Sun and Meadows (who were in front of Valdivia) when Valdivia was "discarding" it.

Under these circumstances, the law clearly authorized the officers to use deadly force. As the Ninth Circuit observed in *Strickland*, "[i]f the person is armed—***or reasonably suspected of being armed***—a furtive movement, harrowing gesture, or

serious verbal threat might create an immediate threat." 69 F.4th at 620. Here, Plaintiffs do **not** dispute that Valdivia was reasonably suspected of being armed with a gun that everyone thought was real. Undisputed video evidence also shows that he made more than "a furtive movement" towards his waistband.

Similar to *Strickland*, Valdivia's act of retrieving the gun and moving the hand with the gun forward in the direction of the officers was "[t]he pivotal moment" at which the officers "had probable cause to believe that [Valdivia] posed a significant threat of death or serious physical injury to themselves and it became objectively reasonable for them to use lethal force." *See id.* at 621–22. Contrary to Plaintiffs' suggestion, the officers did **not** need to wait to see if Valdivia would shoot, given that "***misplaced trust in this circumstance could be fatal for the officers***." *Id.* at 622.

Plaintiffs make several irrelevant arguments in response, each of which is squarely foreclosed by case law. Plaintiffs' main argument is that *technically* the shots were fired *after* the gun can be seen leaving Valdivia's hand. But Plaintiffs can only make this argument by relying on the sanitized still-frame pictures from the videos and 20/20 hindsight—a luxury that was **not** available to the officers.

More importantly, the Supreme Court this Term rejected a similar argument by holding that "a court **cannot** … narrow the totality-of-the-circumstances inquiry[] to focus on only a single moment." *See Barnes v. Felix*, 145 S. Ct. 1353, 1360 (2025). The Court in *Barnes* rejected the "moment of threat" rule, pursuant to which courts analyzed the reasonableness of deadly force at the "precise millisecond" when the officer deploys force. *See id.* at 1356–57. This is precisely the approach that Plaintiffs advocate in their opposition, asking the Court to focus on **the precise millisecond** when Valdivia's gun apparently left his hand, which could only be pinpointed with the assistance of advanced video technology and 20/20 hindsight. The Supreme Court unanimously rejected such "chronological blinders." *Id.* at 1358–59.

Furthermore, even Plaintiffs' still-frame images confirm that Cardoza fired ***almost instantaneously*** with the gun leaving Valdivia's hand (0.08 seconds) while

Sun and Meadows fired *a quarter of a second* and *eight-tenth of a second* after the gun left his hand. *See* Ex. G at 46, 51, 65. Assuming these facts as true, the officers' use of force would still be justified as it is clear that the decision to use deadly force and the movements necessary to shoot took place *before* the gun left his hand.

Fundamentally, Plaintiffs' argument does not take into account that the officers had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and commence executing movements necessary to shoot, which takes anywhere between half a second to a second. *See* Ex. 34 at 16–17. As *Strickland* teaches, once the officers decided that they were facing an imminent threat and made the decision to shoot, they did not have to wait and see if Valdivia would follow through, given that "misplaced trust in this circumstance could be fatal." *See* 69 F.4th at 622.

Plaintiffs' arguments to the contrary impermissibly rely on 20/20 hindsight gleaned from the luxury of an attorney's office with the benefit of sophisticated video equipment that can pause and rewind and freeze still frames to ascertain the precise millisecond that the gun left Valdivia's hand. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989). Moreover, even under Plaintiffs' own version of the facts, there was *less than a second* between the time when the gun left Valdivia's hand and when each of the officers fired. And each of the officers testified that they reasonably perceived Valdivia as still pointing the gun in the direction of Officers Sun and Meadows when they fired their shots. *See Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) ("we must view the facts from [the officer's] perspective at the time he decided to fire"); *id.* ("the critical inquiry is what [the officer] perceived").

Further, even if the gun left Valdivia's hand simultaneously with or a fraction of a second before each officer fired, there is no evidence that the officers "had immediately perceived" this changed circumstance. *See id.* at 553 (rejecting a similar argument). On the contrary, each officer testified that they perceived Valdivia as still posing an imminent threat as they fired. *See* **UF 72–75, 97, 127, 129.** As the Court

held in *Wilkinson*, "the Fourth Amendment does not require omniscience." 610 F.3d at 553 (finding second volley reasonable despite arguably changed circumstances).

Finally, under Plaintiffs' version of the facts, Officer Sun fired a single volley of six shots within a span of 1.56 seconds and Officer Cardoza fired a single volley of five shots within a span of 1.68 seconds. *See* **Ps' Responses to UF 73, 126**. As the Supreme Court has observed, "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014).

In this regard, the Ninth Circuit's recent decision in *Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790 (9th Cir. 2025) (*en banc*), is instructive. There, the suspect advanced at the officer armed only with a box cutter. *Id.* at 796. The officer fired three distinct volleys. The first volley of 2 shots caused the suspect to fall on the ground. *Id.* He then rolled over and started to push himself up, even though he did not continue walking toward the officer. *Id.* The officer fired a second volley of 2 shots after approximately 2.5 seconds. *Id.* at 796–97. The suspect fell onto his back and curled up into a ball. *Id.* As he rolled away from the officer, the officer fired the third volley of 2 shots after approximately 1.4 seconds. *Id.* at 797.

The Court held that, **as a matter of law**, the officer acted reasonably in firing the first and second volleys of shots, even though the second volley was fired 2.5 seconds after the suspect fell on the ground, he had not started walking back towards the officer, and, unlike here, he was still 36 feet away from the officer and armed only with a box cutter (not a gun, like Valdivia). *See id.* at 796–97, 799. In contrast, the Court held that the third volley presented a "different case" because the initial two volleys had "**clearly incapacitated**" the suspect, thus ending the threat. *Id.* at 800.

Tested under *Hernandez*, Officers Sun and Cardoza acted reasonably in firing their first volley of shots in response to the imminent threat posed by Valdivia and then reassessing the situation and not firing further. As the undisputed video evidence demonstrates, the shots took place within a span of approximately 1.5 and 1.7 seconds

5
Defendants' Reply in Further Support of Motion for Summary Judgment

as the officers reacted to Valdivia's sudden action of retrieving the gun and moving the hand with the gun forward towards the officers. Even if the officers could have perceived the gun fall to the ground during that short period of time (which is **not** supported by any evidence), the gun was still within several inches of Valdivia's hand and Valdivia's hand was still extended forward towards the gun, such that it cannot be said that he was "**clearly** incapacitated." *See id.* "Thus, a reasonable officer could conclude that he continued to present an imminent threat." *See id.*

Plaintiffs' remaining arguments similarly lack merit. Plaintiffs suggest the commands were conflicting, but fail to explain how "show your hands" and "put up your hands" are conflicting, particularly where it was clear Valdivia understood the commands. Plaintiffs suggest Valdivia was mostly compliant, but ignore the fact that he repeatedly reached for his waistband—the general area where the officers were informed the gun was located. Plaintiffs also suggest that the officers must have seen the gun leave Valdivia's hand because they viewed the shooting in "slow motion," but each officer testified that they viewed Valdivia's actions ***prior to the shooting*** (specifically, his retrieval of the gun) in slow motion.

Finally, Officer Cardoza testified that she had insufficient time to retrieve the less-lethal shotgun (which was in the trunk of her patrol vehicle, per department policy) and, in any event, the officers testified that it was not reasonable or practical to utilize less-lethal alternatives under the circumstances. **UF 116, 134.** The officers also testified that not approaching Valdivia under the circumstances could have escalated the situation by permitting Valdivia to flee or take hostages. **UF 132**. While Plaintiffs may disagree with these decisions with the benefit of 20/20 hindsight, it is "well-established that police officers are **not** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022). "A reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative will **not** render conduct unreasonable." *Wilkinson*, 610 F.3d at 551; *accord Hernandez*, 139 F.4th at 800 ("officers need not

avail themselves of the least intrusive means of responding to an exigent situation"); *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014) (observing that the officers were not required to use less-lethal alternatives such as pepper spray once the suspect, who was armed with a football-sized rock, advanced within 7 or 8 feet of the officers).

### 2. No Violation of Any Clearly-Established Law

To overcome qualified immunity, Plaintiffs have the burden of proffering **analogous** precedent that would have placed the constitutionality of the deputies' conduct "**beyond debate**." *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). To meet their burden, Plaintiffs must "identify a case where an officer **acting under similar circumstances** … was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 79 (2017). Plaintiffs cannot meet their burden.

Plaintiffs cite a litany of cases, but not a single one involving similar facts. In fact, many support Defendants. Take for example, *Cruz*, where the court found that disputed issues of fact as to whether the suspect reached for his waistband precluded summary judgment. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1080 (9th Cir. 2014). Right of the bat, Judge Kozinski observes: "It would be **unquestionably reasonable** for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, **or even if he reaches there for some other reason**." *Id.* at 1078.

In *Zion*, the officer justifiably shot the suspect 9 times but then, after the suspect was already incapacitated, run up to him and shot him 9 more times. *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1075-76 (9th Cir. 2017). It was only **the second volley** that the Court found unreasonable. *Id.* Similarly, in *Roque*, the officer shot the suspect three times: (a) once when he turned around and pointed the gun in the officers' direction, and then (b) 2 and 4 seconds later after he already dropped the gun and was stumbling away after being shot. *Roque v. Harvel*, 993 F.3d 325, 330 (5th Cir. 2021). Again, the reasonableness of the first shot **was not disputed**; the court only concluded that there was genuine dispute as to the reasonableness of subsequent shots. *See id.* at 333–34. Likewise, in *Hunter*, the court found the first volley of 3 shots to be

7
Defendants' Reply in Further Support of Motion for Summary Judgment

reasonable because the suspect raised his gun at the officer and only found *the second volley* of 7 shots to be unreasonable where they were taken *after* the suspect recoiled into the car and discarded the gun. *Hunter v. City of Leeds*, 941 F.3d 1265, 1279–80 (11th Cir. 2019). *Zion*, *Roque*, and *Hunter* thus confirm that the officers' first volley of shots in this case within the initial 1.5 to 1.7 seconds was objectively reasonable.

Many of Plaintiffs' cited cases are inapposite because there was no video evidence and genuine disputes as to whether the suspect posed an imminent threat (or was even armed). *See C.V. v. City of Anaheim*, 823 F.3d 1252, 1256 (9th Cir. 2016) (inconsistency between officers' testimony as to whether the suspect grabbed the gun or was already holding it and whether he raised it at the officers); *Estate of Lopez v. Gelhous*, 871 F.3d 998, 1006–10 (9th Cir. 2017) (genuine disputes as to whether the suspect heard the officers, the reason why he turned around, which hand the gun was in, and whether the gun was starting to rise); *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997) (objectively unreasonable to shoot an armed suspect who posed no imminent threat and was trying to escape to a cabin where he was temporarily staying, particularly where the officers "were safely ensconced on the hill overlooking" the cabin); *Collender v. City of Brea*, 605 F. App'x 624, 628–29 (9th Cir. 2015) (genuine issues where the officers shot an unarmed suspect in the chest at close range with a high powered rifle where the officer "did *not* see [the suspect] with a gun or a bulge that might have been a gun in [the suspect's] pocket"); *Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir. 1991) (plaintiff's injuries suggested that he was shot while prone or on his hands and knees); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (the suspect "did not point the gun at the officers and apparently was not facing them when they shot him"); *George v. Morris*, 736 F.3d 829, 832–33, 835, 838 (9th Cir. 2013) (genuine dispute as to whether the suspect was even capable of manipulating the gun as claimed by the officers); *Longoria v. Pinal Cnty.*, 873 F.3d 699, 708–09 (9th Cir. 2017) (unreasonable to shoot an unarmed suspect who was already tased and hit with bean bag where the officer disobeyed orders to maintain a

perimeter); *Landeros v. City of Tustin*, 837 F.3d 1005, 1011–12 (9th Cir. 2016) (force used was unreasonable where "[t]he officers had little, if any, reason to believe that [the suspect] was armed" and the officer "admitted that he never saw a weapon").

Plaintiffs' remaining cited cases are similarly inapposite. *See Estate of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022) (the suspect was armed only with a bat, there was dispute as to whether he posed any threat to the officer, and forensic evidence suggested that he was actually shot in the back while turned away); *Tan Lam v. City of Los Banos*, 976 F.3d 986, 991, 998 (9th Cir. 2020) (suspect was only armed with scissors and the jury specifically found that he "did not approach the officer with scissors before the officer fired the fatal second shot"); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1233–35 (9th Cir. 2013) ("no clear evidence" that suspect, who was only armed with a knife, was threatening the officers when he cluelessly approached, was not given any commands to stop, and was 6 to 8 feet away).

In contrast, *Strickland* involved more plaintiff-friendly facts but the Court still found, on motion to dismiss, that it was not unreasonable to use deadly force where the suspect started to raise a BB gun with an orange tip at the officers. *See* 69 F.4th at 618–23; *see also Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 828 (9th Cir. 2023); *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906–07 (9th Cir. 2007); *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994). Likewise, in *Denk v. Miller*, the Court reversed denial of summary judgment where video showed that the suspect moved his hand closer to his lap after being told not to reach for his gun. *See* 2025 WL 830446, at **1–2 (9th Cir. Mar. 17, 2025) (distinguishing many of Plaintiffs' cited cases).

### B. No Violation of Substantive Due Process (Claim 4)

Plaintiffs do not seriously dispute that the "purpose to harm" standard applies in this case. *See Wilkinson*, 610 F.3d at 554; *Zion*, 874 F.3d at 1077. Nor can they meet the standard. *See, e.g., Zion*, 874 F.3d at 1077 (no purpose to harm where the officer emptied his weapon into the suspect, even if the shooting was excessive, because "the shootings served the legitimate purpose of stopping a dangerous

9

Defendants' Reply in Further Support of Motion for Summary Judgment

suspect"). The same is true here and Plaintiffs do not point to *any evidence* in the record that the officers acted with any purpose to harm unrelated to a legitimate law enforcement objective. In any event, the officers are entitled to qualified immunity because Plaintiffs do not identify *any* case in their opposition that would have placed the constitutionality of the officers' conduct beyond debate. *See* Dkt. No. 48 at 8.

### C.   Battery, Bane Act, and Negligence Claims Fail (Claims 7, 8, and 9)

Plaintiffs acknowledge that their battery and Bane Act claims are premised on the same facts and law as their excessive-force claim. *See id.* at 23.

Plaintiffs try to salvage their negligence claim by suggesting that it is broader then the excessive-force claim. *See id.* at 23–24. But Plaintiffs do not identify any *separate injury* attributable to any alleged negligent pre-shooting tactics. *See id.* at 23–25. As a result, the officers' pre-shooting conduct is only relevant "to the extent it shows, as part of the totality of circumstances, that *the shooting itself* was negligent." *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 631 (2013). Here, for the same reasons as discussed above and in the moving papers, none of the identified pre-shooting conduct made *the shooting itself* negligent. Given the nature of the call (armed suspect) and the fact that Valdivia quickly retrieved his gun, none of the less-lethal options suggested by Plaintiffs (less-lethal shotgun, K-9, Taser, pepper spray) would have made a difference. In addition, Cardoza testified that she had insufficient time to retrieve the less-lethal shotgun, and Meadows testified that his K-9 was not trained for apprehension under these circumstances. Finally, and more importantly, "as long as an officer's conduct falls *within the range of conduct* that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm." *Hayes*, 57 Cal. 4th at 632; *Martinez v. Cnty. of Los Angeles*, 47 Cal. App. 4th 334, 345 (1996).

### III.   CONCLUSION

The Court should grant Defendants' motion and enter summary judgment in their favor. In the alternative, the Court should grant partial summary judgment.

| | | |
|---|---|---|
| 1 | DATED: July 1, 2025 | Respectfully submitted, |
| 2 | | **MANNING & KASS** |
| 3 | | **ELLROD, RAMIREZ, TRESTER LLP** |
| 4 | | _____/s/ Yury A. Kolesnikov_____ |
| 5 | | Mildred K. O'Linn |
| | | Yury A. Kolesnikov |
| 7 | | *Attorneys for Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun* |

11

Defendants' Reply in Further Support of Motion for Summary Judgment

# CERTIFICATION PURSUANT TO LOCAL RULE 11-6.2

The undersigned, counsel of record for Defendants, certifies that this brief contains 10 pages, which complies with the Court's standing order on motions for summary judgment.

DATED: July 1, 2025

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

By: _____/s/ Yury A. Kolesnikov_____
Mildred K. O'Linn
Yury A. Kolesnikov

*Attorneys for Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun*