1  Mildred K. O'Linn (State Bar No. 159055)
2      *missy.olinn@manningkass.com*
   Yury A. Kolesnikov (State Bar No. 271173)
3      *yury.kolesnikov@manningkass.com*
4  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
5  801 S. Figueroa St, 15th Floor
6  Los Angeles, California  90017-3012
   Telephone:  (213) 624-6900
7  Facsimile:   (213) 624-6999

8  *Attorneys for Defendants City of Covina, Vanessa*
9  *Cardoza, David Meadows, and Billy Sun*

10



11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**

13  E.V. and X.V., minors by and through    |  Case No. 5:23-cv-1562 CBM (SHK)
14  their guardian *ad litem*, Karla Juarez;
    D.V., a minor, by and through his       |  **Defendants' Response to Plaintiffs'**
15  guardian *ad litem*, Elias Valdivia;    |  **Statement of Genuine Disputes**
    individually and as successors-in-
16  interest to Daniel Luis Valdivia,
    deceased; JESSICA VALDIVIA; LUIS        |  Date:    August 12, 2025
17  VALDIVIA JR., individually,             |  Time:    10:00 a.m.
18                                          |  Judge:   Hon. Consuelo B. Marshall
                              Plaintiffs,   |  Courtroom:  8D
19
20              v.
21
22  CITY OF COVINA; VANESSA
    CARDOZA; DAVID MEADOWS;                 |  Filed Dated:   August 4, 2023
23  BILLY SUN; DOES 1–10, inclusive,        |  Trial Date:    October 21, 2025
24                              Defendants.
25
26
27
28

Pursuant to Civ. L.R. 56-3, Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun submit this response to Plaintiffs' Statement of Genuine Disputes [Dkt. No. 48-1].

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 1 | On April 9, 2022, Jonathan Logan, an employee of Country Liquor, located at 124 East Arrow Highway in the City of Covina, went to the parking lot in front of the store to take out the trash and smoke a cigarette.<br><br>**Supporting evidence:**<br><br>Ex. 4 at 10:55–11:05 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): information provided to Officers, prior to their use of unreasonable deadly force, includes: 22:12:51 "417 J/O-- Sus M/H 40 yrs blk sweater, shorts facial hair holding a can of beer blk hand gun." 22:13:13 same. 22:13:17 "one call at this time." 22:13:37 "Starbucks employee called to adv same circs." 22:13:55 "Subj is still near the front door." 22:15:09 "X3 calls received, subj is 415 verbal with two other subjs to the front." 22:15:31 "Starbucks employee adv grp of 3-4 males subjs to the front of the loc." 22:15:37 "415V with two other males." 22:16:21 "subj with a gun placed the gun blk into his front pocket." |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*. **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown. **Rule 602/603**: Not Under Oath, Speculation. **Rule 403/602/611**: Compound, Lacks Foundation. **Rule 801/802**: Impermissible Hearsay. |
| 1 | **Defendants' response:** The cited evidence is relevant for purposes of background information. Defendants are not relying on this information as justifying their actions. Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial. In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*. Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 2 | While he was outside, Logan was approached by Valdivia, who informed Logan that he was with a gang and that he "kill[s] n[****]s like you, all day."<br><br>**Supporting evidence:**<br><br>Ex. 4 at 11:00–11:30 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.)<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.*<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Misleading, Information Unknown, Vague and Ambiguous.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/602/611**: Compound, Lacks Foundation.<br>**Rule 404**: Impermissible Character Evidence.<br>**Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 2 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information. Defendants are not relying on this information as justifying their actions.<br><br>Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial.  In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*.  Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
| 3 | Valdivia also showed Logan what "looked like a g[***] d[***] gun." **Supporting evidence:** Ex. 4 at 11:35–11:42 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. **See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at <u>22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37;</u> and <u>22:16:21</u> for information known provided to officers. (See No. 1 Above.) <u>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement</u> *filed concurrently herewith.* **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. **Rule 602/603**: Not Under Oath, Speculation. **Rule 403/611**: Compound, Lacks Foundation. **Rule 404**: Impermissible Character Evidence. **Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 3 | **Defendants' response:** The cited evidence is relevant for purposes of background information.  It is also relevant to demonstrate that a reasonable person in the officers' position would perceive Valdivia's gun to be "real," just as Mr. Logan perceived it. Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial.  In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*.  Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 4 | According to Logan, Valdivia told him: "I'll shoot you, m[***] f[***]." **Supporting Evidence:** Ex. 5 at 22:40–22:45 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. **See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.) *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.* **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. **Rule 602/603**: Not Under Oath, Speculation. **Rule 403/611**: Compound, Lacks Foundation. **Rule 404**: Impermissible Character Evidence. **Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 4 | **Defendants' response:** The cited evidence is relevant for purposes of background information. Defendants are not relying on this information as justifying their actions. Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial. In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*. Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 5 | When asked to describe the gun, Logan said it was "black" and, after noting that he "know[s] guns," described it as a "45."<br><br>**Supporting evidence:**<br><br>Ex. 4 at 11:42–11:48 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.) **See also Defense Ex. 26, Physical Evidence Report** at 1: $CO_2$ powered BB gun.<br><br>Plaintiffs/Opposing Party's Evidence: **Exh. E, Meadows Depo** 56:10-12 to Sincich Decl ¶6: The "gun" at issue was not a "45" caliber handgun but BB gun.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.* **Additional Objections:** **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br><br>**Rule 602/603**: Not Under Oath, Speculation. **Rule 403/611**: Compound, Lacks Foundation. **Rule 404**: Impermissible Character Evidence. **Rule 801/802**: Impermissible Hearsay. |
| 5 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information.  It is also relevant to demonstrate that a reasonable person in the officers' position would perceive Valdivia's gun to be "real," just as Mr. Logan perceived it. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial.  In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*.  Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |
| 6 | According to Logan, "the m[***] f[***] was real."<br><br>**Supporting evidence:**<br><br>Ex. 4 at 11:47–11:50;<br><br>*see also* Ex. 5 at 24:45–25:05 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.)<br><br>**See also Defense Ex. 26, Physical Evidence Report** at 1: $CO_2$ powered BB gun.<br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** 56:10-12 to Sincich Decl ¶6: The "gun" at issue was not "real" gun but BB gun.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.*<br><br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/611**: Compound, Lacks Foundation, Speculation.<br><br>**Rule 801/802**: Impermissible Hearsay. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 6 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information. It is also relevant to demonstrate that a reasonable person in the officers' position would perceive Valdivia's gun to be "real," just as Mr. Logan perceived it.<br><br>Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial. In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*. Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |
| 7 | When asked what type of gun it was, Logan said: "It was a Glock. It was a g[***] d[***] Glock."<br><br>**Supporting evidence:**<br><br>Ex. 4 at 11:49–11:53 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17: 22:13:37: 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.)<br>**See also Defense Ex. 26, Physical Evidence Report** at 1: $CO_2$ powered BB gun.<br>Plaintiffs/Opposing Party's Evidence: **Exh. E, Meadows Depo** 56:10-12 to Sincich Decl ¶6: The "gun" at issue was a BB gun. |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
|  |  | _See_ Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement _filed concurrently herewith_.<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 7 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information.  It is also relevant to demonstrate that a reasonable person in the officers' position would perceive Valdivia's gun to be "real," just as Mr. Logan perceived it.<br><br>Plaintiffs do not provide any support as to why this information is "inadmissible" or _unduly_ prejudicial.  In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence _at trial_.  Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. |  |
| 8 | And then he added, twice more: "It was real."<br><br>**Supporting evidence:**<br><br>Ex. 4 at 11:53–11:54, 12:29–12:31 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence. irrelevant to the inquiry, thus unfair prejudice and lacks foundation. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | **See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.) **See also Defense Ex. 26, Physical Evidence Report** at 1: $CO_2$ powered BB gun. Plaintiffs/Opposing Party's Evidence: **Exh. E, Meadows Depo** 56:10-12 to Sincich Decl ¶6: The "gun" at issue was a BB gun. *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.* **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading, Cumulative. **Rule 602/603**: Not Under Oath, Speculation. **Rule 403/611**: Compound, Lacks Foundation, Speculation. **Rule 801/802**: Impermissible Hearsay. |
| 8 | **Defendants' response:** The cited evidence is relevant for purposes of background information. It is also relevant to demonstrate that a reasonable person in the officers' position would perceive Valdivia's gun to be "real," just as Mr. Logan perceived it. Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial. In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*. Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 9 | Logan also explained that he has seen fake guns before, and it appeared to him that the gun that Valdivia showed him was "real," not fake.<br><br>**Supporting evidence:**<br><br>Ex. 4 at 13:25–13:40;<br><br>Ex. 5 at 24:45–25:05 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>See Defense Ex. 24, CPD Incident Report (CAD Call) at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.) See also Defense Ex. 26, Physical Evidence Report at 1: $CO_2$ powered BB gun.<br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** 56:10-12 to Sincich Decl ¶6: The "gun" at issue was a BB gun.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*.<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 9 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information.  It is also relevant to demonstrate that a reasonable person in the officers' position would perceive Valdivia's gun to be "real," just as Mr. Logan perceived it.<br><br>Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial.  In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | evidence *at trial*.  Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |
| 10 | To Logan, the gun looked like a real Glock because it did not have an orange tip (that a fake gun would normally have).<br><br>**Supporting evidence:**<br><br>Ex. 5 at 7:20–7:35 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. No officer described not seeing an orange tip on the gun as relevant to their analysis or to establish it as a fact.<br><br>**Objections**:<br>**Local Rule 56-1:** Not a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Restriction of hindsight evidence. *See Tennessee v. Garner*, 471 U.S. 1, 26 (1985); *Glenn v. Washington Cnty.*, 673 F.3d at 873 n.8 (9th Cir. 2011). (See No. 1 Above)<br>**Local Rule 7-6**: Witness requires, and Plaintiffs' request Oral Examination.<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 10 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information.  It is also relevant to demonstrate that a reasonable person in the officers' position would perceive Valdivia's gun to be "real," just as Mr. Logan perceived it.<br><br>Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial.  In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*.  Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |
| 11 | Logan explained that Valdivia had the gun in his hand and showed it to him about four to five times.<br><br>**Supporting evidence:**<br><br>Ex. 4 at 12:00–12:31, 14:30–15:25, 16:52–17:05 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.*<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 11 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information. Defendants are not relying on this information as justifying their actions.<br><br>Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial.  In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*.  Here, the cited evidence would be admissible at trial | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | through, among other things, trial testimony by Mr. Logan. | |
| 12 | Valdivia told Logan that he wanted to "use" the gun and to shoot somebody.<br><br>**Supporting evidence:**<br><br>Ex. 4 at 15:28–15:41;<br><br>Ex. 5 at 22:20–22:40 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.)<br>**See also Defense Ex. 26, Physical Evidence Report** at 1: $CO_2$ powered BB gun.<br>Plaintiffs/Opposing Party's Evidence: **Exh. E, Meadows Depo** 56:10-12 to Sincich Decl ¶6: The "gun" at issue was a BB gun.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*.<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 12 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information. Defendants are not relying on this information as justifying their actions.<br><br>Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial.  In any event, under Rule 56, the | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | supporting evidence need only be in a form that would be admissible in evidence *at trial*. Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |
| 13 | And to Logan, it seemed like Valdivia "wanted to shoot someone tonight" and "wanted to shoot a person." <br><br> **Supporting evidence:** <br><br> Ex. 4 at 12:29–12:41, 15:49–15:52 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. <br><br> **See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at <u>22:12:51; 22:13:13; 22:13:17: 22:13:37: 22:13:55; 22:15:09; 22:15:31; 22:15:37;</u> and <u>22:16:21</u> for information known provided to officers. (See No. 1 Above.) <br> *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*. <br> **Additional Objections**: <br> **FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party. <br> **Rule 401/402**: Relevance. <br> **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. <br> **Rule 602/603**: Not Under Oath, Speculation. <br> **Rule 403/602/611**: Compound, Lacks Foundation. <br> **Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 13 | **Defendants' response:** <br><br> The cited evidence is relevant for purposes of background information. Defendants are not relying on this information as justifying their actions. <br><br> Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial. In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | evidence *at trial*. Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |
| 14 | During his interview with a detective, Logan emphasized several times that the way Valdivia was acting, it looked as if he wanted to kill someone or get himself killed.<br><br>**Supporting evidence:**<br><br>Ex. 5 at 23:00–23:30, 24:15–24:30, 25:00–25:20 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.)<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*.<br><br>**Additional Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/602/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 14 | **Defendants' response:**<br><br>The cited evidence is relevant for purposes of background information. Defendants are not relying on this information as justifying their actions. The cited evidence is also potentially relevant to demonstrate that Valdivia likely intended to commit "suicide by cop" during the incident. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Plaintiffs do not provide any support as to why this information is "inadmissible" or *unduly* prejudicial. In any event, under Rule 56, the supporting evidence need only be in a form that would be admissible in evidence *at trial*. Here, the cited evidence would be admissible at trial through, among other things, trial testimony by Mr. Logan. | |
| 15 | The incident was witnessed by multiple persons, who became scared of Valdivia brandishing the gun and threatening people.<br><br>**Supporting evidence:**<br><br>*See, e.g.*, Exs. 6, 7, 8;<br><br>*see also* Ex. 5 at 10:18–10:28 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.)<br>**See also Defense Ex. 5 at 10:18–10:28**: did not state that Valdivia "brandished" a gun, cannot speak for what another person saw, does not state that anyone was scared.<br>**See also Defense Ex. 6**: did not state that Valdivia "brandished" a gun, instead stated "there's a group of people there, I don't know which one it is exactly"—caller does not identify Valdivia as the subject in question. Caller also states, "sorry there's not much else I can say about it, I didn't witness it personally"—caller was calling 911 to inform about what someone else may have seen, states that people are not in distress, does not mention scared, just that it's making people uncomfortable, never mentions threatening people, and when asked if they were arguing at all caller stated "No, they're just outside smoking." Further, there is no distress in the caller's voice. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     |                                                      | **See also Defense Ex. 7**: did not state that Valdivia "brandished" a gun, states that he did not know what Valdivia was saying and never states that anyone was scared. Further, there is no distress in the caller's voice. **See also Defense Ex. 8**: did not state that Valdivia "brandished" or pointed the gun at anyone, never states that anyone was scared, never states that Valdivia threatened anyone. Caller is relaying information for an unknown person in the background and asking that person for information to answer dispatcher questions. Further, there is no distress in the caller's voice. *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*. **Additional Objections**: **Local Rule 56-1**: Unsupported with Pinpoint Citation. Each fact must be supported by pinpoint citation to evidence in the record. **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading, Misstates Evidence. **Rule 602/603**: Not Under Oath, Speculation. **Rule 403/611**: Compound, Lacks Foundation. **Rule 404**: Impermissible Character Evidence. **Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 15 | **Defendants' response:** The cited information is clearly relevant to the officers' actions as it pertains to the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Thus, one of the callers (a Starbucks manager) called 911 to report that there was a man outside "flashing his gun," which scared the customers. *See* Ex. 6 at 0:02–0:10, 1:00–1:10, 1:27–1:31, 2:00–2:07.<br><br>Another caller told 911 that there was a customer outside of his business having an argument and it seemed like he had a gun. *See* Ex. 7 at 0:10–0:22. According to this caller, the man was "arguing with people" and "showing his gun." *See* Ex. 7 at 0:39–0:46.<br><br>A third person also called 911 to report a man with a gun outside of a liquor store next to Starbucks. *See* Ex. 8 at 0:00–0:09. According to this caller, "there were people running away from him." *See* Ex. 8 at 0:10–0:15. The caller indicated that the man was holding the gun in his hand. Ex. 8 at 0:15–0:25. She described the suspect as a Hispanic male wearing a black sweater and black shorts. Ex. 8 at 0:25–0:35. The caller described the gun as "a black handgun." Ex. 8 at 0:54–1:05.<br><br>Moreover, undisputed audio and video evidence, as well as the CAD log, demonstrate that this information was transmitted to the officers by dispatch. *See* Exs. 9, 10, 11; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47, 2:18–2:23.<br><br>The evidence would be admissible at trial through, among other things, trial testimony by the callers, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |
| 16 | At least three of those witnesses called 911 to report the incident.<br><br>**Supporting evidence:**<br><br>Exs. 6, 7, 8 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>**See Defense Ex. 6**: caller stated, "sorry there's not much else I can say about it, I didn't witness it personally"—caller was calling 911 to inform about what someone else may have seen. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     |                                                      | *See* **Defense Ex. 8**: Caller is parroting information for an unknown person in the background and asking that person for information to answer dispatcher questions. |
|     |                                                      | *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.* **Additional Objections**: **Local Rule 56-1**: Unsupported with Pinpoint Citation. Each fact must be supported by pinpoint citation to evidence in the record. **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. **Rule 603**: Not Under Oath. **Rule 403/602/611**: Compound, Lacks Foundation, Speculation. **Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 16 | **Defendants' response:** | |

**Defendants' response:**

The cited information is clearly relevant to the officers' actions as it pertains to the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch.

Thus, one of the callers (a Starbucks manager) called 911 to report that there was a man outside "flashing his gun," which scared the customers. *See* Ex. 6 at 0:02–0:10, 1:00–1:10, 1:27–1:31, 2:00–2:07.

Another caller told 911 that there was a customer outside of his business having an argument and it seemed like he had a gun. *See* Ex. 7 at 0:10–0:22. According to this caller, the man was "arguing with people" and "showing his gun." *See* Ex. 7 at 0:39–0:46.

A third person also called 911 to report a man with a gun outside of a liquor store next to Starbucks. *See* Ex. 8 at 0:00–0:09. According to this caller, "there were people running away from him." *See* Ex. 8 at 0:10–0:15. The

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|

caller indicated that the man was holding the gun in his hand. Ex. 8 at 0:15–0:25. She described the suspect as a Hispanic male wearing a black sweater and black shorts. Ex. 8 at 0:25–0:35. The caller described the gun as "a black handgun." Ex. 8 at 0:54–1:05.

Moreover, undisputed audio and video evidence, as well as the CAD log, demonstrate that this information was transmitted to the officers by dispatch. *See* Exs. 9, 10, 11; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47, 2:18–2:23.

The evidence would be admissible at trial through, among other things, trial testimony by the callers, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted.

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 17 | Thus, a Starbucks manager called 911 to report that there was a man outside "flashing his gun," which scared the customers.<br><br>**Supporting evidence:**<br><br>Ex. 6 at 0:02–0:10, 1:00–1:10, 1:27–1:31, 2:00–2:07 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at <u>22:12:51</u>; <u>22:13:13</u>; <u>22:13:17</u>; <u>22:13:37</u>; <u>22:13:55</u>; <u>22:15:09</u>; <u>22:15:31</u>; <u>22:15:37</u>; and <u>22:16:21</u> for information known provided to officers. (See No. 1 Above.)<br><br>**See also Defense Ex. 6**: "sorry there's not much else I can say about it, I didn't witness it personally"—was calling 911 to inform about what someone else may have seen, states that people are not in distress, does not mention scared, just that it's making people uncomfortable. Further, there is no distress in the caller's voice.<br><br><u>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement</u> *filed concurrently herewith*.<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading, Misstates Evidence.<br><br>**Rule 603**: Not Under Oath.<br>**Rule 403/602611**: Compound, Lacks Foundation, Speculation.<br>**Rule 404**: Impermissible Character Evidence.<br>**Rule 801/802**: Impermissible Hearsay and Hearsay within Hearsay. |
| 17 | **Defendants' response:**<br><br>The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
|  | was subsequently relayed to the officers by dispatch.<br><br>Dispatch clearly communicated this information to the officers by advising them that the suspect had a gun and was actively disturbing the peace. *See* Exs. 9, 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47.<br><br>The evidence would be admissible at trial through, among other things, trial testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. |  |
| 18 | Another caller told 911 that there was a customer outside of his business having an argument and it seemed like he had a gun.<br><br>**Supporting evidence:**<br><br>Ex. 7 at 0:10–0:22 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight inquiry, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*.<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 603**: Not Under Oath.<br>**Rule 403/602/611**: Compound, Lacks Foundation, Speculation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 18 | **Defendants' response:**<br><br>The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch.<br><br>Dispatch clearly communicated this information to the officers by advising them that the suspect had a gun and was actively disturbing the peace. *See* Exs. 9, 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47.<br><br>The evidence would be admissible at trial through, among other things, trial |  |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |
| 19 | According to the caller, the man was "arguing with people" and "showing his gun." **Supporting evidence:** Ex. 7 at 0:39–0:46 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*. **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. **Rule 603**: Not Under Oath. **Rule 403/602/611**: Compound, Lacks Foundation, Speculation. **Rule 801/802**: Impermissible Hearsay. |
| 19 | **Defendants' response:** The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch. Dispatch clearly communicated this information to the officers by advising them that the suspect had a gun and was actively disturbing the peace. *See* Exs. 9, 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47. The evidence would be admissible at trial through, among other things, trial testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 20 | A third person also called 911 to report a man with a gun outside of a liquor store next to Starbucks. **Supporting evidence:** Ex. 8 at 0:00–0:09 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. _See_ Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement _filed concurrently herewith._ **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. **Rule 603**: Not Under Oath. **Rule 403/602/611**: Compound, Lacks Foundation, Speculation. **Rule 801/802**: Impermissible Hearsay. |
| 20 | **Defendants' response:** The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch. Dispatch clearly communicated this information to the officers by advising them that the suspect had a gun and was actively disturbing the peace. _See_ Exs. 9, 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47. The evidence would be admissible at trial through, among other things, trial testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 21 | According to the caller, "there were people running away from him." **Supporting evidence:** Ex. 8 at 0:10–0:15 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*. **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. **Rule 603**: Not Under Oath. **Rule 403/602/611**: Compound, Lacks Foundation, Speculation. **Rule 801/802**: Impermissible Hearsay. |
| 21 | **Defendants' response:** The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch. Dispatch clearly communicated this information to the officers by advising them that the suspect had a gun and was actively disturbing the peace. *See* Exs. 9, 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47. The evidence would be admissible at trial through, among other things, trial testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 22 | The caller indicated that the man was holding the gun in his hand.<br><br>**Supporting evidence:**<br><br>Ex. 8 at 0:15–0:25 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*.<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 603**: Not Under Oath.<br>**Rule 403/602/611**: Compound, Lacks Foundation, Speculation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 22 | **Defendants' response:**<br><br>The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch.<br><br>Dispatch clearly communicated this information to the officers by advising them that the suspect had a gun and was actively disturbing the peace. *See* Exs. 9, 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47.<br><br>The evidence would be admissible at trial through, among other things, trial testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 23 | She described him as a Hispanic male wearing a black sweater and black shorts.<br><br>**Supporting evidence:**<br><br>Ex. 8 at 0:25–0:35 | **Disputed,** inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.*<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br><br>**Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading.<br>**Rule 603**: Not Under Oath.<br>**Rule 403/602/611**: Compound, Lacks Foundation, Speculation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 23 | **Defendants' response:**<br><br>The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch.<br><br>Dispatch clearly communicated this information to the officers by broadcasting that the suspect was a 40-year-old Hispanic male with facial hair wearing a black sweater and shorts.  *See* Ex. 9; Ex. 24 at CPD000092.<br><br>The evidence would be admissible at trial through, among other things, trial testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 24 | The caller described the gun as "a black handgun." **Supporting evidence:** Ex. 8 at 0:54–1:05 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.* **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Vague and Ambiguous, Misleading. **Rule 603**: Not Under Oath. **Rule 403/602/611**: Compound, Lacks Foundation, Speculation. **Rule 801/802**: Impermissible Hearsay. |
| 24 | **Defendants' response:** The cited information is clearly relevant to the officers' actions as it pertains to one of the three callers who called 911 and provided the information that was subsequently relayed to the officers by dispatch. Dispatch clearly communicated this information to the officers by advising them that the suspect had a black handgun and was actively disturbing the peace. *See* Exs. 9, 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47. The evidence would be admissible at trial through, among other things, trial testimony by the caller, by the dispatch persons, and by the officers. Moreover, the cited evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 25 | At approximately 10:12 p.m., dispatch broadcasted to the officers that a 40-year-old Hispanic male with facial hair wearing a black sweater and shorts was at a liquor store "holding a can of beer ***and a black handgun*** in his hands." | **Undisputed** that this information was broadcasted to officers over the radio. |
| | | **Disputed** as to the accuracy of the information broadcasted. |
| | **Supporting evidence:** | <u>Plaintiffs/Opposing Party's Evidence</u>: **Exh. J, Autopsy Report** at CPD 121 to Sinich Decl ¶11: Valdivia was 24-years-old. |
| | Ex. 9; | **Exh. Q, Sun BWC** at 02:44 to Sinich Decl ¶17: Valdivia was wearing pants. |
| | Ex. 24 at CPD000092 | **See also Defense Ex. 26, Physical Evidence Report** at 1: $CO_2$ powered BB gun. |
| | | *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*. |
| | | **Additional Objections**: |
| | | **Rule 403**: Vague and Ambiguous, Misleading. |
| | | **Rule 403/602/611**: Compound, Lacks Foundation, Speculation. |
| | | **Rule 801/802**: Impermissible Hearsay. |
| 25 | **Defendants' response:** | |
| | Plaintiffs do **<u>not</u>** dispute that this information was broadcast to the officers. | |
| | Plaintiffs only dispute the accuracy of the information, which is irrelevant for purposes of Defendants' motion. The cited evidence is relevant to the information that was provided to the officers, which informed how they approached and handled the situation and is directly relevant to the totality of the circumstances known to the officers at the time of the incident. | |
| | For this reason, the evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 26 | At approximately 10:15 p.m., dispatch advised the officers that the suspect was ***actively disturbing the peace*** with others in the area and that there were already three calls received.<br><br>**Supporting evidence:**<br><br>Ex. 10;<br><br>Ex. 24 at CPD000092;<br><br>Ex. 1 at 0:29–0:47 | **Disputed**. Valdivia was not "actively disturbing the peace."<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. N, Surveillance Video** at 17:53-18:45 (04-09-2022, 10:18:01-10:18:51 AM) to Sincich Decl ¶15; Holdaway Decl ¶8: Valdivia was not "actively disturbing the peace," and was not acting in a threatening manner.<br>**Exh. Q, Sun BWC** at 02:40-02:47 to Sincich Decl ¶17: Valdivia was not "actively disturbing the peace."<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): Call does not state that the subject was "actively disturbing the peace."<br>**See also Defense Ex. 1**: dispatch does not state that the subject was "actively disturbing the peace."<br>**See also Defense Ex. 10**: dispatch does not state that the subject was "actively disturbing the peace."<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Argumentative, Vague and Ambiguous, Misleading.<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 26 | **Defendants' response:**<br><br>Undisputed video and audio evidence demonstrates that dispatch advised the officers that the suspect was "415 verbal" with multiple subjects, which to the officers meant that he was actively disturbing the peace. *See* Ex. 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47; *see also* Ex. 28 at 41:14–17 ("Q: What does 415 mean?  A: It's the term that we use as combative or uncooperative, argumentative. It's kind of a reflection of the Penal Code 415."); Ex. 28 at 42:16–22 ("Q: So when you receive a call for a 415 individual, did that mean | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | to you that by the nature of the training, he was going to be aggressive? A: It led me to perceive that the reporting parties, callers notified dispatch that he was aggressive and that we were likely to encounter someone who was aggressive as well."); Ex. 28 at 43:12–13 ("Q: Can a person be 415 and not be aggressive? A: Not in this instance."); Ex. 28 at 43:21–23 (testifying that dispatch "are trained to analyze [the information received from 911 callers] and disseminate it to [the officers]").<br><br>The *accuracy* of the information provided by dispatch to the officers is irrelevant for purposes of Defendants' motion. The cited evidence is relevant to the information that was provided to the officers, which informed how they approached and handled the situation and is directly relevant to the totality of the circumstances known to the officers at the time of the incident.<br><br>For this reason, the evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |
| 27 | At approximately 10:16 p.m., just as the officers arrived at the scene, dispatch advised the officers that the subject **had the gun "in his front pocket."**<br><br>**Supporting evidence:**<br><br>Ex. 11;<br><br>Ex. 24 at CPD000092;<br><br>Ex. 1 at 2:18–2:23 | **Undisputed.** |
| 28 | Several officers responded to the scene, including Officers Sun, Meadows, and Cardoza.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 53:14–54:2;<br><br>Ex. 29 at 60:15–21 | **Undisputed.** |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 29 | While enroute, Officer Sun took charge of setting up a containment and directed other units as to where they should park once they are on the scene.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 24:12–15, 53:21–54:10;<br><br>Ex. 13 at 20:9–13;<br><br>Ex. 29 at 46:23–47:13 | **Undisputed.** |
| 30 | To that end, Officer Sun (1) told Officer Meadows that he and Officer Sun would park near the Starbucks and approach on foot, (2) directed Officers Dixon and Cardoza to the east side, (3) directed Officer Avila to be on the northwest side, and (4) directed the officer arriving after Officers Sun and Meadows to be on the south side.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 52:15–18, 53:21–54:10;<br><br>Ex. 29 at 47:6–48:2 | **Undisputed** for the purposes of this opposition. |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 31 | Officers Sun and Meadows arrived on the scene and exited their patrol vehicles at approximately **10:16:30 p.m.**<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:23;<br><br>Ex. 2 at 0:24 | **Disputed**. Officer Meadows exited his patrol vehicle at approximately 10:16:36 p.m. such that he had to jog to catch up with Officer Sun, who also took a few jogging steps.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** at 50:4-9 to Sincich Decl ¶6.<br>**Exh. R, Meadows BWC** at 00:21-00:28 to Sincich Decl ¶18.<br>**Exh. Q, Sun BWC** at 02:20-02:36 to Sincich Decl ¶17.<br><br><u>**Objections**</u>:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Misstates Facts, Misleading. |
| 31 | **Defendants' response:**<br><br>Officer Sun's video shows him arriving and exiting his vehicle between 22:16:29 and 22:16:33. Ex. 1 at 2:19–2:23. Officer Meadows's video shows him arriving and exiting his vehicle between 22:16:36 and 22:16:38.  Ex. 2 at 0:22–0:24.  Moreover, Plaintiffs' own demonstrative exhibits reveal that the time stamps on the two videos are off by 2 seconds. *See, e.g.*, Ex. G at 1 (Officer Sun's video shows "22:17:07" for allegedly the same frame as Officer Meadows's video, which shows "22:17:09"). | |
| 32 | They walked over to the liquor store and obtained visual of Valdivia approximately twenty seconds later.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:41;<br><br>Ex. 2 at 0:39. | **Disputed** as to "walked." These officers rushed into the parking lot without a plan.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** at 50:4-9 to Sincich Decl ¶6.<br>**Exh. R, Meadows BWC** at 00:21-00:28 to Sincich Decl ¶18.<br>**Exh. Q, Sun BWC** at 02:20-02:36 to Sincich Decl ¶17. |
| 32 | **Defendants' response:** | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Plaintiffs merely quibble with semantics and do not seriously dispute that the officers moved from their patrol vehicles towards the liquor store and obtained visual of Valdivia approximately 20 seconds later. | |
| 33 | Officer Cardoza arrived on the scene shortly before Officers Sun and Meadows did and was in the process of observing Valdivia from the north as Officers Sun and Meadows approached him from the west.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 14:16–23, 55:6–8, 56:19–21;<br><br>Ex. 21 at 23:10–16, 24:9–13 | **Undisputed** that Officer Cardoza was observing Valdivia instead of getting her beanbag shotgun and was forced to abandon her plan to get the beanbag shotgun because Officer Sun rushed to the parking lot without a plan or communication with Officer Cardoza.<br><br><u>**Objections**</u>:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Vague as to time, Vague as to "scene", Misleading.<br>**Rule 403/611**: Compound. |
| 34 | At **<u>10:16:54 p.m.</u>**, Officer Sun yells to Valdivia: "Hey, let me see your hands! Let me see your hands!" and when that fails to get Valdivia's attention, continues with: "Put your hands up! Don't fucking move!"<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:43–2:47 | **Undisputed** that Officers Sun and Meadows gave simultaneous and conflicting (thus confusing) commands, including "Let me see your hands," "Don't move," and "Put your hands up." Further undisputed that Officer Meadows statements cannot be heard from Officer Sun's video, thus disputed as to whether Valdivia heard and was able to understand Officers' statements.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. E, Meadows Depo** at 49:5-17 to Sincich Decl ¶6: pursuant to training, officers should avoid giving simultaneous and conflicting commands because they could cause confusion.<br>**Exh. P, Sun BWC** with Counter at 00:00-00:10 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Exh. R, Meadows BWC** at 00:40-00:44 to Sincich Decl ¶18.<br><br>**Objections**: |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     |                                                      | **FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party. <br> **Rule 403/611**: Compound. |
| 34  | **Defendants' response:** <br><br> Plaintiffs misstate testimony by suggesting that any of the commands were "conflicting." The video evidence clearly shows that ***the commands were consistent***: to put up his hands and not to reach for anything. Plaintiffs provide no reasoned basis as to how "let me see your hands" and "put up your hands" are conflicting. They both reasonably and clearly tell Valdivia to show his hands by putting them up and not to reach for anything. <br><br> Ex. 1 at 2:43–2:47; Ex. 2 at 0:40–0:44. | |
| 35  | Officer Meadows similarly tells Valdivia: "Police! Put your hands up! Put your hands up!" <br><br> **Supporting evidence:** <br><br> Ex. 2 at 0:40–0:44 | **Undisputed** that Officers Sun and Meadows gave simultaneous and conflicting (thus confusing) commands, including "Let me see your hands," "Don't move," and "Put your hands up." Further undisputed that Officer Meadows statements cannot be heard from Officer Sun's video, thus disputed as to whether Valdivia heard and was able to understand Officers' statements. <br><br> Plaintiffs/Opposing Party's Evidence: <br> **Exh. E, Meadows Depo** at 49:5-17 to Sincich Decl ¶6: pursuant to training, officers should avoid giving simultaneous and conflicting commands because they could cause confusion. <br> **Exh. P, Sun BWC** with Counter at 00:00-00:10 to Sincich Decl ¶17; Holdaway Decl ¶4. <br> **Exh. R, Meadows BWC** at 00:40-00:44 to Sincich Decl ¶18. |
| 35  | **Defendants' response:** <br><br> Plaintiffs misstate testimony by suggesting that any of the commands were | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | "conflicting."  The video evidence clearly shows that ***the commands were consistent***:  to put up his hands and not to reach for anything.  Plaintiffs provide no reasoned basis as to how "let me see your hands" and "put up your hands" are conflicting.  They both reasonably and clearly tell Valdivia to show his hands by putting them up and not to reach for anything.<br><br>Ex. 1 at 2:43–2:47; Ex. 2 at 0:40–0:44. | |
| 36 | Instead of complying, Valdivia moves the beer bottle that he had in his right hand to his left hand and ***immediately reaches for his waistband with his right hand***.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:47–2:48 | **Undisputed** that Valdivia moved a bottle from one hand to the other.<br><br>**Disputed** that Valdivia did not comply with commands given the improper nature of the commands given.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** at 49:5-17 to Sincich Decl ¶6: pursuant to training, officers should avoid giving simultaneous and conflicting commands because they could cause confusion.<br>**Exh. P, Sun BWC with Counter** at 00:00-00:10 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Exh. R, Meadows BWC** at 00:40-00:44 to Sincich Decl ¶18.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403/611**: Argumentative, Compound, Vague and Ambiguous. |
| 36 | **Defendants' response:**<br><br>As discussed above, the officers' commands were not "conflicting."  *See supra* Defendants' reply to UF 34 and 35.  Further, undisputed video evidence clearly shows that Valdivia did ***not*** comply with those commands and, instead, immediately reached for his waistband—the general area where the officers knew he had a gun.  *See* Ex.1 at 2:47–2:48. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 37 | Officer Sun tells him not to reach: "Hey, get your fucking hands out of your pocket, dude!"<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:47–2:50 | **Undisputed** that Officer Sun stated, "Hey, get your fucking hands out of your pocket, dude!" and that Valdivia could hear and understand the command given his immediate compliance and lack of simultaneous and conflicting commands.<br>**Disputed** that the quoted statement is equivalent to telling Valdivia "not to reach."<br>**Disputed** as to argumentative sequence.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. P, Sun BWC** with Counter at 00:05-00:07 to Sincich Decl ¶17; Holdaway Decl ¶4. At approximately the time that Officer Sun stated, "Hey, get your - - ", Valdivia's hands are already moving up in the air and his hands are all the way in the air prior to Officer Sun finishing the present command as Valdivia is already in compliance with the prior command to get his hands up.<br><br><u>Objections</u>:<br>**Rule 403/611**: Argumentative, Compound, Vague and Ambiguous. |
| 38 | Valdivia says: "Whatever!" but complies and raises his hands.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:49–2:51;<br><br>Ex. 2 at 0:48 | **Undisputed**. That Valdivia says "Whatever" and that Valdivia complied with Officer Commands.<br><br><u>Objections</u>:<br>**Rule 403/611**: Argumentative, Compound, Vague and Ambiguous. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 39 | At this point, Officer Meadows tells Valdivia to get on the ground: "Get on the ground, now!"<br><br>**Supporting evidence:**<br><br>Ex. 2 at 0:49–0:50;<br><br>Ex. 1 at 2:51–2:53 | **Undisputed**. That Officer Meadows commands Valdivia, "Get on the ground, now!"<br><br>**Objections**:<br>**Rule 403/611**: Argumentative, Compound, Vague and Ambiguous. |
| 40 | As Valdivia starts getting on the ground, Officer Meadows tells him: "Don't reach for anything!"<br><br>**Supporting evidence:**<br><br>Ex. 2 at 0:51–0:53;<br><br>Ex. 1 at 2:54–2:55 | **Undisputed.**<br><br>**Objections**:<br>**Rule 403/611**: Argumentative, Compound, Vague and Ambiguous. |
| 41 | As Officers Sun and Meadows were giving commands to Valdivia, Officer Cardoza run toward them to provide assistance.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 55:9–12, 56:19–23, 57:2–6, 58:10–13;<br><br>Ex. 21 at 23:18–22 | **Undisputed.** |
| 42 | Valdivia proceeds getting on the ground, but only with the left elbow on the ground and the right hand propping him up.<br><br>**Supporting evidence:** | **Undisputed** that Valdivia got onto the ground.<br><br>**Disputed**. Valdivia's entire lower body is flat on the ground and the right side of this stomach is on the ground along with |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Ex. 1 at 2:56 | his left forearm (from elbow to wrist) and right hand.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. P, Sun BWC** with Counter at 00:12-00:15 to Sincich Decl ¶17; Holdaway Decl ¶4.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403/611**: Argumentative, Vague and Ambiguous. |
| 43 | Valdivia then **shifts his weight** to his left elbow and **reaches for his waistband** with his right hand at **10:17:07 p.m.**<br><br>**Supporting evidence:**<br>Ex. 1 at 2:57 | **Disputed**. Valdivia's "weight" already appeared to be on his left forearm/elbow and does not appear to shift weight.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. P, Sun BWC** with Counter at 00:12-00:15 to Sincich Decl ¶17; Holdaway Decl ¶4. |
| 43 | **Defendants' response:**<br><br>Plaintiffs merely quibble with semantics and do not dispute that Valdivia reached for his waistband with his right hand at approximately 22:17:07 while his weight was on his left forearm/elbow. | |
| 44 | Officer Sun radios that Valdivia "reached for his waist."<br><br>**Supporting evidence:**<br>Ex. at 1 2:57 | **Undisputed**.<br><br>**Objections**:<br>**Rule 401**: Irrelevant/Immaterial. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 45 | Simultaneously, Officers Sun and Meadows yell to Valdivia: "Don't reach for it!"<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:57–2:58;<br><br>Ex. 2 at 0:55–0:56 | **Disputed** to the extent that it is argumentatively vague. When Officers Sun and Meadows are simultaneously yelling commands at Valdivia, he is already tossing the gun away and to the ground.<br><br>Plaintiffs/Opposing Party's Evidence: **Exh. P, Sun BWC** with Counter at 00:13-00:15 to Sincich Decl ¶17; Holdaway Decl ¶4. |
| 45 | **Defendants' response:**<br><br>It's not clear what exactly Plaintiffs are disputing.  The videos clearly show that both officers yelled to Valdivia: "Don't reach for it!"  *See* Ex. 1 at 2:57–2:58; Ex. 2 at 0:55–0:56. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 46 | Valdivia proceeds to retrieve the gun and bring it forward until it is pointing in the direction of Officers Sun and Meadows.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:58;<br><br>Ex. 13 at 28:20–30:6;<br><br>Ex. 28 at 17:5–20, 71:20–23;<br><br>Ex. 17 at 24:10–17;<br><br>Ex. 29 at 55:17–25;<br><br>Ex. 21 at 25:1–15, 33:16–24;<br><br>Ex. 23 at 4:3–13;<br><br>Ex. 30 at 16:15–18, 17:4–9, 68:24–69:5, 69:17–18, 70:5–7 | **Disputed**. At 22:17:09 hours, which is 02:58 of Officer Sun's video as cited by the Defense, the gun is no longer in Valdivia's hand. Valdivia is not "proceeding" to retrieve the gun. Valdivia is not bringing the gun forward. Valdivia is not and had not ever pointed the gun in the direction of Officers Sun and Meadows. Instead, Valdivia tossed/discarded the gun away and to the ground. All of Defendants' self-serving statements lack credibility and are contradicted by the video evidence.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Decl. of Clark** ¶12.<br><br><u>Objections</u>:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading.<br>**Rule 403/602/611**: Compound, Vague, Speculation. |
| 46 | **Defendants' response:** | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|

Plaintiffs do **not** dispute that Valdivia retrieved the gun with his right hand despite multiple commands not to reach.  They also do **not** dispute that he then brought the right hand *with the gun* forward in the direction of Officers Sun and Meadows.  They also do **not** dispute that the gun in Valdivia's right hand was *traveling forward in the direction of the officers*.

They merely dispute whether the gun was "pointed" at the officers but offer ***no evidence* to contradict the officers' testimony** that the gun was traveling forward in Valdivia's hand *with the barrel facing the officers*.

In fact, the videos and Plaintiffs' demonstrative exhibits confirm that when the gun landed in front of Valdivia, *the barrel was facing the officers*, which is consistent with the officers' testimony that they saw Valdivia retrieve and start pointing the gun towards them.  *See* Ex. 13 at 29:09–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13; Ex. 28 at 71:20–23; Ex. 17 at 24:15–17; Ex. 29 at 55:17–25; Ex. 21 at 25:5–15, 33:16–24, 34:2–12; Ex. 23 at 4:10–13.

In any event, it is **legally irrelevant** under the totality of the circumstances whether Valdivia actually "pointed" or "started pointing" the gun at the officers.  Rather, "[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023).  "Officers shouldn't have to wait until a gun is pointed at them before they are entitled to take action." *Id.*

Here, given the totality of the information known to the officers and Valdivia's conduct during the incident, the officers were justified in using deadly force as soon as Valdivia retrieved the gun and started moving his hand with the gun forward in the direction of Officers Sun and Meadows.  Under clearly-established law, the officers did *not* have to wait for Valdivia to actually aim at them or, worse, take a shot.  After all, "*misplaced trust in this circumstance could be fatal for the officers*." *See id.* at 622.

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 47 | Shots are fired between **10:17:08 p.m.** and **10:17:11 p.m.**<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:58 – 3:01;<br><br>Ex. 2 at 0:56–0:58 | **Undisputed**. That the shots occur within this timeframe but **Disputed** as to the precise timing of shots. The first shot is fired, according to the time stamp on Officer Sun's Video, at 22:17:09.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots** at 44-91, to Sincich Decl ¶8; Holdaway Decl ¶7.<br>**Exh. H, Sun BWC Screenshots** at 44-91, to Sincich Decl ¶9; Holdaway Decl ¶5.<br>**Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. |
| 48 | Valdivia's gun drops in front of him.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 3:01 | **Undisputed** that the gun ended up on the ground in front of Valdivia who was face-down on the ground.<br><br>**Disputed** as phrased given Defendants argument. The gun was out of Valdivia's hand prior to every shot fired.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | **Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. **Decl. of Clark** ¶12d. <br><br> <u>Objections</u>: **FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party. **Rule 403**: Argument, Misleading as phrased and in context. |
| 48 | **Defendants' response:**<br><br>Plaintiffs only dispute the timing of the shots, arguing that the gun was out of Valdivia's hand when the shot were fired.<br><br>It is undisputed, however, that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took place within ***a fraction of a second*** from when the gun left Valdivia's hand, specifically: Cardoza — ***0.08 seconds***; Sun — ***0.28 seconds***; and Meadows — ***0.84 seconds***. *See* Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483). | |
| 49 | Logan, who was standing right next to Valdivia when the officers arrived and during the shooting, confirmed that Valdivia was "ready to pull that thing" (the gun) during his interaction with the officers.<br><br>**Supporting evidence:**<br><br>Ex. 4 at 14:05–14:10 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. Further, Logan was not standing next to Valdivia during the shooting—he was on the other side of the black car, out of view of Valdivia's upper body at the time of the shooting.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. Q, Sun BWC** at 02:56-03:18 to Sincich Decl ¶18.<br>**Exh. L, Statler BWC** at 01:10-01:30 to Sincich Decl ¶19.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.*<br>**Additional Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Misleading, Confusing and Unintelligible.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/602/611**: Compound, Lacks Foundation, Speculation.<br>**Rule 801/802**: Impermissible Hearsay. |

MANNING | KASS

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 49 | **Defendants' response:**<br><br>Logan's testimony is relevant as it confirms (and is consistent with) the events as depicted by the videos and testified to by the officers.<br><br>This testimony would be admissible at the time of trial through, among other things, trial testimony by Mr. Logan. | |
| 50 | And then, once he got on the ground, Valdivia "pulled it out on the officers."<br><br>**Supporting evidence:**<br><br>Ex. 4 at 15:22–15:28 | **Disputed**. Valdivia did not pull the gun out on the officers. Valdivia submitted to the officers' presence and discarded the BB gun once he got on the ground, before any shots were fired.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Decl. of Clark** ¶12.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*.<br>**Additional Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | **Rule 403**: Unduly Prejudicial, Information Unknown, Misleading, Confusing and Unintelligible. **Rule 602/603**: Not Under Oath, Speculation. **Rule 403/602/611**: Compound, Lacks Foundation, Speculation. **Rule 801/802**: Impermissible Hearsay. |
| 50 | **Defendants' response:** Logan's testimony is relevant as it confirms (and is consistent with) the events as depicted by the videos and testified to by the officers. This testimony would be admissible at the time of trial through, among other things, trial testimony by Mr. Logan. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 51 | According to Logan, "it looked like [Valdivia] pointed that s[***] at … them," referring to the officers.<br><br>**Supporting evidence:**<br><br>Ex. 5 at 7:00–7:15 | **Disputed**, inadmissible evidence. This information was unknown to the Defendant Officers, impermissible hindsight evidence, irrelevant to the inquiry, thus unfair prejudice and lacks foundation. Further, Logan was not standing next to Valdivia during the shooting—he was on the other side of the black car, out of view of Valdivia's upper body at the time of the shooting. Additionally, as seen on the Sun Video, Valdivia never pointed the gun at any officer.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶7; Holdaway Decl ¶2: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Decl. of Clark ¶12c.** |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith.* **Additional Objections**: **FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party. **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, Information Unknown, Misleading, Confusing and Unintelligible. **Rule 602/603**: Not Under Oath, Speculation. **Rule 403/602/611**: Compound, Lacks Foundation. **Rule 801/802**: Impermissible Hearsay. |
| 51 | **Defendants' response:** Logan's testimony is relevant as it confirms (and is consistent with) the events as depicted by the videos and testified to by the officers. This testimony would be admissible at the time of trial through, among other things, trial testimony by Mr. Logan. | |
| 52 | Officer Sun testified that he received the call at around 10:14 p.m. **Supporting evidence:** Ex. 28 at 8:7–9 | **Undisputed.** |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 53 | He was familiar with the area because it was "undoubtedly our most serviced area of the city" due to a large volume of crime, including stabbings, domestic violence, and narcotics and alcohol violations.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 20:17–23, 21:7–10, 21:17–20 | **Disputed** for the purpose of this opposition as there is no foundation for this irrelevant and prejudicial statement.<br><br><u>Objections</u>:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Misleading.<br>**Rule 404**: Impermissible Character Evidence.<br>**Rule 403/602/611**: Compound, Lacks Foundation. |
| 53 | **Defendants' response:**<br><br>Plaintiffs' dispute and objections based on lack of foundation lack merit as Officer Sun testified that he had personal knowledge of the area that they were responding to and that he personally knew based on his experience that this was a high-crime area. *See* Ex. 13 at 20:17–21:20.<br><br>The information is also clearly relevant to the totality of the circumstances known to the officers at the time of the incident. | |
| 54 | The initial call informed him that the subject was a Hispanic male in his 40's wearing black sweater and shorts, holding a bear and a gun, and that he was suspected of violating Penal Code § 417 by brandishing a gun.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 40:8–18, 45:3–4, 45:13–14, 45:19–23 | **Undisputed**. Including that the initial call was for a suspected violation that required investigation. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 55 | While enroute, Officer Sun received additional information, including that more people have called 911 regarding the same subject and that the subject was "actively 415" with several other individuals, which to Officer Sun meant that he was "argumentative, aggressive, trying to start a fight."<br><br>**Supporting evidence:**<br><br>Ex. 28 at 41:4–17, 42:16–22, 43:1–5, 44:13–16, 50:1–10;<br><br>Ex. 13 at 19:8–18 | **Disputed**: the subject was not "actively 415." This is a self-serving statement of Officer Sun who was "enroute" and did not see what was "actively" happening. Further, Officer Sun's argumentative interpretation of "415" lacks foundation and calls for speculation. No call stated that Valdivia was "argumentative, aggressive, trying to start a fight."<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. A, Sun Depo** to Sincich Decl ¶2: at 41:14-17 – Sun states that 415 could mean uncooperative but nevertheless is a reflection of the Penal Code (which include making unreasonable noise). At 42:16-22 – Sun erroneously states that he was notified by dispatch that the subject was aggressive and that they were going to encounter someone aggressive. At 43:1-5 – Sun clarified that the only thing dispatch actually said was that the initial subject was causing a 415 with two others. At 43:6-8 – dispatch did not tell Sun that Valdivia was starting a fight. At 43:9-11 – dispatch did not tell Sun that Valdivia was being aggressive. At 43:12-13 – by reasonable inference, Sun admits that a person can be 415 without being aggressive. At 44:22-24 – Sun did not know who started the argument.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Misleading.<br><br>**Rule 403/611**: Compound, Lacks Foundation, Speculation. |
| 55 | **Defendants' response:** | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Plaintiffs do **not** dispute that dispatch advised the officers that the suspect was "415 verbal." They just dispute the *accuracy* of the information, which is ***not*** relevant to the totality of the circumstances known to the officers.<br><br>Undisputed video and audio evidence demonstrates that dispatch advised the officers that the suspect was "415 verbal" with multiple subjects. *See* Ex. 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47. To Officer Sun, this meant that the suspect was aggressive or argumentative. *See* Ex. 28 at 41:14–17 ("Q: What does 415 mean? A: It's the term that we use as combative or uncooperative, argumentative. It's kind of a reflection of the Penal Code 415."); Ex. 28 at 42:16–22 ("Q: So when you receive a call for a 415 individual, did that mean to you that by the nature of the training, he was going to be aggressive? A: It led me to perceive that the reporting parties, callers notified dispatch that he was aggressive and that we were likely going to encounter someone who was aggressive as well."); Ex. 28 at 43:12–13 ("Q: Can a person be 415 and not be aggressive? A: Not in this instance."); Ex. 28 at 43:21–23 (testifying that dispatch "are trained to analyze [the information received from 911 callers] and disseminate it to [the officers]").<br><br>In fact, at his deposition, Officer Sun explained that under these circumstances, given the prior information that Valdivia was armed with a gun and that people were fearful, "415 verbal" very likely meant that Valdivia was being aggressive. *See* Ex. 28 at 43:12–44:5.<br><br>The *accuracy* of the information provided by dispatch to the officers is irrelevant for purposes of Defendants' motion. The cited evidence is relevant to the information that was provided to the officers, which informed how they approached and handled the situation and is directly relevant to the totality of the circumstances known to the officers at the time of the incident.<br><br>For this reason, the evidence is not hearsay as it pertains to the information that was provided to the officers at the time of the incident and is being cited for its impact on the officers, not the truth of the matter asserted. | |
| 56 | Officer Sun testified that the fact that there were multiple callers reporting similar information gave more credibility to the received information. | **Undisputed** as to what was actually known to the officers at the time. Caller information given to dispatch is not relevant to the inquiry. |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting evidence:** Ex. 28 at 47:3–6; Ex. 13 at 19:19–20:1 | |
| 57 | As he was getting out of his patrol car, Officer Sun also received information that the subject placed the gun in his right pocket. **Supporting evidence:** Ex. 28 at 41:12-13; Ex. 13 at 22:6–9 | **Undisputed**. Officers knew upon arrival that the situation was de-escalating without officer presence/intervention. |
| 58 | **Defendants' response:** Dispatch ***never*** advised the officers that the situation was "de-escalating" and none of the officers interpreted the information in that way. Rather, dispatch merely ***updated*** the officers about the location of Valdivia's gun. | |
| 58 | Upon making his approach, Officer Sun observed Valdivia arguing with two other individuals. **Supporting evidence:** Ex. 28 at 49:1–3; Ex. 13 at 23:11–13 | **Disputed**. Plaintiffs/Opposing Party's Evidence: **Exh. A, Sun Depo** to Sincich Decl ¶2: At 44:22-24 – Sun did not know who started the argument. At 49:1-5 – despite claiming that Valdivia was arguing, Sun was too far to hear anything that Valdivia was saying in order to determine if he was arguing. **Exh. N, Surveillance Video** at 07:24-18:52, to Sincich Decl ¶15; Holdaway Decl ¶8: Valdivia does not appear to be arguing. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | **Exh. Q, Sun BWC** at 02:20-02:55 to Sincich Decl ¶18. Cannot hear any arguing and Valdivia does not appear to be arguing.<br><br>**Objections**:<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Misleading.<br>**Rule 403/611**: Lacks Foundation, Speculation. |
| 58 | **Defendants' response:**<br><br>Plaintiffs do **not** dispute that Valdivia was in an argument with two other individuals, they just quibble as to *who* started the argument, which is **irrelevant** to the totality of the circumstances known to the officers.<br><br>The officers had a sufficient description to identify Valdivia as the person of interest who brandished a gun and was actively disturbing the peace. | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 59 | Given Valdivia's clothing and his actions, which matched the information provided by the 911 callers, Officer Sun was immediately able to identify Valdivia as the subject of the 911 calls.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 47:3–6, 49:12–16;<br><br>Ex. 13 at 23:4–10, 42:16–25 | **Disputed**. There is nothing in Valdivia's clothing or actions that matched information provided by 911 callers for Offices to immediately identify Valdivia as the subject of the 911 calls.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): 22:12:51 male Hispanic, 40 years, black sweater, shorts, facial hair, holding beer and handgun. 22:15:09 Subject 415 verbal with two other subjects in front. 22:16:21 Subject placed gun into front pocket.<br>**See Defense Ex. 4, Avila BWC** at 07:35-07:55: At least Subject Logan appears to be closer to 40 years old than Valdivia.<br>**Exh. J, Autopsy Report** at CPD 121 to Sincich Decl ¶11: Valdivia was 24-years-old.<br>**Exh. N, Surveillance Video** at 17:53-18:45 (04-09-2022 10:18:01-10:18:51 AM) to Sincich Decl ¶15; Holdaway Decl ¶8: no actions observable that match 417 or 415.<br>**Exh. Q, Sun BWC** at 02:46, to Sincich Decl ¶18: All three subjects are wearing black sweaters and black pants. Valdivia is not wearing black shorts as the call identified. Cannot see facial hair on Valdivia. Finally, cannot see a gun in Valdivia's hands or on his person. All three subjects appear to be in a verbal conversation.<br><br>Objections:<br>**FRCP Rule 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Argumentative, Misleading.<br>**Rule 403/611**: Lacks Foundation. |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 59 | **Defendants' response:**<br><br>Plaintiffs' dispute is not credible as the videos and officers' depositions clearly demonstrate that the officers were able to identify Valdivia as the subject of the three 911 calls as he was a Hispanic adult male with facial hair and wearing a black sweater and actively arguing with two other individuals (who were not Hispanic) in front of the liquor store. | |
| 60 | Upon arrival, Officer Sun commanded Valdivia to show him his hands and then to put up his hands.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 58:12–18 | **Undisputed** that Officers Sun and Meadows gave simultaneous, confusing, and conflicting commands, which is counter to the training, including "Let me see your hands," "Don't move," and "Put your hands up." |
| 60 | **Defendants' response:**<br><br>Plaintiffs misstate testimony by suggesting that any of the commands were "conflicting."  The video evidence clearly shows that *the commands were consistent*:  to put up his hands and not to reach for anything.  Plaintiffs provide no reasoned basis as to how "let me see your hands" and "put up your hands" are conflicting.  They both reasonably and clearly tell Valdivia to show his hands by putting them up and not to reach for anything.<br><br>Ex. 1 at 2:43–2:47; Ex. 2 at 0:40–0:44. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 61 | Valdivia did not immediately comply.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 58:19–21 | **Disputed**. Within approximately 5 seconds of Officer Sun's surprise commands after his stealth approach, Valdivia's hands were over his head in the air.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. A, Sun Depo** at 58:19-59:10, to Sincich Decl ¶2: Officer Sun viewed Valdivia putting his hands up as a sign of compliance.<br>**Exh. E, Meadows Depo** at 49:5-17 to Sincich Decl ¶6: pursuant to training, officers should avoid giving simultaneous and conflicting commands because they could cause confusion.<br>**Exh. Q, Sun BWC** at 02:40-02:46 to Sincich Decl ¶18.<br>**See Defense Ex. 2, Meadows BWC** at 00:40-00:44. |
| 61 | **Defendants' response:**<br><br>Plaintiffs' dispute is **<u>not credible</u>** as the video clearly shows Valdivia reaching for his waistband and/or pocket—the general area where the officers knew he had a gun after being told to show his hands and put up his hands. *See* Ex. 1 at 2:47–2:48. | |

MANNING | KASS

MK

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 62 | Instead, Valdivia reached for his waistband, which prompted Officer Sun to tell him get his hands out of his pocket.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 60:3–8;<br><br>Ex. 13 at 24:25–25:10 | **Disputed** as phrased. Defendants claimed that Valdivia was reaching for his waistband in No. 36 above, now they claim it was his pocket. Further disputed that Valdivia did not comply with commands given the improper nature of the commands given, being simultaneous and conflicting.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. A, Sun Depo** at 58:19-59:10, to Sincich Decl ¶2: Officer Sun viewed Valdivia putting his hands up as a sign of compliance.<br>**Exh. E, Meadows Depo** at 49:5-17 to Sincich Decl ¶6: pursuant to training, officers should avoid giving simultaneous and conflicting commands because they could cause confusion.<br>**Exh. Q, Sun BWC** at 02:40-02:46 to Sincich Decl ¶18.<br>**See Defense Ex. 2, Meadows BWC** at 00:40-00:44. |
| 62 | **Defendants' response:**<br><br>Plaintiffs' dispute is **<u>not credible</u>** as the video clearly shows Valdivia reaching for his waistband and/or pocket—the general area where the officers knew he had a gun after being told to show his hands and put up his hands. *See* Ex. 1 at 2:47–2:48.<br><br>Officer Sun used the word "pocket" because that is where the dispatch advised the officers the gun was located and also the area where Valdivia was appearing to be reaching, which is next to Valdivia's waistband. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 63 | Eventually, Valdivia raised his hands and was then ordered to get on ground by Officer Meadows.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 60:11–18 | **Undisputed** that Valdivia complied by raising his hands over his head and complied by getting to the ground as commanded by Officers.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. A, Sun Depo** at 58:19-59:10, to Sincich Decl ¶2: Officer Sun viewed Valdivia putting his hands up as a sign of compliance. At 60:6-61:5 – Valdivia complied several times with officer commands.<br>**Exh. E, Meadows Depo** at 49:5-17 to Sincich Decl ¶6: pursuant to training, officers should avoid giving simultaneous and conflicting commands because they could cause confusion.<br>**Exh. Q, Sun BWC** at 02:40-02:46 to Sincich Decl ¶18.<br>**See Defense Ex. 2, Meadows BWC** at 00:40-00:44. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 64 | Officer Sun testified that Valdivia did not get fully on the ground as commanded; instead, he "started leaning to his left" and getting into what to Officer Sun looked like "a modified prone shooting position."<br><br>**Supporting evidence:**<br><br>Ex. 28 at 60:19–24;<br><br>Ex. 13 at 26:15–27:1, 27:22–25 | **Disputed**. No officer described how Valdivia should get on the ground, no officer described what "fully" on the ground means; thus, there was no non-compliance to some specificity in a command never given. Disputed that Valdivia was ever in a shooting position.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. P, Sun BWC** with Counter at 00:00-00:10 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Decl. of Clark** ¶12.<br><br>Objections:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Argumentative.<br>**Rule 403/611**: Compound, Lacks Foundation, Speculation. |
| 64 | **Defendants' response:**<br><br>Plaintiffs merely quibble with semantics and do not seriously dispute that Valdivia did not get fully on the ground but, instead, propped himself up on his left elbow/forearm and right hand. *See* Ex. 1 at 2:56. | |
| 65 | To Officer Sun, Valdivia's actions looked deliberate, as if he was preparing to reach for his gun.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 26:15–27:12, 27:20–28:5 | **Undisputed** that this was stated.<br><br>**Decl. of Clark** ¶12: Valdivia's apparent intent was to comply with commands and discard the gun.<br>Objections:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Argumentative.<br>**Rule 403/611**: Compound, Vague, Lacks Foundation, Speculation. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 65 | **Defendants' response:**<br><br>Plaintiffs' expert ***lacks personal knowledge*** about Valdivia's "intent" and, thus, his opinion is not based on any specialized knowledge but, instead, is pure speculation based on 20/20 hindsight after watching the videos. | |
| 66 | Valdivia then starts reaching for his waistband, causing Officer Sun to yell as loudly as he could not to reach for it.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 28:10–14 | **Undisputed** that this was stated.<br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Argumentative.<br>**Rule 403/611**: Compound. |
| 67 | Valdivia, however, ignored the command, lowered his hand, and almost immediately pulled out a gun.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 28:20–25 | **Disputed**: At 22:17:09 hours, which is 02:58 of Officer Sun's video as cited by the Defense (No. 46 above) as retrieving the gun, the gun is no longer in Valdivia's hand. Valdivia is not lowering his hand and is not immediately pulling out a gun after Officer Sun gives his command thereby being some form of non-compliance as argued by the defense. Instead, Valdivia tossed/discarded the gun away and to the ground. Defendants' self-serving statements lack credibility and are contradicted by the video evidence.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶7; Holdaway Decl ¶2: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
|  |  | 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. **Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. **Clark Decl** ¶12c. <br><br> **Objections**: <br> **Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. <br> **Rule 403/602/611**: Compound, Vague, Speculation. |
| 67 | **Defendants' response:** <br><br> Plaintiffs quibble with semantics but do not seriously dispute that Valdivia lowered his right hand and retrieved the gun. *See* Ex. 1 at 2:58. <br><br> Indeed, Plaintiffs' whole theory in opposition to the motion is that Valdivia reached for and retrieved the gun to discard it. He could not have possibly done that without actually lowering his hand and retrieving the gun. Thus, it is clearly undisputed that Valdivia reached for and retrieved the gun. |  |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 68 | Officer Sun testified that the way Valdivia pulled out the gun and had a good grip on it was another huge flag because it told him that Valdivia was either a "trained shooter" or had "some kind of firearms experience" to be able to get such a good grip on the gun so quickly.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 28:25–29:9 | **Disputed**. There is nothing in the record that would suggest that Valdivia was a "trained shooter" or that he had "some kind of firearms experience." Valdivia in fact was not and did not. As seen on the video, Valdivia did not have a "good grip" on the gun. Valdivia was in the act of discarding the gun.<br><br><u>Plaintiffs/Opposing Party's Evidence:</u><br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12c-d.<br><br><u>Objections</u>:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading.<br>**Rule 403/602/611**: Compound, Vague, Speculation. |
| 68 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to dispute that this was Officer Sun's perception of the events as stated during the interview.  Whether Valdivia *actually* had any firearms experience is irrelevant to what the officers observed during the incident.  *See Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) ("we must view the facts from [the officer's] perspective at the time he decided to | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | fire"); *id.* ("the critical inquiry is what [the officer] perceived"). Here, Officer Sun testifed that based on his experience, it looked to him like Valdivia had a "master grip" on the gun which, to Officer Sun, indicated that Valdivia was either a "trained shooter" or had "some kind of firearms experience" to be able to get such a good grip on the gun so quickly. Plaintiffs cite absolutely no evidence to dispute that this was Officer Sun's perception or to contradict his experience and knowledge. | |
| 69 | After retrieving the gun, Valdivia proceeded to raise it until it was almost pointing in the direction of Officers Sun and Meadows.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 29:9–30:4 | **Disputed**. Valdivia never points or "almost" points the gun in the Officers' direction. Valdivia discards the gun.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holaday Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holaday Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holaday Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holaday Decl ¶4.<br>**Clark Decl** ¶12c-d.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading.<br>**Rule 403/602/611**: Compound, Vague, Speculation. |
| 69 | **Defendants' response:**<br><br>Plaintiffs dispute whether the gun was "pointed" at the officers but offer ***no*** | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|

*evidence* **to contradict Officer Sun's testimony** that the gun was traveling forward in Valdivia's hand **with the barrel facing the officers**.

In fact, the videos and Plaintiffs' demonstrative exhibits confirm that when the gun landed in front of Valdivia, **the barrel was facing the officers**, which is consistent with the officers' testimony that they saw Valdivia retrieve and start pointing the gun towards them. *See* Ex. 13 at 29:09–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13; Ex. 28 at 71:20–23; Ex. 17 at 24:15–17; Ex. 29 at 55:17–25; Ex. 21 at 25:5–15, 33:16–24, 34:2–12; Ex. 23 at 4:10–13.

In any event, it is **legally irrelevant** under the totality of the circumstances whether Valdivia actually "pointed" or "started pointing" the gun at the officers. Rather, "[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023). "Officers shouldn't have to wait until a gun is pointed at them before they are entitled to take action." *Id.*

Here, given the totality of the information known to the officers and Valdivia's conduct during the incident, the officers were justified in using deadly force as soon as Valdivia retrieved the gun and started moving his hand with the gun forward in the direction of Officers Sun and Meadows. Under clearly-established law, the officers did **not** have to wait for Valdivia to actually aim at them or, worse, take a shot. After all, "*misplaced trust in this circumstance could be fatal for the officers*." *See id.* at 622.

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 70 | According to Officer Sun, once Valdivia raised the gun so that the barrel was pointing in his direction, he felt that he had no choice but to shoot to avoid Valdivia shooting him or Officer Meadows.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 29:12–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13;<br><br>Ex. 28 at 71:20–23 | **Disputed**. Valdivia never points the gun in Officer Sun's direction, therefore Officer Sun did have a choice. Nevertheless, Valdivia does not shoot the gun, but discards the gun, prior to Officer Sun using deadly force.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br><u>Objections</u>:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading.<br>**Rule 403/602/611**: Compound, Vague, Speculation. |
| 70 | **Defendants' response:**<br><br>Plaintiffs dispute whether the gun was "pointed" at the officers but offer **_no evidence to contradict Officer Sun's testimony_** that the gun was traveling forward in Valdivia's hand **_with the barrel facing the officers_**.<br><br>In fact, the videos and Plaintiffs' demonstrative exhibits confirm that when the gun landed in front of Valdivia, **_the barrel was facing the officers_**, which is consistent with the officers' testimony that they saw Valdivia retrieve and | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | start pointing the gun towards them. *See* Ex. 13 at 29:09–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13; Ex. 28 at 71:20–23; Ex. 17 at 24:15–17; Ex. 29 at 55:17–25; Ex. 21 at 25:5–15, 33:16–24, 34:2–12; Ex. 23 at 4:10–13.<br><br>In any event, it is **legally irrelevant** under the totality of the circumstances whether Valdivia actually "pointed" or "started pointing" the gun at the officers. Rather, "[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023). "Officers shouldn't have to wait until a gun is pointed at them before they are entitled to take action." *Id.*<br><br>Here, given the totality of the information known to the officers and Valdivia's conduct during the incident, the officers were justified in using deadly force as soon as Valdivia retrieved the gun and started moving his hand with the gun forward in the direction of Officers Sun and Meadows. Under clearly-established law, the officers did ***not*** have to wait for Valdivia to actually aim at them or, worse, take a shot. After all, "***misplaced trust in this circumstance could be fatal for the officers***." *See id.* at 622. | |
| 71 | At the time Officer Sun fired his first shot, Valdivia was leaning to his left side while on the ground and had the gun in his right hand pointing in the direction of Officers Sun and Meadows.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 17:5–15, 17:23–25 | **Disputed**. This entire statement is objectively false. Every time Officer Sun fired his weapon, Valdivia was flat |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
| | | on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun. |
| | | <u>Plaintiffs/Opposing Party's Evidence</u>: **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. **Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. **Clark Decl** ¶12c-d. <u>**Objections**</u>: **Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 71 | **Defendants' response:** Plaintiffs offer no evidence to dispute that this was Officer Sun's perception at the time that he made the decision to fire in response to Valdivia's actions of reaching for and retrieiving the gun and starting to point it at the officers. Plaintiffs only dispute the timing of the shots, arguing that the gun was out of Valdivia's hand when the shots were fired. It is undisputed, however, that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand.  Plaintiffs' dispute to the contrary is premised on *gross mischaracterization of the evidence* and impermissibly relies on *20/20 hindsight* based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Sun's first shot allegedly took place within ***a quarter of a second*** (0.28 seconds) from when the gun left Valdivia's hand. *See* Ex. G at 51 (Officer Sun's BWC Frame 4469). | |
| 72 | Officer Sun fired six rounds.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 9:20–21;<br><br>Ex. 13 at 41:3–8 | **Undisputed.** |
| 73 | There was less than a second and a half between the first and the sixth shot.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 18:4–6 | **Disputed**. Officer Sun fired his first round at approximately 22:17:09:28 and fired his last round at approximately 22:17:10:84, which is 1.56 seconds.<br><br>Plaintiffs/Opposing Party's Evidence: **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|---------------------------------------------|
|     |                                                      | discarding gun; at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. <br><br> **Objections**: <br> **Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. <br> **Rule 602/611/702**: Lacks Foundation, Speculation, Calls for Expert Opinion. |
| 73  | **Defendants' response:** <br><br> Plaintiffs do not dispute that Officer Sun testified that he perceived the shots taking place within a second and a half.  Plaintiffs' evidence confirms that he was very accurate in his estimate if it was in reality 1.56 seconds. | |
| 74  | Officer Sun testified that he assessed after each shot. <br><br> **Supporting evidence:** <br><br> Ex. 28 at 12:9–14 | **Undisputed.** |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
| 75 | According to Officer Sun, he perceived Valdivia continuously pointing the gun in his direction between his first and sixth shot.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 17:16–20, 72:6–7 | **Disputed**. Officer Sun's unreasonable belief is objectively false. Every time Officer Sun fired his weapon, Valdivia was flat on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br><u>Objections</u>:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 75 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to contradict that this was what Officer Sun perceived during the 1.56 seconds between his first and last shot.<br><br>In any event, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|---------------------------------------------|

disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.

The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.

As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Sun's first shot allegedly took place within ***a quarter of a second*** (0.28 seconds) from when the gun left Valdivia's hand. *See* Ex. G at 51 (Officer Sun's BWC Frame 4469).

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 76 | He testified that he genuinely feared that Valdivia would kill him and his partner at the time that he fired.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 27:8–12, 29:12–16, 29:20–25, 39:22–40:6, 43:7–13 | **Disputed**. Officer Sun's fear is based on an unreasonable belief that is objectively false. Every time Officer Sun fired his weapon, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun, followed by additional shots where Valdivia was flat on the ground, not leaning to his left, and clearly unarmed and not a threat. Further, Officer Sun's statements that the otherwise compliant, down, and unarmed Valdivia was going to shot Sun, shot Meadows, shot to kill some civilians in the area, and kill additional officers, or take hostages with his discarded BB gun clearly demonstrate Officer Sun's unreasonable subjective fear and overreaction leading to his use of unreasonable deadly force.<br><br>Plaintiffs/Opposing Party's Evidence:<br><br>**Exh. E, Meadows Depo** 82:3-25, to Sincich Decl ¶6: The definition of "imminent" as it relates to the use of deadly force, according to the policy and Penal Code 835a, requires a person to have the present ability, opportunity, and apparent intent to cause death or |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|-----|-----|
|  |  | serious bodily injury; not merely a fear of future harm, no matter how great the fear, and no matter how great the likelihood of the harm. **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. **Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. **Clark Decl** ¶12.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 76 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to contradict that Officer Sun genuinely believed and feared that Valdivia was going to shoot and kill him or his partner at the time that he fired his first shot in response to Valdivia's actions.<br><br>Indeed, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly |  |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Sun's first shot allegedly took place within ***a quarter of a second*** (0.28 seconds) from when the gun left Valdivia's hand. *See* Ex. G at 51 (Officer Sun's BWC Frame 4469). | |
| 77 | Officer Sun stopped shooting when he no longer perceived Valdivia as a threat, which was when the gun was no longer pointed in the officers' direction.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 72:1–15 | **Undisputed**, it is appropriate to not and/or no longer shoot a human being who is not and/or no longer a threat because the person discarded a gun.<br><br>**Disputed** as phrased. Every time Officer Sun fired his weapon, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun, followed by additional shots where Valdivia was flat on the ground, not leaning to his |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | left, and clearly unarmed and not a threat. Further, Valdivia never pointed a gun at or in the direction of anyone and was never an immediate threat of death or serious bodily injury justifying the use of deadly force. Officer Sun stopped shooting Valdivia once Valdivia stopped moving.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Ex. B, Sun Statement** at 26:19-24, to Sincich Decl ¶3: Officer Sun's sequence of shots was (a) firing the gun, (b) seeing Valdivia still moving, (c) seeing the handgun drop, (d) seeing Valdivia still moving, and (e) "I kept shooting until he stopped moving."<br>**Ex. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Ex. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Ex. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Ex. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Ex. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br><u>Objections</u>:<br>**Rule 403**: Argument, Misstatement of Fact, Misstates the Law, Misleading. |
| 77 | **Defendants' response:**<br><br>*See supra* Defendants' reply to UF 70, 71, 75, and 76. | |
| 78 | Officer Meadows testified that he received the call at around 10:13 | **Undisputed.** |

78
Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | p.m.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 27:11–13 | |
| 79 | He was familiar with the location because it was in a high crime area known for narcotics violations, assaults with deadly weapons, and other violent crimes.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 18:6–12, 30:19–31:11 | **Disputed** for the purpose of this opposition as there is no foundation for this irrelevant and prejudicial statement.<br><br>**Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Misleading.<br>**Rule 404**: Impermissible Character Evidence.<br>**Rule 403/602/611**: Compound, Lacks Foundation. |
| 79 | **Defendants' response:**<br><br>Plaintiffs' dispute and objections based on lack of foundation lack merit as Officer Meadows testified that he had personal knowledge of the area that they were responding to and that he personally knew based on his experience responding to that area that this was a high-crime area. *See* Ex. 17 at 18:6–12, 30:19–31:11.<br><br>The information is also clearly relevant to the totality of the circumstances known to the officers at the time of the incident. | |
| 80 | The call indicated that the subject was brandishing a firearm outside of a liquor store, which to Officer Meadows meant that he was showing the gun to others in a threatening manner.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 28:1–5, 28:16–21 | **Undisputed** that this was the alleged nature of the call pursuant to the penal code given to officers by dispatch that needed to be investigated. |
| 81 | Upon receiving the call, Officer Meadows followed Officer Sun to | **Undisputed.** |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | the Starbucks parking lot.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 42:11–13 | |
| 82 | While enroute, Officer Meadows received additional information, including that there were multiple calls and that the subject was either threatening or arguing with other individuals.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 30:2–5, 30:13–14;<br><br>Ex. 17 at 18:17–22 | **Disputed**. Officer Meadows did not receive additional information that the subject was threatening anyone.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.) |
| 82 | **Defendants' response:**<br><br>Officer Meadows clearly testified that he received information that Vadlivia "had been threatening other individuals or in an argument with other individuals." *See* Ex. 29 at 30:13–14.<br><br>Plaintiffs' dispute to the contrary is not credible and mischaracterizes the evidence. The CAD log and the video and audio evidence clearly indicate that dispatch advised the officers that the suspect was "415 verbal," which to the officers meant that he was acting aggressively. *See* Ex. 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47; *see also* Ex. 28 at 41:14–17 ("Q: What does 415 mean?  A: It's the term that we use as combative or uncooperative, argumentative. It's kind of a reflection of the Penal Code 415."); Ex. 28 at 42:16–22 ("Q: So when you receive a call for a 415 individual, did that mean to you that by the nature of the training, he was going to be aggressive?  A: It led me to perceive that the reporting parties, callers notified dispatch that he was aggressive and that we were likely going to encounter someone who was aggressive as well."); Ex. 28 at 43:12–13 ("Q: Can a person be 415 and not be aggressive?  A: Not in this instance."); Ex. 28 at 43:21–23 (testifying that dispatch "are trained to analyze [the information received from 911 callers] and disseminate it to [the officers]"). | |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 83 | As he was arriving, Officer Meadows also received information that the subject placed the gun in his right pocket, which was consistent with where he would later observe the gun on Valdivia.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 29:8–18;<br><br>Ex. 17 at 21:20–23 | **Undisputed** as generally consistent but **Disputed** as not precisely consistent. Officer Meadows stated that he later observed the gun in the waistband (not pocket) when Valdivia's shirt lifted as he complied with officer commands to put his hands in the air. (See No. 88 below.) |
| 84 | Upon making his approach, Officer Meadows could hear several persons arguing.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 19:24–25, 20:14–15 | **Disputed**.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** to Sincich Decl ¶6: At 30:15-17 – Meadows did not know who started the argument. At 3:18-20 – the calls required investigation.<br>**Exh. N, Surveillance Video** at 7:24-18:52, to Sincich Decl ¶15; Holdaway Decl ¶8: Valdivia does not appear to be arguing.<br>**See Defense Ex. 2, Meadows BWC** at 00:30-00:54: Cannot hear any arguing and Valdivia does not appear to be arguing.<br><br>**Objections**:<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Misleading.<br>**Rule 403/611**: Lacks Foundation, Speculation. |
| 84 | **Defendants' response:**<br><br>Plaintiffs do **not** dispute that Valdivia was in an argument with two other individuals, they just quibble as to *who* started the argument, which is **irrelevant** to the totality of the circumstances known to the officers.<br><br>The officers had a sufficient description to identify Valdivia as the person of | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | interest who brandished a gun and was actively disturbing the peace. | |
| 85 | Officer Meadows identified Valdivia as the subject of the 911 calls based on his actions and clothing.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 20:16–23 | **Disputed**.<br>Plaintiffs/Opposing Party's Evidence:<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at 22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37; and 22:16:21 for information known provided to officers. (See No. 1 Above.)<br>**See Defense Ex. 4, Avila BWC** at 07:35-07:55: At least Subject Logan appears to be closer to 40 years old than Valdivia.<br>**Exh. J, Autopsy Report** at CPD 121 to Sincich Decl ¶11: Valdivia was 24-years-old.<br>**Exh. N, Surveillance Video** at 17:53-18:45 (04-09-2022 10:18:01-10:18:51 AM) to Sincich Decl ¶15; Holdaway Decl ¶8: no actions observable that match 417 or 415.<br>**Exh. Q, Sun BWC** at 02:46, to Sincich Decl ¶18: All three subjects are wearing black sweaters and black pants. Valdivia is not wearing black shorts as the call identified. Cannot see facial hair on Valdivia. Finally, cannot see a gun in Valdivia's hands or on his person. All three subjects appear to be in a verbal conversation.<br><br>Objections:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Argumentative, Misleading.<br>**Rule 403/611**: Lacks Foundation. |
| 85 | **Defendants' response:**<br><br>Plaintiffs' dispute is not credible as the videos and officers' depositions clearly demonstrate that the officers were able to identify Valdivia as the | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | subject of the three 911 calls as he was a Hispanic adult male with facial hair and wearing a black sweater and actively arguing with two other individuals (who were not Hispanic) in front of the liquor store. | |
| 86 | Upon arrival, Officer Meadows identified the officers as "police" and ordered everyone to put their hands up.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 21:13–16 | **Undisputed** that Officers Sun and Meadows gave simultaneous and conflicting commands (thus confusing), including "Let me see your hands," "Don't move," and "Put your hands up." Further undisputed that Officer Meadows statements cannot be heard from Officer Sun's video, thus disputed as to whether Valdivia heard and was able to understand Officers' statements.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** at 49:5-17 to Sincich Decl ¶6: pursuant to training, officers should avoid giving simultaneous and conflicting commands because they could cause confusion.<br>**Exh. P, Sun BWC with Counter** at 00:05-00:14 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**See Defense Ex. 2, Meadows BWC** at 00:40-00:44.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403/611**: Compound. |
| 86 | **Defendants' response:**<br><br>Plaintiffs misstate testimony by suggesting that any of the commands were "conflicting." The video evidence clearly shows that ***the commands were consistent***: to put up his hands and not to reach for anything. Plaintiffs provide no reasoned basis as to how "let me see your hands" and "put up your hands" are conflicting. They both reasonably and clearly tell Valdivia to show his hands by putting them up and not to reach for anything.<br><br>Ex. 1 at 2:43–2:47; Ex. 2 at 0:40–0:44. | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 87 | The two individuals with whom Valdivia was arguing complied but Valdivia did not and, instead, started to reach toward his waistband.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 21:16–19 | **Disputed**.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. E, Meadows Depo** at 66:4-6 to Sinich Decl ¶6: in response to questioning what commands Valdivia complied with, Meadows admits, "He complied at one point when he put his hands up and at one point as he began to get on the ground." |
| 87 | **Defendants' response:**<br><br>Plaintiffs' dispute is **<u>not credible</u>** as the video clearly shows Valdivia reaching for his waistband and/or pocket—the general area where the officers knew he had a gun after being told to show his hands and put up his hands. *See* Ex. 1 at 2:47–2:48. | |
| 88 | As he raised his hands, Valdivia's sweatshirt lifted and Officer Meadows could see the grip of a firearm protruding from his waistband.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 14:2–6;<br><br>Ex. 17 at 22:20–25, 36:20–25, 37:10–11 | **Undisputed**. That this occurred because Valdivia was complying. |
| 89 | According to Officer Meadows, he could see the finger groves in the handle of the gun, which to him "looked like a Glock pistol."<br><br>**Supporting evidence:**<br><br>Ex. 17 at 23:1–7, 37:1–4 | **Undisputed.** |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 90 | As a result, Officer Meadows ordered Valdivia to get on the ground, which he felt was the safest position to take Valdivia into custody and to prevent Valdivia from fleeing or potentially taking hostages.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 14:10–16, 52:10–16;<br><br>Ex. 17 at 23:8–22 | **Disputed**.<br><br>**Objections**:<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 701/702**: Improper Opinion. |
| 90 | **Defendants' response:**<br><br>Plaintiffs provided no basis for their dispute only objections.<br><br>Officer Meadows testified that ordering a person to the ground under these circumstances was the safest approach based on his experience. *See* Ex. 29 at 14:10–16, 52:10–16, 84:17–85:6. | |
| 91 | As Valdivia started getting on the ground, Officer Meadows observed that he posted himself on the ground with his left arm and begun reaching again for his waistband with his right hand in the direction where his gun was.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 23:25–24:6 | **Undisputed.** |
| 92 | Officers Meadows and Sun both gave Valdivia commands not to reach for it.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 24:9–10 | **Undisputed** that Officers Sun and Meadows yelled simultaneous commands. |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 93 | Valdivia, however, ignored the commands, removed the gun from his waistband, and started to bring it up in the direction of Officers Meadows and Sun.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 24:10–12 | **Disputed**. At 22:17:09 hours, which is 02:58 of Officer Sun's video, the gun is no longer in Valdivia's hand. Valdivia is not "removing" the gun nor is Valdivia "bringing" the gun in the direction of any officer. Valdivia is not and had not ever pointed the gun in the direction of Officers Sun and Meadows. Instead, Valdivia tossed/discarded the gun away and to the ground. All of Defendants' self-serving statements lack credibility and are contradicted by the video evidence.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br>Objections:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading.<br>**Rule 403/602/611**: Compound, Vague, Speculation. |
| 93 | **Defendants' response:**<br><br>Plaintiffs quibble with semantics but do not seriously dispute that Valdivia | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | "removed" the gun from his waistband and then brought the hand with the gun forward—*i.e.*, "in the direction of Officers Meadows and Sun."<br><br>Indeed, Plaintiffs' whole theory in opposition to the motion is that Valdivia reached for and retrieved the gun to discard it. He could not have possibly done that without actually removing the gun from his waistband and moving the hand with the gun forward to discard it in front of him. Thus, it is clearly undisputed that Valdivia removed the gun and brought it forward. | |
| 94 | Officer Meadows could see clearly as the muzzle started to raise up in their direction.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 24:15–17 | **Disputed**.<br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. |
| 94 | **Defendants' response:**<br><br>Plaintiffs offer **_no evidence to contradict Officer Meadows's testimony_** that he could see the muzzle starting to raise in his direction.<br><br>In fact, the videos and Plaintiffs' demonstrative exhibits confirm that when the gun landed in front of Valdivia, **_the barrel was facing the officers_**, which is consistent with the officers' testimony that they saw Valdivia retrieve and start pointing the gun towards them. *See* Ex. 13 at 29:09–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13; Ex. 28 at 71:20–23; Ex. 17 at 24:15–17; Ex. 29 at 55:17–25; Ex. 21 at 25:5–15, 33:16–24, 34:2–12; Ex. 23 at 4:10–13. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 95 | Officer Meadows sidestepped to the side to avoid being in Valdivia's line of fire and pulled the trigger before Valdivia could get a round off.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 24:18–25:2;<br><br>*see also* Ex. 29 at 13:21–14:1 | **Disputed**. At 22:17:09 hours, which is 02:58 of Officer Sun's video, the gun is no longer in Valdivia's hand. Valdivia is not "removing" the gun nor is Valdivia "bringing" the gun in the direction of any officer. Valdivia is not and had not ever pointed the gun in the direction of Officers Sun and Meadows. Instead, Valdivia tossed/discarded the gun away and to the ground. All of Defendants' self-serving statements lack credibility and are contradicted by the video evidence.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Assumes Facts, Unduly Prejudicial, Misstatement of Fact, Misleading.<br>**Rule 403/602/611**: Compound, Vague, Speculation. |
| 95 | **Defendants' response:** | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Plaintiffs' dispute is not credible and is based on the sanitized review of still frames with the benefit of 20/20 hindsight.

In any event, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand.  Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers

Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force.  *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.

Officer Meadows did not have the luxury to wait and see if Valdivia would in fact shoot at him or his partner.  Instead, after yelling at Valdivia not to reach for the gun, he had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him.  *See* Ex. 34 at 16–17.

As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Meadows's single shot allegedly took place within ***a fraction of a second*** (0.84 seconds) from when the gun left Valdivia's hand.  *See* Ex. G at 65 (Officer Sun's BWC Frame 4483). | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 96 | According to Officer Meadows, at the time that he fired, Valdivia's gun was pointed in the direction of him and Officer Sun.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 55:17–25 | **Disputed**. Officer Meadow's unreasonable belief is objectively false. When Officer Meadows fired his weapon, Valdivia was flat on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br>Objections:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 96 | **Defendants' response:**<br><br>Plaintiffs' dispute is not credible and is based on the sanitized review of still frames with the benefit of 20/20 hindsight.<br><br>In any event, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|-------------------------------------------------------|----------------------------------------------|
|     | Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56. |  |

Officer Meadows did not have the luxury to wait and see if Valdivia would in fact shoot at him or his partner. Instead, after yelling at Valdivia not to reach for the gun, he had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.

As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately *1.5 to 2 seconds* between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Meadows's single shot allegedly took place within *a fraction of a second* (0.84 seconds) from when the gun left Valdivia's hand. *See* Ex. G at 65 (Officer Sun's BWC Frame 4483).

MANNING | KASS

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 97 | He testified that he fired because he was afraid that Valdivia was going to start shooting and kill either him or Officer Sun.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 55:14–25;<br><br>Ex. 17 at 24:15–25:2, 38:14–24, 40:20–25 | **Disputed**. Officer Meadow's "fear" is based on an unreasonable belief that is objectively false. When Officer Meadows fired his weapon, Valdivia was flat on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun. Further, Officer Meadow's statements that the otherwise compliant, down, and unarmed Valdivia was going to shot kill someone with his discarded gun clearly demonstrate Officer Meadow's irrational subjective fear and overreaction leading to his use of unreasonable deadly force.<br><br>Plaintiffs/Opposing Party's Evidence: **Exh. E, Meadows Depo** 82:3-25, to Sincich Decl ¶6: The definition of "imminent" as it relates to the use of deadly force, according to the policy and Penal Code 835a, requires a person to have the present ability, opportunity, and apparent intent to cause death or serious bodily injury; not merely a fear of future harm, no matter how great the |

MANNING | KASS

MK

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | fear, and no matter how great the likelihood of the harm. **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. **Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. **Clark Decl** ¶12. <br><br> <u>**Objections**</u>: **FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party. **Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 97 | **Defendants' response:** <br><br> Plaintiffs offer no evidence to contradict that Officer Meadows genuinely believed and feared that Valdivia was going to shoot and kill him or his partner at the time that he fired his shot in response to Valdivia's actions. <br><br> Indeed, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand.  Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers. <br><br> Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Meadows's single shot allegedly took place within ***a fraction of a second*** (0.84 seconds) from when the gun left Valdivia's hand. *See* Ex. G at 65 (Officer Sun's BWC Frame 4483). | |
| 98 | Officer Meadows fired only one shot.<br><br>**Supporting evidence:**<br><br>Ex. 17 at 25:2–7 | **Undisputed.** |
| 99 | Following his shot, Officer Meadows reassessed and stopped shooting because Valdivia no longer had a gun in his hand.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 58:14–20;<br><br>Ex. 17 at 25:2–7 | **Undisputed**. However, Valdivia did not have the gun in his hand prior to the first shot. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 100 | Officer Meadows testified that no shots were fired while Valdivia was still reaching for the gun in his waistband.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 67:6–8 | **Undisputed**. All the shots were fired after Valdivia discarded the gun. |
| 101 | According to Officer Meadows, based on his perception, all of the shots were fired as Valdivia was pointing his gun at him and Officer Sun.<br><br>**Supporting evidence:**<br><br>Ex. 29 at 67:9–13 | **Disputed**. Officer Meadow's unreasonable belief is objectively false. When Officer Meadows fired his weapon, Valdivia was flat on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br>Objections:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 101 | **Defendants' response:**<br><br>It is undisputed that the circumstances necessitating the officers' use of | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on *gross mischaracterization of the evidence* and impermissibly relies on *20/20 hindsight* based on after-the-fact still frame-by-frame screenshots, a luxury that was *not* available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately *1.5 to 2 seconds* between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took place within *a fraction of a second* from when the gun left Valdivia's hand, specifically: Cardoza — *0.08 seconds*; Sun — *0.28 seconds*; and Meadows — *0.84 seconds*. *See* Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483). | |
| 102 | Officer Meadows further testified that Valdivia's right arm with the gun was extending and moving in the direction of the officers while the shots were being fired.<br><br>**Supporting evidence:** | **Disputed**. Officer Meadow's unreasonable belief is objectively false. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
|  | Ex. 29 at 67:19–24 | When Officer Meadows fired his weapon, Valdivia was flat on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun. |
|  |  | <u>Plaintiffs/Opposing Party's Evidence</u>: **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. **Exh. P, Sun BWC with Counter** at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. **Clark Decl** ¶12. <u>**Objections**</u>: **Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 102 | **Defendants' response:** *See supra* Defendants' reply in support of UF 101. | |
| 103 | Once Valdivia's gun was secured, Officer Meadows immediately checked for pulse and started CPR by doing chest compressions. **Supporting evidence:** Ex. 29 at 25:19–20, 26:2–5 | **Disputed**: for the purposes of this opposition. <u>**Objections**</u>: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial. **Rule 403/611**: Compound. |
| 103 | **Defendants' response:** | |

97

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Plaintiffs provide no basis for the dispute. Undisputed evidence shows that the officers started performing CPR approximately 1 minute and 17 seconds after the shooting, which accounted for the need to secure and examine Valdivia. *See infra* UF 135–141. | |
| 104 | Officer Meadows also confirmed that emergency medical services were called. **Supporting evidence:** Ex. 17 at 26:7–10 | **Disputed**: for the purposes of this opposition. <u>**Objections**</u>: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial. **Rule 403/611**: Compound. |
| 104 | **Defendants' response:** Plaintiffs provide no basis for this dispute. *See also infra* UF 135–141. | |
| 105 | He continued performing CPR, alternating with Officer Marquez, until he was relieved by other officers on the scene. **Supporting evidence:** Ex. 17 at 26:6–13 | **Disputed**: for the purposes of this opposition. <u>**Objections**</u>: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial. **Rule 403/611**: Compound. |
| 105 | **Defendants' response:** Plaintiffs provide no basis for this dispute. *See also infra* UF 135–141. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 106 | Officer Cardoza similarly indicated that she was familiar with the area where the 911 calls originated, describing it as having a lot of drug sales and physical altercations.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 22:7–10, 30:1–4 | **Disputed** for the purpose of this opposition as there is no foundation for this irrelevant and prejudicial statement.<br><br><u>Objections</u>:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown, Misleading.<br>**Rule 404**: Impermissible Character Evidence.<br>**Rule 403/602/611**: Compound, Lacks Foundation. |
| 106 | **Defendants' response:**<br><br>Plaintiffs' dispute and objections based on lack of foundation lack merit as Officer Cardoza testified that she had personal knowledge of the area that they were responding to and that she personally knew based on her experience that this was a high-crime area. *See* Ex. 21 at 22:7–10, 30:1–4.<br><br>The information is also clearly relevant to the totality of the circumstances known to the officers at the time of the incident. | |
| 107 | When she heard that only three units were initially dispatched, she attached herself to the call to assist the other officers given the area and the nature of the call (man with a gun).<br><br>**Supporting evidence:**<br><br>Ex. 21 at 22:2–16 | **Undisputed.** |
| 108 | Officer Cardoza heard dispatch inform the officers that the subject was a Hispanic male in his 40's with facial hair and wearing a black sweater and shorts, that he was waving a firearm, and that people in the area were fearful. | **Disputed**. Officer Cardoza did not receive information that people in the area were fearful.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**See Defense Ex. 24, CPD Incident Report (CAD Call)** at 14 (CPD 92): at <u>22:12:51; 22:13:13; 22:13:17; 22:13:37; 22:13:55; 22:15:09; 22:15:31; 22:15:37;</u> |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | **Supporting evidence:**<br><br>Ex. 30 at 43:10–15, 44:6–7;<br><br>Ex. 21 at 28:5–16 | and 22:16:21 for information known provided to officers. (See No. 1 Above.) |
| 108 | **Defendants' response:**<br><br>Plaintiffs' dispute is not credible as multiple callers reported that people were fearful and dispatch broadcast to the officers that the subject was armed with a gun and "415 verbal," which to the officers meant that he was aggressive. *See* Ex. 10; Ex. 24 at CPD000092; Ex. 1 at 0:29–0:47.<br><br>*See also supra* Defendants' reply to UF 26. | |
| 109 | While enroute, Officer Cardoza also learned that the subject was in a verbal argument with two other persons, that he was holding a beer in his hand, and that he had placed the firearm in his pocket.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 44:17–24, 45:13–19 | **Undisputed.** |
| 110 | Upon arrival, Cardoza could see Valdivia, whom she was able to identify based on his appearance, which matched the description provided by dispatch.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 50:3–20, 53:7–11;<br><br>Ex. 21 at 23:10–16;<br><br>Ex. 23 at 2:23–3:6, 3:17–20 | **Undisputed** given that he was the only Hispanic male out of the three subjects. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 111 | She could see that he was in some sort of verbal altercation with two other individuals.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 53:12–20, 70:17–18 | **Disputed**.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. C, Cardoza Depo** to Sincich Decl ¶4: At 53:24-54:8 – Cardoza did not hear anything they were saying, could not hear them yelling, and did not see Valdivia attempt to grab or strike anyone.<br>**Exh. N, Surveillance Video** at 07:24-18:52, to Sincich Decl ¶15; Holdaway Decl ¶8: Valdivia does not appear to be arguing.<br>**Exh. Q, Sun BWC** at 02:40-02:46, to Sincich Decl ¶18: Cannot hear any arguing and Valdivia does not appear to be arguing.<br>**See Defense Ex. 2, Meadows BWC** at 00:30-00:54: Cannot hear any arguing and Valdivia does not appear to be arguing. |
| 111 | **Defendants' response:**<br><br>Plaintiffs do not seriously dispute that Valdivia was engaged in an argument with two other individuals, just that he was not grabbing or striking anyone. | |
| 112 | As she was observing Valdivia, she heard Officer Sun announce over the radio that he was arriving on scene.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 54:9–12 | **Undisputed.** |

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 113 | Based on prior radio traffic, she knew that Officer Meadows would be with him and that they would park behind Starbucks and make their approach from there.<br><br>**Supporting evidence:**<br><br>Ex. 30 54:15–25 | Disputed: as to their approach.<br><br>Plaintiffs/Opposing Party's Evidence: **Exh. C, Cardoza Depo** to Sincich Decl ¶4: At 49:9-11 – there was no specific tactical plan on how to approach Valdivia. At 53:3-6 – there was no communication in any form from any of the other officers that they were going to make a stealth approach. At 56:3-11 – there was no coordination with Officer Cardoza as to how to approach. |
| 113 | **Defendants' response:**<br><br>Plaintiffs' dispute is contrary to the evidence.  Officer Sun's video confirms that Officer Sun broadcast over radio that he and Officer Meadows would park by Starbucks and approach from there.  Ex. 1 at 1:13–1:19. | |
| 114 | Officer Cardoza was able to observe Valdivia for a only a couple of seconds before Officers Sun and Meadows made their approach.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 55:6–8;<br><br>Ex. 21 at 30:20–25 | Disputed. Defendants claim as an undisputed material fact that "Officer Cardoza arrived on scene shortly before Officer Sun and Officer Meadows." (No. 33 above.) Defendants also claim as an undisputed material fact that when Officer Cardoza "was observing Valdivia, she heard Officer Sun announce over the radio that he was arriving on scene," which was indicated by Officer Sun stating he was "going 97" over the radio. (No. 112 above.) Officer Sun dispatched over the radio that he was "going 97" at 22:16:18 hours. Officer Sun gets to the southeast corner of Starbucks at 22:16:46 hours – approximately 28 seconds later.<br><br>Plaintiffs/Opposing Party's Evidence: **Exh. C, Cardoza Depo** at 54:9-12, to Sincich Decl ¶4.<br>**Exh. Q, Sun BWC** at 02:00-02:36 to Sincich Decl ¶18. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 114 | **Defendants' response:**<br><br>It's unclear what exactly Plaintiffs are disputing or the basis for the dispute. Even under Plaintiffs' version of the facts, Officer Cardoza had less than 30 seconds before she had to make her approach—insufficient time to retrieve the less-lethal shotgun that was in the trunk of the police car, given that she was focused on observing the situation with Valdivia as well as her partners. *See* Ex. 21 at 23:18–22, 30:16–19; Ex. 30 at 57:10–12, 57:20–25. | |
| 115 | She observed the officers start giving Valdivia commands and she run toward them to provide assistance.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 55:9–12, 56:19–23, 57:2–6, 58:10–13;<br><br>Ex. 21 at 23:18–22 | **Undisputed** including that Officer Cardoza had approximately 36 seconds of observing Valdivia and 36 seconds of time available to communicate with officers—but failed to, and 36 seconds of time available to retrieve the beanbag shotgun—but failed to.<br><br><u>Plaintiffs/Opposing Party's Evidence:</u><br>**Exh. C, Cardoza Depo** at 54:9-12, to Sincich Decl ¶4.<br>**Exh. Q, Sun BWC** at 02:00-02:43 to Sincich Decl ¶18. |
| 116 | She testified that there was insufficient time to retrieve the non-lethal shotgun.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 23:18–22, 30:16–19;<br><br>Ex. 30 at 57:10–12, 57:20–25 | **Disputed.** Defendants claim as an undisputed material fact that "Officer Cardoza arrived on scene shortly before Officer Sun and Officer Meadows." (No. 33 above.) Defendants also claim as an undisputed material fact that when Officer Cardoza "was observing Valdivia, she heard Officer Sun announce over the radio that he was arriving on scene," which was indicated by Sun stating he was "going 97" over the radio. (No. 112 above.) Officer Sun dispatched over the radio that he was "going 97" at 22:16:18 hours. Officer Sun starts to give commands to Valdivia at 22:16:54 hours, approximately 36 seconds later. Officer Cardoza had approximately 36 seconds of observing |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Valdivia and 36 seconds of time available to communicate with officers, but failed to, and 36 seconds of time available to retrieve the beanbag shotgun but failed to. |
| | | Plaintiffs/Opposing Party's Evidence: **Exh. C, Cardoza Depo** at 54:9-12, to Sincich Decl ¶4. **Exh. Q, Sun BWC** at 02:00-02:43 to Sincich Decl ¶18. |
| 116 | **Defendants' response:**<br><br>Even assuming Plaintiffs' version of the facts, Plaintiffs provide no evidence to contradict Officer Cardoza's perception that the 36 second were insufficient to retrive the less-lethal shotgun which was locked in the trunk of the car per department policy and when Officer Cardoza was also engaged in observing the subject to see if intervention was necessary and also observing her partners approach the subject. *See* Ex. 21 at 23:18–22, 30:16–19; Ex. 30 at 57:10–12, 57:20–25.<br><br>In any event, the officers testified that given the nature of the call (man with a gun), it would ***not*** have been prudent to engage Valdivia with non-lethal weapons, which would have endangered the officers and public. *See* Ex. 28 at 55:9–22, 93:7–20; Ex. 29 at 83:11–24.<br><br>In addition, it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022). | |
| 117 | Officer Cardoza heard additional commands being given to Valdivia as she was running, including not to reach for anything.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 59:10–12;<br><br>Ex. 21 at 24:4–6 | **Undisputed.** |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

MANNING | KASS

MK

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 118 | She also observed Valdivia being noncompliant.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 24:18–20 | **Disputed**.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. A, Sun Depo** at 58:19-59:10, to Sincich Decl ¶2: Valdivia putting his hands up was compliance. At 60:6-61:5 – Valdivia complied several times with officer commands.<br>**Exh. Q, Sun BWC** at 02:40-02:46 to Sincich Decl ¶18. |
| 118 | **Defendants' response:**<br><br>Plaintiffs' dispute is **not credible** as the video clearly shows Valdivia reaching for his waistband and/or pocket—the general area where the officers knew he had a gun after being told to show his hands and put up his hands. *See* Ex. 1 at 2:47–2:48. | |
| 119 | Given her position (approaching Valdivia from the side), Officer Cardoza was able to observe how Valdivia started lifting up his sweater with his right hand as he started to lay down.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 24:13, 25:1–2 | **Undisputed.** |
| 120 | As Valdivia lifted up his sweater, she observed the handle of a black handgun in his waistband.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 25:2–4;<br><br>Ex. 23 at 4:3–10 | **Undisputed.** |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 121 | Immediately thereafter, she observed Valdivia reach for the gun with his right hand, pull it out, and start to point it at Officers Sun and Meadows.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 25:5–7, 33:16–24;<br><br>Ex. 23 at 4:10–13 | **Disputed**. Valdivia never pointed a gun at Officers Sun or Meadows.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br>Objections:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading.<br>**Rule 403/602/611**: Compound, Vague, Speculation. |
| 121 | **Defendants' response:**<br><br>Plaintiffs do **not** dispute that Valdivia reached for and retrieved the gun with his right hand. They only quibble with semantics as to whether he started to "point" it at Officers Sun and Meadows. Plaintiffs, however, offer ***no evidence to contradict Officer Cardoza's testimony*** that the gun was traveling forward in Valdivia's hand ***with the barrel facing the officers***.<br><br>In fact, the videos and Plaintiffs' demonstrative exhibits confirm that when the gun landed in front of Valdivia, ***the barrel was facing the officers***, which is consistent with the officers' testimony that they saw Valdivia retrieve and start pointing the gun towards them. *See* Ex. 13 at 29:09–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13; Ex. 28 at 71:20–23; Ex. 17 at 24:15–17; Ex. 29 at 55:17–25; Ex. 21 at 25:5–15, 33:16–24, 34:2–12; Ex. 23 at 4:10–13.<br><br>In any event, it is **legally irrelevant** under the totality of the circumstances | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     | whether Valdivia actually "pointed" or "started pointing" the gun at the officers. Rather, "[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023). "Officers shouldn't have to wait until a gun is pointed at them before they are entitled to take action." *Id.* <br><br> Here, given the totality of the information known to the officers and Valdivia's conduct during the incident, the officers were justified in using deadly force as soon as Valdivia retrieved the gun and started moving his hand with the gun forward in the direction of Officers Sun and Meadows. Under clearly-established law, the officers did ***not*** have to wait for Valdivia to actually aim at them or, worse, take a shot. After all, "***misplaced trust in this circumstance could be fatal for the officers***." *See id.* at 622. |  |
| 122 | She also testified hearing the other officers tell Valdivia "don't reach for it" before she fired her first shot. <br><br> **Supporting evidence:** <br><br> Ex. 30 at 60:3–5 | **Undisputed.** |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|---------------------------------------------|
| 123 | Officer Cardoza indicated that she started firing when she observed Valdivia pointing the gun at Officers Sun and Meadows because she afraid he was going to shoot and kill one or both of them.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 25:8–15, 34:2–12 | **Disputed**. Officer Cardoza's unreasonable belief is objectively false. Every time Officer Cardoza fired her weapon, Valdivia was flat on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br><u>Objections</u>:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 123 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to dispute that this was Officer Cardoza's perception and reasoanble fear at the time that she made the decision to fire in response to Valdiva's actions of reaching for and retrieiving the gun and starting to point it at the officers.<br><br>Plaintiffs only dispute the timing of the shots, arguing that the gun was out of Valdivia's hand when the shots were fired.<br><br>It is undisputed, however, that the circumstances necessitating the officers' | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on *gross mischaracterization of the evidence* and impermissibly relies on *20/20 hindsight* based on after-the-fact still frame-by-frame screenshots, a luxury that was *not* available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately *1.5 to 2 seconds* between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Cardoza's first shot allegedly took place within approximately *one tenth of a second* (0.08 seconds) after the gun left Valdivia's hand—*i.e.*, almost simultaneously. *See* Ex. G at 46 (Officer Sun's BWC Frame 4464). | |
| 124 | Officer Cardoza testified that at the time that she fired her first shot, Valdivia was leaning to the side on his left arm, his legs were in a sort of a "mounted stance," and his right hand was holding a gun that was pointed or in the process of being pointed at Officers Sun and | **Disputed**. Officer Cardoza's unreasonable belief is objectively false. Every time Officer Cardoza fired her weapon, Valdivia was not in any form of shooting or "mounted stance," Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun. |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Meadows.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 15:15–23, 16:13–18, 17:4–9, 61:19–22, 68:24–69:5, 69:17–18, 70:5–7 | <u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12c-d.<br><br><u>Objections</u>:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 124 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to dispute that this was Officer Cardoza's perception at the time that she made the decision to fire in response to Valdivia's actions of reaching for and retrieving the gun and starting to point it at the officers.<br><br>Plaintiffs only dispute the timing of the shots, arguing that the gun was out of Valdivia's hand when the shots were fired.<br><br>It is undisputed, however, that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and | |

110

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
|  | Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56. <br><br> The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17. <br><br> As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire. <br><br> Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Cardoza's first shot allegedly took place within approximately **one tenth of a second** (0.08 seconds) after the gun left Valdivia's hand—*i.e.*, almost simultaneously. *See* Ex. G at 46 (Officer Sun's BWC Frame 4464). |  |
| 125 | Officer Cardoza fired five rounds during the incident. <br><br> **Supporting evidence:** <br><br> Ex. 30 at 9:8–9 | **Undisputed.** |
| 126 | There was less than a second between the first and the fifth shot. <br><br> **Supporting evidence:** <br><br> Ex. 30 at 11:21–24 | **Disputed**. Officer Cardoza fired her first shot at approximately 22:17:08:08 and fired her last shot at approximately 22:17:10:76 – which is 1.68 seconds. <br><br> Plaintiffs/Opposing Party's Evidence: **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     |                                                      | **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6. **Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4. |
| 126 | **Defendants' response:** Plaintiffs' version of the facts is largely consistent with Officer Cardoza's perception of the time that it took to fire her five shots. | |

MK MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 127 | She testified that she assessed after each shot and that she perceived Valdivia continuously pointing the gun in the direction of Officers Sun and Meadows during her five shots.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 11:19–20, 16:19–17:16 | **Undisputed** that Officer Cardoza assessed after each shot – thereby being able to see that Valdivia was visibly unarmed for all her shots.<br><br>**Disputed**. Officer Cardoza's unreasonable belief is objectively false. Every time Officer Cardoza fired her weapon, Valdivia was flat on the ground, not leaning to his left, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br>Objections:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 127 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to contradict that this was what Officer Cardoza perceived during the 1.68 seconds between her first and last shot.<br><br>In any event, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     |                                                      |                                              |

premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers.

Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.

The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.

As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Cardoza's first shot allegedly took place within approximately ***one tenth of a second*** (0.08 seconds) after the gun left Valdivia's hand—*i.e.*, almost simultaneously. *See* Ex. G at 46 (Officer Sun's BWC Frame 4464).

MANNING | KASS

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

MANNING | KASS

| 128 | Officer Cardoza testified that she genuinely feared that Valdivia would kill her partners at the time that she fired.<br><br>**Supporting evidence:**<br><br>Ex. 21 at 25:8–15, 34:2–12 | **Disputed**. Officer Cardoza's "fear" is based on an unreasonable belief that is objectively false. Every time Officer Cardoza fired her weapon, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun. Further, Officer Cardoza's statements that the otherwise compliant, down, and unarmed Valdivia was going to kill someone with his discarded gun clearly demonstrate Officer Cardoza's irrational subjective fear and overreaction leading to her use of unreasonable deadly force.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**Exh. E, Meadows Depo** 82:3-25, to Sincich Decl ¶6: The definition of "imminent" as it relates to the use of deadly force, according to the policy and Penal Code 835a, requires a person to have the present ability, opportunity, and apparent intent to cause death or serious bodily injury; not merely a fear of future harm, no matter how great the fear, and no matter how great the likelihood of the harm.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|---------------------------------------------|
|     |                                                      | **Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12.<br><br>**Objections**:<br>**FRCP 56**: requires all facts and reasonable inferences to be viewed in the light most favorable to the non-moving party.<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 128 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to contradict that Officer Cardoza genuinely believed and feared that Valdivia was going to shoot and kill her partners at the time that she fired his first shot in response to Valdivia's actions.<br><br>In any event, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Cardoza's first shot allegedly took place within approximately ***one tenth of a second*** (0.08 seconds) after the gun left Valdivia's hand—*i.e.*, almost simultaneously. *See* Ex. G at 46 (Officer Sun's BWC Frame 4464). |  |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 129 | Valdivia was still pointing the gun at the officers at the time of her last shot.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 17:14–16, 18:2–4, 18:18–22 | **Disputed**. This statement is clearly and objectively false.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holaday Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holaday Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holaday Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holaday Decl ¶4.<br>**Clark Decl** ¶12c-d.<br><br>Objections:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 129 | **Defendants' response:**<br><br>Plaintiffs offer no evidence to contradict that this was what Officer Cardoza perceived during the 1.68 seconds between her first and last shot.<br><br>In any event, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on ***gross mischaracterization of the evidence*** and impermissibly relies on ***20/20 hindsight*** based on after-the-fact still frame-by-frame screenshots, a luxury that was ***not*** available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56. | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.<br><br>Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Cardoza's first shot allegedly took place within approximately ***one tenth of a second*** (0.08 seconds) after the gun left Valdivia's hand—*i.e.*, almost simultaneously. *See* Ex. G at 46 (Officer Sun's BWC Frame 4464). | |
| 130 | Officer Cardoza testified that Valdivia dropped the firearm after she fired her five rounds.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 18:24–19:1 | **Disputed**. This statement is clearly and objectively false.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sinich Decl ¶8; Holdaway Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sinich Decl ¶9; Holdaway Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sinich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sinich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sinich Decl ¶17; Holdaway Decl ¶4.<br>**Clark Decl** ¶12d.<br><br>Objections:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
| 130 | **Defendants' response:** | |

**Defendants' response:**

Plaintiffs offer no evidence to contradict that this was what Officer Cardoza perceived during the 1.68 seconds between her first and last shot.

In any event, it is undisputed that the circumstances necessitating the officers' use of deadly force took place and came to fruition immediately before the gun left Valdivia's hand. Plaintiffs' dispute to the contrary is premised on *gross mischaracterization of the evidence* and impermissibly relies on *20/20 hindsight* based on after-the-fact still frame-by-frame screenshots, a luxury that was *not* available to the responding officers.

Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. *See* Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56.

The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. *See* Ex. 34 at 16–17.

As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately *1.5 to 2 seconds* between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Cardoza's first shot allegedly took place within approximately *one tenth of a second* (0.08 seconds) after the gun left Valdivia's hand—*i.e.*, almost simultaneously. *See* Ex. G at 46 (Officer Sun's BWC Frame 4464).

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 131 | She stopped shooting once Valdivia dropped the gun because he was no longer a threat.<br><br>**Supporting evidence:**<br><br>Ex. 30 at 62:12–15, 62:18–21;<br><br>Ex. 21 at 25:19–22, 35:13–16 | **Undisputed** that it would be appropriate to not and/or stop shooting a person who is not and/or no longer a threat given that the subject dropped the gun – as here it was inappropriate to fire any rounds because all rounds were fired after Valdivia dropped the gun.<br><br>**Disputed**. Every time Officer Cardoza fired her weapon, Valdivia's hands were visibly empty, not pointing a gun, Valdivia's hands were already moved away from the discarded gun.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8; Holaday Decl ¶7: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9; Holaday Decl ¶5: at 1-43 discarding gun; at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Fired Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16; Holaday Decl ¶6.<br>**Exh. P, Sun BWC** with Counter at 00:12-00:18 to Sincich Decl ¶17; Holaday Decl ¶4.<br>**Clark Decl** ¶12.<br><br>**Objections**:<br>**Rule 403**: Unduly Prejudicial, Misstatement of Fact, Misleading. |
| 131 | **Defendants' response:**<br><br>*See supra* Defendants' reply to UF 123, 124, 127–130. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 132 | The Officer Defendants testified that not approaching Valdivia could have caused him to escalate the situation, flee, or take hostages.<br><br>**Supporting evidence:**<br><br>Ex. 13 at 23:11–24:1, 34:17–35:7;<br><br>Ex. 28 at 80:13–81:12, 92:14–93:2;<br><br>Ex. 29 at 83:25–84:16 | **Disputed**. Mischaracterization of statements. The Officers expressed a concern that something *may* happen and that *if* they did not approach they would be too far away to react safely *if* something did happen—nothing regarding if they took the time they had to meet and formulate a plan including assigning less-lethal coverage would *cause* the situation to escalate. Nevertheless, any such opinion would be impermissible. Further, no support is given for any of Officer Cardoza's statements.<br><br><u>Plaintiffs/Opposing Party's Evidence</u>:<br>**See Defense Ex. 13, Sun Statement** at 23:11-24:1, 34:17-35:7: Officer Sun is stating that he moved up because *if* the subject decided to take a hostage or attempt to kill someone, then Officer Sun would not be close enough to safely react. Further, that the stealth approach would give the officers an opportunity to get close enough to detain Valdivia where Valdivia would feel like he did not have the opportunity to take a hostage or run. This statement has nothing to do with causing Valdivia to do anything.<br>**See Defense Ex. 28, Sun Depo** at 80:13-81:12, 92:14-93:2.<br>**See Defense Ex. 29, Meadows Depo** at 83:25-84:16.<br><br><u>Objections</u>:<br>**Rule 403**: Unduly Prejudicial Argument.<br>**Rule 403/611**: Compound, Lacks Foundation, Speculation.<br>**Rule 702**: Impermissible Opinion. |
| 132 | **Defendants' response:**<br><br>Plaintiffs do not provide any evidence to contradict that this was the officers' | |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | perception at the time, nor do they cite any evidence to demonstrate that the officers' concerns were not objectively reasonable. | |
| 133 | The Officer Defendants testified that they have engaged in de-escalation attempts by setting up the containment and approaching Valdivia and diverting his attention away from the other two individuals with whom he was arguing.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 24:12–15, 53:21–54:10, 62:3–14;<br><br>Ex. 13 at 20:9–13, 24:11–15, 42:1–10;<br><br>Ex. 29 at 46:23–47:13;<br><br>Ex. 21 at 32:12–25 | **Disputed**. Defendants did not engage in de-escalation.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. O, 4-Up Video** at 00:00-00:18, to Sincich Decl ¶16; Holdaway Decl ¶6.<br>**Exh. Q, Sun BWC** at 02:25-03:01 to Sincich Decl ¶18.<br>**Clark Decl** ¶10.<br><br>Objections:<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 702**: Impermissible Expert Testimony. |
| 133 | **Defendants' response:**<br><br>Plaintiffs do not provide any basis for their dispute. The cited evidence clearly demonstrates that the officers did try to de-escalate based on their undisputed attempt to set up a containment and diverting Valdivia's attention to themselves from the other two individuals with whom he was arguing. | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 134 | The Officer Defendants testified that given the nature of the call (man with a gun), it would not have been prudent to engage Valdivia with non-lethal weapons, which would have endangered the officers and the public.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 93:7–20;<br><br>Ex. 29 at 83:11–24 | **Disputed**. Less-lethal weapons were available and reasonable.<br><br>Plaintiffs/Opposing Party's Evidence:<br>**Exh. A, Sun Depo** at 55:9-11, to Sincich Decl ¶2. Officer Sun admits that the use of the less-lethal shotgun was within the discretion of the officers.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 48:20-49:1. Knowing the nature of the call, Officer Sun wanted Officer Cardoza to get the less-lethal shotgun.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 4:23-24, 20:19-21, 21:20-23, 26:20-22, 42:20-43:6, 46:10-18. Knowing the call involved a potential brandishing of a gun, one of the reasons Officer Meadows specifically responded to the call is that he knew he had the K9 option. Based on the nature of the call, the Taser, beanbag shotgun, and K9 were less-lethal options to consider.<br>**Exh. F, Meadows Statement**, to Sincich Decl ¶7, at 16:7-11.<br>**Clark Decl** ¶10.<br>**PAMF Nos.** 180-194.<br><br>**Objections**:<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 702**: Impermissible Expert Testimony. |
| 134 | **Defendants' response:**<br><br>Plaintiffs do not provide any basis for their dispute.  Instead, they just set forth their legal conclusion that the use of less-lethal would have been reasonable, which is not a proper dispute of Defendants' cited facts.<br><br>In any event, is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022). | |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 135 | The CAD log reveals an almost immediate request for paramedics after the shots were fired ("Shots fired[,] roll fire."). **Supporting evidence:** Ex. 24 at CPD000092 | **Undisputed** for the purpose of this opposition. *See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*. **Additional Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 136 | Less than a minute later, at **10:17:59 p.m.**, Officer Sun repeats: "I need fire now." **Supporting evidence:** Ex. 1 at 3:49 – 3:50 | **Undisputed** for the purpose of this opposition. **Objections:** **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 137 | Immediately after the shooting, the officers approached Valdivia, who was lying on the ground next to his gun, and Officer Sun secured the gun by moving it away from Valdivia. **Supporting evidence:** Ex. 1 at 3:02–3:23 | **Undisputed** for the purpose of this opposition. **Objections:** **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 138 | At 10:17:56 p.m., the officers start handcuffing Valdivia. **Supporting evidence:** Ex. 1 at 3:46; Ex. 2 at 1:41. | **Undisputed** for the purpose of this opposition. **Objections:** **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 139 | Officer Meadows immediately asks for a first aid kit. **Supporting evidence:** | **Disputed** as to "immediately." |

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Ex. 2 at 1:51–1:57;<br><br>Ex. 1 at 3:54 – 4:01 | |
| 139 | **Defendants' response:**<br><br>Plaintiffs provide no basis for their dispute. | |
| 140 | Once Valdivia is secured, Officer Meadows checks for pulse and informs: "No pulse. I'm going to start CPR."<br><br>**Supporting evidence:**<br><br>Ex. 2 at 2:10 – 2:13 | **Undisputed** that "no pulse" was stated, but Disputed as to whether there was actually a pulse or not. |
| 141 | Officer Meadows starts performing CPR on Valdivia at **<u>10:18:27 p.m.</u>**—approximately 1 minute and 17 seconds after the shooting.<br><br>**Supporting evidence:**<br><br>Ex. 2 at 2:12;<br><br>Ex. 1 at 4:16 | **Undisputed** for the purpose of this opposition.<br><br>**<u>Objections</u>**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 142 | The officers performed CPR ***continuously*** for more than seven minutes until the paramedics took over.<br><br>**Supporting evidence:**<br><br>Ex. 2 at 2:12–9:40 | **Undisputed** for the purpose of this opposition.<br><br>**<u>Objections</u>**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 143 | Paramedics arrived on the scene at approximately 10:25:22 p.m.<br><br>**Supporting evidence:** | **Undisputed** for the purpose of this opposition. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Ex. 1 at 11:12;<br><br>Ex. 2 at 9:09 | |
| 144 | Valdivia was taken to a hospital, where he was pronounced deceased at approximately 11:06 p.m.<br><br>**Supporting evidence:**<br><br>Ex. 24 at CPD000091 | **Undisputed** for the purpose of this opposition. |
| 145 | Testing of Valdivia's blood sample revealed the presence of alcohol and methamphetamine.<br><br>**Supporting evidence:**<br><br>Ex. 26;<br><br>Ex. 25 at CPD001093 | _See_ Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement _filed concurrently herewith_.<br><br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown.<br>**Rule 403/602/611**: Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay. |
| 146 | Immediately after the shooting, Officer Sun approached Valdivia and secured Valdivia's gun by moving it away from him.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 3:02–3:23 | **Undisputed** for the purpose of this opposition.<br><br>**Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 147 | After the officers started CPR, Officer Sun grabbed Valdivia's gun and went to secure it in his patrol car.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 5:02 – 5:10 | **Undisputed** for the purpose of this opposition.<br><br>**Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, After Acquired Information. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 148 | As Officer Sun picked up the gun, he identified it as a "Glock." **Supporting evidence:** Ex. 1 at 5:11 – 5:19 | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 149 | In addition to being a SWAT operator and a range and rifle instructor, Officer Sun is also a Glock armorer. **Supporting evidence:** Ex. _13 5:10–13; Ex. 15 at 3:5–6 | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. |
| 150 | According to him, when Valdivia pulled out the gun, "it looked like a semiautomatic handgun," similar to the Glock that he had. **Supporting evidence:** Ex. 15 at 2:7–15 | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. |
| 151 | He further explained that when he picked it up, "the weight, the feel of it, everything felt like it was just like" his duty gun. **Supporting evidence:** Ex. 15 at 3:9–11 | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 152 | According to Officer Sun, the finger grooves, the textured pattern on the grip, and even the magazine release "was consistent with the Generation 3 Glock 17." **Supporting evidence:** Ex. 15 at 3:11–14 | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 153 | It even had "Glock 17" marking on the side. **Supporting evidence:** Ex. 15 at 3:14–16 | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |
| 154 | Officer Sun also noticed the metal slide, which was worn down as if the gun has been unholstered and re-holstered multiple times, which was similar to Officer Sun's gun. **Supporting evidence:** Ex. 15 at 3:17–4:2 | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. **Rule 404**: Impermissible Character Evidence. |
| 155 | It was only after Officer Sun released the magazine and noticed that the gun could not chamber a round that he released that Valdivia's gun was actually a .177 caliber replica Glock 17 BB gun that "was made to be an exact replica" of a Glock 17 gun, including the weight, the texture, the feel, and even the operation manipulations. **Supporting evidence:** | **Undisputed** for the purpose of this opposition. **Objections**: **Rule 401/402**: Relevance. **Rule 403**: Unduly Prejudicial, After Acquired Information. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Ex. 15 at 4:3–5:1;<br><br>*see also* Ex. 26 | |
| 156 | According to the DOJ physical evidence examination report, Valdivia's gun was a "GLOCK, Model 17 Blowback Action Pistol" that "functioned as a semi-automatic air ($CO_2$) powered BB gun."<br><br>**Supporting evidence:**   Ex. 26 | **Undisputed.** |
| 157 | Multiple witnesses at the scene, including the three 911 callers, Logan, and other witnesses at the Country Liquor and Starbucks, as well as the responding officers, all believed that Valdivia was in the possession of a real gun.<br><br>**Supporting evidence:**<br><br>Ex. 4 at 11:35–11:54, 12:29–12:31, 13:25–13:40;<br><br>Ex. 5 at 7:20–7:35, 24:45–25:05;<br><br>Ex. 6 at 0:02–0:10, 1:00–1:10, 1:27–1:31, 2:00–2:07;<br><br>Ex. 7 at 0:10–0:22, 0:39–0:46;<br><br>Ex. 8 at 0:00–0:09, 0:15–0:25, 0:54–1:05;<br><br>Ex. 29 at 14:2–6;<br><br>Ex. 17 at 22:20–25, 23:1–7, 36:20–37:4, 37:10–11; | **Disputed**.<br><br>*See* Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement *filed concurrently herewith*.<br>**Additional Objections:**<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown.<br>**Rule 602/603**: Not Under Oath, Speculation.<br>**Rule 403/602/611**: Compound, Lacks Foundation.<br>**Rule 801/802**: Impermissible Hearsay. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

**MK** MANNING | KASS

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Ex. 21 at 25:2–4; Ex. 23 at 4:3–10; Ex. 24 at CPD000103–105, 108–109, 111–112 | |
| 157 | **Defendants' response:** Plaintiffs provide no basis for their dispute. As noted above (*see* UF 3, 5–10, 15–16), Mr. Logan's and 911 callers' testimony is relevant because it confirms that everyone, including the officers, perceived Valdivia as being armed with a real Glock handgun. The cited evidence would also be admissible at the time of trial through, among other things, trial testimony by Mr. Logan and the 911 callers. | |
| 158 | The photos of the gun similarly confirm that it looks like a real Glock 17 firearm. **Supporting evidence:** Ex. 31; Ex. 32; Ex. 25 at CPD001087–1088 | **Undisputed.** |
| 159 | Picture of Valdivia's gun. **Supporting evidence:** Ex. 25 at CPD001088 | **Undisputed**. This is a picture of Valdivia's BB gun. |

Defendants' Response to Plaintiffs' Statement of Genuine Disputes

| No. | Defendants' Undisputed Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| 160 | Pursuant to California Assembly Bill 1506, the California DOJ conducted a thorough investigation of the incident and issued a report in August 2024, concluding that, based on the totality of circumstances, the evidence did not demonstrate that the Officer Defendants' actions were unreasonable.<br><br>**Supporting evidence:**<br><br>Ex. 25 at CPD001086, 001104. | **Disputed**.<br><br>_See_ Plaintiffs' Objections To Exhibits Presented In Defendants' Separate Statement _filed concurrently herewith_.<br>**Additional Objections**:<br>**Rule 401/402**: Relevance.<br>**Rule 403**: Unduly Prejudicial, Information Unknown.<br>**Rule 403/611**: Compound, Lacks Foundation.<br>**Rule 702**: Calls for Expert Opinion.<br>**Rule 801**: Impermissible Hearsay. |
| 160 | **Defendants' response:**<br><br>Plaintiffs provide no basis for their dispute. | |

DATED:  July 1, 2025

Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By:  _/s/ Yury A. Kolesnikov_

Mildred K. O'Linn
Yury A. Kolesnikov

_Attorneys for Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun_

Defendants' Response to Plaintiffs' Statement of Genuine Disputes