1  Mildred K. O'Linn (State Bar No. 159055)
2      *missy.olinn@manningkass.com*
   Yury A. Kolesnikov (State Bar No. 271173)
3      *yury.kolesnikov@manningkass.com*
4  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
5  801 S. Figueroa St, 15th Floor
   Los Angeles, California  90017-3012
6  Telephone:  (213) 624-6900
7  Facsimile:  (213) 624-6999

8  *Attorneys for Defendants City of Covina, Vanessa*
9  *Cardoza, David Meadows, and Billy Sun*



10

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12

13  E.V. and X.V., minors by and through        Case No. 5:23-cv-1562 CBM (SHK)
14  their guardian *ad litem*, Karla Juarez;
    D.V., a minor, by and through his           **Defendants' Response to Plaintiffs'**
15  guardian *ad litem*, Elias Valdivia;        **Statement of Additional Material Facts**
    individually    and    as    successors-in-
16  interest    to    Daniel    Luis    Valdivia,
17  deceased; JESSICA VALDIVIA; LUIS            Date:     August 12, 2025
    VALDIVIA JR., individually,                 Time:     10:00 a.m.
18                                               Judge:    Hon. Consuelo B. Marshall
19                              Plaintiffs,      Courtroom:  8D

20                v.

21
    CITY    OF    COVINA;    VANESSA
22  CARDOZA;    DAVID    MEADOWS;
23  BILLY SUN; DOES 1–10, inclusive,           Filed Dated:  August 4, 2023
                                                Trial Date:    October 21, 2025
24                              Defendants.

25

26

27

28

---

Pursuant to Civ. L.R. 56-2 and 56-3, Defendants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun submit this response to Plaintiffs' Statement of Additional Material Facts [Dkt. No. 48-2].

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| **Officers were Not Responding to an Emergency Call and Had No Plan** | | |
| 161 | The call alleging a male, Hispanic, wearing a black sweater and shorts, brandishing a weapon, needed to be investigated because sometimes the information given is incorrect.<br><br>**Supporting evidence:**<br><br>Exh. A, Sun Depo, to Sincich Decl ¶2, at 40:8-22, 46:17-24.<br><br>Exh. C, Cardoza Depo, to Sincich Decl ¶4, at 47:21-23.<br><br>Exh. E, Meadows Depo, to Sincich Decl ¶6, at 30:18-20. | Undisputed. |
| 162 | The circumstances did not reasonably indicate an emergency response, so Officers respond with lights and sirens.<br><br>**Supporting evidence:**<br><br>Exh. A, Sun Depo, to Sincich Decl ¶2, at 83:12-14.<br><br>Exh. C, Cardoza Depo, to Sincich Decl ¶4, at 50:24-51:5.<br><br>Exh. M, Policy 307, to Sincich Decl¶14, at 1. | Disputed, but **<u>not relevant</u>** to any claims or defenses.<br><br>**<u>Misstates testimony</u>**. Each of the officers testified that the nature of the call made them reasonably concerned, given the high crime area where it originated, the multiple calls with similar information (thus, corroborating the information provided), and the fact that Valdivia was brandishing a gun and arguing with others.<br><br>**Supporting evidence:** |

2

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Ex. 13 at 19:8–18, 20:17–23, 21:7–10, 21:17–20;<br><br>Ex. 28 at 41:4–17, 42:16–22, 43:1–5, 44:13–16, 50:1–10;<br><br>Ex. 17 at 18:6–12, 18:17–22, 30:19–31:11;<br><br>Ex. 29 at 28:1–5, 28:16–21, 30:2–5, 30:13–14;<br><br>Ex. 21 at 22:2–16, 30:1–4. |
| 163 | Upon arrival, Officers were updated that the call de-escalated, without officer intervention, from brandishing to the firearm being placed in the subject's pocket.<br><br>**Supporting evidence:**<br><br>Exh. A, Sun Depo, to Sincich Decl ¶2, at 44:10-16.<br><br>Exh. E, Meadows Depo, to Sincich Decl ¶6, at 29:8-14. | Disputed as it **misstates the evidence**. Dispatch *never* advised the officers that the call "de-escalated." Rather, dispatch merely *updated* the officers about the location of Valdivia's gun.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 41:12-13;<br><br>Ex. 13 at 22:6–9;<br><br>Ex. 29 at 29:8–18;<br><br>Ex. 17 at 21:20–23;<br><br>Ex. 30 at 44:17–24, 45:13–19. |
| 164 | Believing there was no supervisor on scene, Officer Sun took charge of the incident.<br><br>**Supporting evidence:**<br><br>Exh. A, Sun Depo, to Sincich Decl ¶2, at 24:12-15, 25:6-9. | Undisputed. |

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Exh. E, Meadows Depo, to Sincich Decl ¶6, at 64:1-10: Knowing Officer Sun was a SWAT officer, Officer Meadows considered Officer Sun the primary officer. | |
| 165 | The area was contained and "locked down" to prevent escape.<br><br>**Supporting evidence:**<br><br>Exh. A, Sun Depo, to Sincich Decl ¶2, at 57:17-58:2.<br><br>Exh. B, Sun Statement, to Sincich Decl ¶3, at 30:14-24.<br><br>Exh. E, Meadows Depo, to Sincich Decl ¶6, at 46:23-47:5. | Undisputed that the officers were *setting up* the containment.<br><br>Plaintiffs' own evidence confirms that the containment was being set up, *not* that the area was actually fully "contained" and "locked down."<br><br>**Supporting evidence**:<br><br>Ex. A at 57:17–58:2;<br><br>Ex. B at 30:14–24;<br><br>Ex. E at 46:23–47:5. |
| 166 | Defendants did not know that there were two sergeants on scene prior to using force given that Sergeants Statler or Rasmussen did not communicate their presence.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 56:1-3.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 19:24-20-6, 20:23-21:5.<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 61:10-15, 60:22-24. | Undisputed but **not relevant** to any claims or defenses. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

MANNING | KASS

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|------------------------------------------------------------|---------------------------------------------|
| 167 | Besides Officer Sun setting up containment, telling Officer Cardoza he wanted her to grab the less-lethal shotgun, and telling Officer Meadows to approach with him, there was no attempt to establish a tactical plan, including no communication between Officers as to how to meet and approach, no coordination of movement, no communication about maintaining cover, and no communication about a stealth approach.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 52:7-14, 52:19-23, 54:11-13, 54:23-55:7.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 47:24-48:1, 48:20-49:1, 49:9-11, 53:3-6, 56:3-11.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 47:1-13, 55:5-8. | Undisputed that the officers communicated about setting up the containment, grabbing a less-lethal if possible, and where to park and how to approach.<br><br>Disputed to the extent it **misstates testimony** to suggest that the officers did not coordinate their approach. On the contrary, while enroute, Officer Sun took charge of setting up a containment and directed other units as to where they should park once they are on the scene.<br><br>To that end, Officer Sun (1) told Officer Meadows that he and Officer Sun would park near the Starbucks and approach on foot, (2) directed Officers Dixon and Cardoza to the east side, (3) directed Officer Avila to be on the northwest side, and (4) directed the officer arriving after Officers Sun and Meadows to be on the south side.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 24:12–15, 52:15–18, 53:21–54:10;<br><br>Ex. 13 at 20:9–13;<br><br>Ex. 29 at 46:23–48:2. |
| 168 | No officers checked with Officer Cardoza to ensure she had the beanbag shotgun before they approached and despite her plan to get the less-lethal shotgun, she | Undisputed that given the emergency situation and the fact that Officers Sun and Meadows were already making contact with Valdivia, there was insufficient time for Officer |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | failed to have it with her.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 56:13-17, 81:3-9. | Cardoza to grab the less-lethal shotgun.<br><br>Furthermore, the officers testified that given the nature of the call (man with a gun), it would *not* have been prudent to engage Valdivia with non-lethal weapons, which would have endangered the officers and the public.<br><br>**Supporting evidence**:<br><br>Ex. 30 at 54:9–25, 55:6–12, 56:19–23, 57:2–6, 57:10–12, 57:20–25, 58:10–13;<br><br>Ex. 21 at 23:18–22, 30:16–25;<br><br>Ex. 28 at 93:7–20;<br><br>Ex. 29 at 83:11–24. |
| 169 | Officer Sun did not know if Officer Cardoza would join the approach and did not even know if Officer Meadows was lethal cover despite the officers being next to each other.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 58:2-11, 79:10-16. | Disputed as it **misstates testimony**.<br><br>Plaintiffs' cited evidence only demonstrates that Officer Sun did not make any assumptions as to where or how Officer Cardoza was going to approach. It also confirms that Officer Sun knew that Officer Meadows was next to him but did not know if he had his gun drawn because Officer Sun's focus was on Valdivia.<br><br>Officer Sun further testified that he and Officer Meadows work "very closely" and that a lot of their communication is non-verbal. As a result, he did not feel like he needed to specifically designate Officer |

MANNING | KASS

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Meadows as the "lethal" option. Officer Sun's focus was instead on Valdivia—who was reported to have threatened others with a gun.<br><br>**Supporting evidence:**<br><br>Ex. A at 58:2–11, 79:10–25;<br><br>Ex. 28 at 80:1–12. |
| 170 | Officer Cardoza, who arrived first, did not advise her partners of her location when she was observing the subjects.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 55:25-56:2. | Undisputed but **not relevant** to any claims or defenses. |
| 171 | Officer Sun erroneously thought Officer Marquez was already on scene, and was in contact with a subject, so Officer Sun rushed in thinking he was supporting Officer Marquez.<br><br>**Supporting evidence:**<br><br>**Exh. B, Sun Statement**, to Sincich Decl ¶3, at 19:19-20:4. | Undisputed but **not relevant** to any claims or defenses. |
| 172 | Officer Meadows had to jog to catch up with Officer Sun to prevent him from approaching on his own.<br><br>**Supporting evidence:** | Undisputed. |

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | **Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 50:4-6.<br>**Exh. F, Meadows Statement**, to Sincich Decl ¶7, at 17:1-2. | |
| 173 | Officer Cardoza also rushed in without her less-lethal shotgun because the other officers started giving commands.<br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 56:18-23, 67:18-25. | Undisputed. |
| 174 | When Officers arrived, Valdivia was not pointing a gun at anyone and did not even have a gun in hand or visible on his person.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 47:7-15, 56:22-24, 57:2-7.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 58:1-3.<br>**Exh. P, Sun BWC with Counter** at 00:00-00:05 to Sincich Decl ¶17. | Undisputed but **not relevant** to any claims or defenses.<br><br>The officers were already informed that Valdivia was armed, that he has already brandished the gun in a threatening at other persons, and that he placed the gun in his pocket.<br><br>The officers also observed Valdivia arguing with the other two subjects at the time that they approached.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 40:8–18, 41:4–17, 42:16–22, 43:1–5, 44:13–16, 45:3–4, 45:13–14, 45:19–23, 49:1–3, 50:1–10;<br><br>Ex. 13 at 19:8–18, 22:6–9, 23:11–13;<br><br>Ex. 29 at 28:1–5, 28:16–21, 29:8–18, 30:2–5, 30:13–14;<br><br>Ex. 17 at 18:17–22, 19:24–25, 20:14–15, 21:20–23; |

8

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Ex. 30 at 43:10–15, 44:6–7, 44:17–24, 45:13–19, 53:12–20, 70:17–18; Ex. 21 at 28:5–16. |
| 175 | Despite training to avoid giving simultaneous and/or conflicting commands, both Officers Sun and Meadows started giving commands.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 60:18-20.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 9:8-10, 49:5-10.<br>**Exh. P, Sun BWC** with Counter at 00:00-00:15 to Sincich Decl ¶17. | Undisputed that the officers gave simultaneous commands.<br><br>Disputed to the extent it **misstates testimony** to suggest that any of the commands were "conflicting."<br><br>The video evidence clearly shows that **the commands were consistent**: to put up his hands and not to reach for anything.  Officer Meadows also clearly told Valdivia to get down on the ground.  Both officers also yelled at Valdivia **not to reach** for his waistband as he was getting on the ground and reaching for the gun.<br><br>**Supporting evidence**:<br><br>Ex. 1 at 2:43–2:55, 2:57–2:58;<br><br>Ex. 2 at 0:40–0:44, 0:49–0:53, 0:55–0:56. |
| 176 | When more than one officer is giving commands to a subject, it could cause confusion.<br><br>**Supporting evidence:**<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 49:11-17. | Undisputed that it "could" cause confusion.<br><br>Officer Meadows also testified that in this case there was **no confusion**.  Indeed, undisputed video evidence demonstrates there was no confusion in this case.  Valdivia heard each of the commands and disregarded them willfully by reaching multiple times for his waistband and finally |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | retrieving the gun and starting to point it at the officers. **Supporting evidence:** Ex. E at 49:14–15; Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56. |
| 177 | Defendants failed to announce and had an inadequate announcement of their presence as police officers. **Supporting evidence:** **Exh. A, Sun Depo**, to Sincich Decl ¶2, at 58:12-16. **Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 68:8-10. **Exh. P, Sun BWC** with Counter at 00:00-00:15 to Sincich Decl ¶17. **Clark Decl ¶8a.** | Disputed as it **misstates evidence**. Undisputed evidence clearly demonstrates that Officer Meadows *announced the officers as "police."* Furthermore, the videos show that the officers are wearing their uniforms and are clearly police officers. **Supporting evidence:** Ex. 17 at 21:13–16; Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56. |
| 178 | Defendants also failed to give adequate commands and instead gave simultaneous and conflicting commands which cause confusion and cause the subject to not be able to hear and/or understand commands. **Supporting evidence:** **Exh. P, Sun BWC** with Counter at 00:00-00:15 to Sincich Decl ¶17. **Clark Decl ¶8a.** | Disputed as it **misstates evidence**. Undisputed video evidence clearly demonstrates there was no confusion in this case. Valdivia heard each of the commands and disregarded them willfully by reaching multiple times for his waistband and finally retrieving the gun and starting to point it at the officers. Indeed, Valdivia *acknowledged* that he heard the officers' commands by saying "Whatever!" after he initially |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| No. | Plaintiffs' Additional Material Facts and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | reached for his waistband and was told not to reach and to put his hands up. Plaintiffs' expert's speculation to the contrary is irrelevant and not based on any personal knowledge and is contradicted by undisputed video. **Supporting evidence:** Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56. |
| 179 | Nevertheless, Valdivia complied with officer commands (1) to not reach, (2) to put his hands up, and (3) to get on the ground. **Supporting evidence:** **Exh. A, Sun Depo**, to Sincich Decl ¶2, at 58:12-59:1, 59:8-10, 60:6-61:5. **Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 14:7-12, 49:25-50:3. **Exh. P, Sun BWC** with Counter at 00:00-00:15 to Sincich Decl ¶17. | Undisputed that Valdivia eventually complied with some of the commands but not with others. Disputed to the extent it **misstates evidence** to suggest that Valdivia was fully compliant during the incident. Undisputed video evidence clearly demonstrates Valdivia disregarding multiple commands not to reach for anything and to put up his hands. And, while he complies with finally getting on the ground, he does not fully get on the ground but, instead, props himself up on one arm and then reaches for and retrieves his gun and starts to point it at the officers. **Supporting evidence:** Ex. 1 at 2:43–2:58; Ex. 2 at 0:40–0:56. |

| | Defendants' Reasonable Alternatives Yet Used Deadly Force without Warning | |
|---|---|---|
| 180 | Officers were trained on the equation, Distance + Cover = Time, and Time = Options.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 54:25-55:4. | Undisputed. |
| 181 | A K9 apprehension team, air support, and Special Response Team, were available at the time.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 42:1-11.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 5. | Disputed in part to the extent it **misstates the cited evidence**.<br><br>Officer Cardoza's testimony was that the Covina Police Department has a SWAT team and air support, **not** that it was "available at the time." In fact, she testified that SWAT team would be typically called for a barricaded suspect or a felon on the run.<br><br>Furthermore, the cited policy by Plaintiffs provides that alternative tactics are to be considered **only if** "time and circumstances reasonably permit" and only if "community and officer safety would not be compromised." Here, this was a situation involving a man brandishing a gun at others and arguing with two other subjects at the time that the officers arrived. At the same time, this was not a situation involving a barricaded suspect or a felon on the run such as to require immediate deployment of the SWAT team.<br><br>Moreover, the officers engaged in multiple de-escalation efforts, including setting up the containment, |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | | trying to divert Valdivia's attention from the two other subjects with whom he was arguing, and giving Valdivia clear commands. |
| | | | In fact, the officers testified that not approaching Valdivia could have caused him to escalate the situation, flee, or take hostages. |
| | | | **Supporting evidence:** |
| | | | Ex. C at 42:12–20; |
| | | | Ex. K at § 300.3.7; |
| | | | Ex. 13 at 20:9–13, 23:11–24:1, 24:11–15, 34:17–35:7, 42:1–10; |
| | | | Ex. 28 at 24:12–15, 53:21–54:10, 62:3–14, 80:13–81:12, 92:14–93:2; |
| | | | Ex. 29 at 46:23–47:13, 83:25–84:16; |
| | | | Ex. 21 at 32:12–25. |
| | 182 | Sergeant vehicles have ballistic shields.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 41:13-25. | Undisputed. |
| | 183 | Officers are told to carry batons and tasers.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 34:13-24, 38:5-7.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 37:1-5.<br>**Exh. E, Meadows Depo**, to | Undisputed except to the extent it **misstates evidence** by suggesting that the officers did not have less-lethal options on their persons.<br><br>Officer Sun testified that he was carrying a baton and a taser on his belt on the night of the incident. He also testified that there was no minimum requirement for how many |

| | | | |
|---|---|---|---|
| | | Sincich Decl ¶6, at 26:23-27:2. | less-lethal options to have on them.<br><br>Officer Meadows and Officers also Cardoza had a taser on them on the night of the incident.<br><br>The officers also testified that given the nature of the call (man with a gun), it would **not** have been prudent to engage Valdivia with non-lethal weapons, which would have endangered the officers and the public.  Nor would it have been reasonable to engage him with a taser or a baton when he reached for and quickly pulled out a gun and started pointing it at the officers.<br><br>**Supporting evidence**:<br><br>Ex. A at 34:23–24, 38:5–7;<br><br>Ex. C at 37:1–5;<br><br>Ex. E at 26:23–27:2;<br><br>Ex. 28 at 93:7–20;<br><br>Ex. 29 at 83:11–24. |
| | 184 | As trained, Tasers can cause neuromuscular incapacitation, and officers can take a subject into custody during the five-second cycle.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 37:16-18.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 37:4-6, 37:12-19, 38:6-10. | Undisputed but **not relevant** to any claims or defenses.<br><br>Disputed to the extent that it suggests that the use of a taser was a viable option under the circumstances.<br><br>At the time that the force became necessary (when Valdivia reached for and started to pull out his gun in what looked like an attempt to shoot at the officers), it would **not** have been reasonable or practical to use a taser. |

MANNING | KASS

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | | In addition, **legally irrelevant** as it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).<br><br>**Supporting evidence:**<br><br>Ex. 28 at 93:7–20;<br><br>Ex. 29 at 83:11–24. |
| | 185 | Officers Cardoza and Meadows left their OC spray in his patrol vehicle, which causes burning to the eyes and nose and can cause the subject to be disoriented.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 37:19-23.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 35:14-16, 36:4-9. | Undisputed except to the extent it suggests that the officers were required to carry pepper spray.<br><br>Plaintiffs' own cited evidence confirms that the officers could choose for themselves whether to carry pepper spray on their person; it was ***not*** a requirement.<br><br>Disputed to the extent it suggests that the use of pepper spray was a viable option under the circumstances.<br><br>At the time that the force became necessary (when Valdivia reached for and started to pull out his gun in what looked like an attempt to shoot at the officers), it would ***not*** have been reasonable or practical to use pepper spray against Valdivia.<br><br>In addition, **legally irrelevant** as it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).<br><br>**Supporting evidence**: |

MANNING | KASS

| | | | |
|---|---|---|---|
| 1 | | | Ex. A at 37:19–38:7; |
| 2 | | | Ex. C at 37:19–38:7; |
| 3 | | | Ex. E at 35:14–18; |
| 4 | | | Ex. 28 at 93:7–20; |
| 5 | | | Ex. 29 at 83:11–24. |
| 6 | 186 | Officer Cardoza was supposed to be the less-lethal option but left her baton and less-lethal shotgun in her vehicle.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 38:8-9, 39:1-4, 49:2-4. | Disputed as it **misstates evidence**.<br><br>Undisputed video evidence and officers' testimony confirm that Officer Sun told Officer Cardoza that it was up to her if she wants to bring a less-lethal option, provided there is sufficient time to do so.<br><br>In fact, Officer Sun testified that it was up to Officer Cardoza's discretion if she wanted to bring a less-lethal shotgun.<br><br>Cardoza also testified that there was insufficient time for her to retrieve the less-lethal shotgun once on the scene, particularly given that the less-lethal shotgun stored in the trunk of the police car, instead of up front, as per police department policy.<br><br>Further disputed to the extent it suggests a less-lethal shogun was a viable option under the circumstances. The officers testified that given the nature of the call (man with a gun), it would not have been prudent to engage Valdivia with non-lethal weapons, which would have endangered the officers and public.<br><br>In addition, **legally irrelevant** as it is |

MANNING | KASS

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | | "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).<br><br>**Supporting evidence**:<br><br>Ex. 21 at 23:18–22, 30:16–19;<br><br>Ex. 30 at 57:10–12, 57:20–25;<br><br>Ex. 28 at 55:9–22, 93:7–20;<br><br>Ex. 29 at 83:11–24. |
| | 187 | Officer Cardoza had the opportunity to get her less-lethal shotgun and chose not to.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo** at 54:9-12, 57:7-12, 86:11-15, to Sincich Decl ¶4. Officer Cardoza was about 5-10 feet away from her vehicle while the beanbag shotgun was in her trunk; had time to put gloves on when she first arrived on scene; had approximately 36 seconds of observing Valdivia and 36 seconds of time available to communicate with officers—but failed to, and 36 seconds of time available to retrieve the beanbag shotgun—but failed to.<br>**Exh. Q, Sun BWC** at 02:00-02:43 to Sincich Decl ¶18. | Disputed because it **misstates testimony**. Officer Cardoza testified that there was ***no sufficient time*** to retrieve the less-lethal shotgun given the quick escalation of the situation, the need for her to assist her partners, and the fact that the less-lethal shotgun is located in the trunk of the police car, per department policy.<br><br>In any event, **irrelevant** to any claims or defenses because the officers testified that it would not have be a viable option under the circumstances given the nature of the call (man armed with a gun) to approach him with a less-lethal shotgun.<br><br>In addition, **legally irrelevant** as it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).<br><br>**Supporting evidence:** |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | Ex. 21 at 23:18–22, 30:16–19;<br><br>Ex. 30 at 57:10–12, 57:20–25;<br><br>Ex. 28 at 55:9–22, 93:7–20;<br><br>Ex. 29 at 83:11–24. |
|---|---|---|---|
| | 188 | Knowing the call involved a potential brandishing of a gun, one of the reasons Officer Meadows specifically responded to the call is that he knew he had the K9 option.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 4:23-24, 20:19-21, 21:20-23, 26:20-22, 42:20-43:6. | Disputed to the extent it **misstates the testimony**. Officer Meadows specifically testified that given the nature of the call (man with a gun), he did ***not*** believe that it was safe or feasible to utilize his K-9.<br><br>Officer Meadows testified that he has never used his K-9 to apprehend a suspect armed with a gun or a knife. He also testified that the K-9s are ***not*** specifically trained to bite the forearm of a person and there was no specific command he could give his K-9 to bite the suspect's forearm.<br><br>In addition, **legally irrelevant** as it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).<br><br>**Supporting evidence:**<br><br>Ex. E at 21:20–22:13, 26:4–15. |
| | 189 | The K9 was trained for apprehension and used as a show of force to gain compliance and make the subject less likely to flee.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to | Disputed to the extent it **misstates testimony**. Officer Meadows testified that although his K-9 was generally trained for apprehension, it was ***not*** trained to apprehend a suspect armed with a gun or a knife. He also testified that the K-9s are ***not*** specifically trained to bite the |

MK **MANNING | KASS**

18

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | Sincich Decl ¶6, at 22:14-15, 23:7-20, 23:21-24. | forearm of a person and there was no specific command he could give his K-9 to bite the suspect's forearm.<br><br>In addition, **legally irrelevant** as it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).<br><br>**Supporting evidence:**<br><br>Ex. E at 21:20–22:13, 26:4–15. |
| | 190 | Yet, despite not knowing if there was going to be a less-lethal shotgun option for this call, Officer Meadows did not take the K9 out of the vehicle during the incident.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 21:25-22:2, 44:13-16. | Undisputed.<br><br>Officer Meadows specifically testified that given the nature of the call (man with a gun), he did ***not*** believe that it was safe or feasible to utilize his K-9.<br><br>**Supporting evidence:**<br><br>Ex. E at 21:20–22:13, 26:4–15. |
| | 191 | Based on the nature of the call, the Taser, beanbag shotgun, and K9 were less-lethal options to consider.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 46:10-18. **Exh. F, Meadows Statement**, to Sincich Decl ¶7, at 16:7-11. | Disputed as it **misstates evidence**. The officers testified that given the nature of the call (man armed with a gun threatening others), it would ***not*** have been prudent or safe to use any of these less-lethal options.<br><br>In addition, **legally irrelevant** as it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022). |

19

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | | **Supporting evidence:**<br><br>Ex. 28 at 93:7–20;<br><br>Ex. 29 at 83:11–24;<br><br>Ex. E at 21:20–22:13, 26:4–15. |
| | 192 | Yet, Officers failed to consider less-lethal options, even when Valdivia was perceived to be noncompliant and prior to seeing the gun on his person.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 78:9-79:9. | Disputed as the officers testified that they considered and decided that less-lethal weapons were ***not*** a reasonable or safe option under the circumstances given the nature of the call (man armed with a gun).<br><br>Disputed as it **misstates the evidence** to suggest that the officers did not know about the gun on Valdivia's person before seeing it when he pulled it out.  Rather, undisputed evidence establishes that the officers knew about Valdivia being armed with a gun ***before*** arriving on the scene (because they were advised of this fact by dispatch as reflected in the audios and videos), which played into their decision not to utilize less-lethal weapons as it would not be reasonable to approach an armed suspect with non-lethal weapons.<br><br>In addition, **legally irrelevant** as it is "well-established that police officers are ***not*** required to use the least intrusive degree of force possible." *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).<br><br>**Supporting evidence:**<br><br>Ex. 9, 10, 11;<br><br>Ex. 24 at CPD000092; |

| | | | |
|---|---|---|---|
| | | | Ex. 1 at 0:29–0:47, 2:18–2:23;<br><br>Ex. 28 at 93:7–20;<br><br>Ex. 29 at 83:11–24. |
| 193 | One trained option, for officer safety, was to command the subject to face away from officers, making it more difficult for the subject to use a firearm.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 77:4-7, 77:16-20.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 53:5-8, 54:5-16.<br>**Clark Decl** ¶10c. | Undisputed that this was a safety procedure to protect the officers but disputed to the extent it **misstates testimony** to suggest that this was a viable option under the circumstances given the presence of innocent bystanders.  Requiring Valdivia to face away from the officers would have unreasonably exposed others to threat of being shot by Valdivia.<br><br>Officer Meadows testified that given the presence of others in the area, the safest option to detain Valdivia was to order him to the ground.<br><br>**Supporting evidence**:<br><br>Ex. 29 at 84:17–85:6. | |
| 194 | Officers failed to consider instructing the compliant Valdivia to turn away as an option.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 76:8-15. | Disputed as it **misstates evidence**.<br><br>The evidence, including undisputed video evidence, clearly demonstrates that Valdivia was ***not*** "compliant," as he repeatedly reached for his waistband and disregarded the officers' commands.<br><br>It also misstates the evidence because Officer Meadows testified that under the circumstances (given the presence of others in the area), it would ***not*** have been reasonable or safe to ask Valdivia to turn around; instead, the safest option to detain Valdivia was to order him to the ground. | |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | | **Supporting evidence:**<br><br>Ex. 1 at 2:43–2:58;<br><br>Ex. 2 at 0:40–0:56;<br><br>Ex. 29 at 84:17–85:6. |
| | 195 | Cover was available to the Officers yet Officers Sun and Cardoza did not use the cover when using force.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 16:5-21, 75:3-4.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 66:23-25, 67:1-4.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 13:1-17, 66:10-16.<br>**Exh. O, 4-Up Video** at 00:00:00:10, to Sincich Decl ¶16. | Undisputed but **not relevant** to any claims or defenses.<br><br>Disputed to the extent it **misstates evidence** to suggest that the officers did not consider using cover.<br><br>Prior to Valdivia reaching for his waistband and retrieving the firearm, there was no need to use cover. However, once Valdivia reached for and retrieved the gun and started pointing it at the officers, thus necessitating the use of force, Officers Sun and Meadows (who were in his direct line of fire) testified that they ***did*** move toward cover.<br><br>**Supporting evidence:**<br><br>Ex. A at 16:2–21;<br><br>Ex. E at 13:1–11, 66:10–16. |
| | 196 | Officers should consider their backdrop when using deadly force for the safety of the public and involved parties, including because officers can miss and their shots could ricochet and harm innocent people.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 14:6-24. | Undisputed. |

| | | |
|---|---|---|
| | **Exh. K, Policy 300**, to Sincich Decl ¶12, at 4. | |
| 197 | Officer Cardoza's backdrop was in the direction of the two other subjects, and a store occupied by several people.<br><br>**Supporting evidence:**<br><br>**Exh. O, 4-Up Video** at 0:00:00:10, to Sincich Decl ¶16. | Undisputed. |
| 198 | Officers Sun and Meadows backdrop included businesses and several other civilians.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 10:7-23.<br>**Exh. F, Meadows Statement**, to Sincich Decl ¶7, at 18:1-2.<br>**Exh. O, 4-Up Video** at 0:00:00:10, to Sincich Decl ¶16. | Undisputed. |
| 199 | In this incident, two civilian vehicles were struck by officer bullets.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 14:25-15:1. | Undisputed but **not relevant** to any claims or defenses. |
| 200 | Additionally, one of the subjects in the incident stated that he was hit by shrapnel from officer bullets.<br><br>**Supporting evidence:** | Undisputed that this was stated but **not relevant** to any claims or defenses.  The subject also declined any treatment. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

MANNING | KASS

| | | | |
|---|---|---|---|
| | | **Exh. A, Sun Depo**, to Sincich Decl ¶2, at 15:23-16:1. | |
| | 201 | Defendants never gave a deadly force warning prior to using deadly force.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 18:7-16.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 68:2-7.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 64:15-22.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6.<br>**Exh. O, 4-Up Video** at 00:00:00:10, to Sincich Decl ¶16. | Undisputed but **_not relevant_** to any claims or defenses.<br><br>In addition, undisputed video evidence demonstrates that the officers gave Valdivia **_multiple commands_**, including repeatedly telling him not to reach for his waistband where they knew he had a gun. Undisputed video evidence also demonstrates that Valdivia quickly escalated the situation by reaching for, retrieving, and starting to point the gun at the officers, which made it impractical to give a deadly force warning under the circumstances.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:43–2:58;<br><br>Ex. 2 at 0:40–0:56. |
| | 202 | Within approximately 45 seconds of arriving, Officer Sun intentionally used deadly force firing six rounds with the intent of striking Valdivia center mass, knowing his hollow-point rounds designed to expand upon impact could cause death or serious bodily injury.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 8:13-9:5, 20:6-9, 35:7-15, 71:24-25.<br>**Exh. G, 4-Up Screenshots**, to | Undisputed that Officer Sun intentionally used deadly force by firing six rounds at Valdivia as a reasonable response to the threat of death or serious bodily injury posed by Valdivia as he reached for, retrieved, and started pointing a gun at Officers Sun and Meadows.<br><br>**Objections:**<br><br>Plaintiffs improperly rely on the sanitized frame-by-frame screenshots in discussing how Officer Sun must have perceived the situation. Such frame-by-frame screenshots do **_not_** |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | Sincich Decl ¶8: at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand. **Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | accurately reflect how an officer perceived the situation in real time and under the stressful and quickly-evolving circumstances. *See* Ex. 34 at 4–6. |
| | 203 | Officer Sun used a pistol mounted optic, a red dot, to provide a better view of the totality of the incident by allowing the officer to keep both eyes open and focus on the target as well and the scene. **Supporting evidence:** **Exh. A, Sun Depo**, to Sincich Decl ¶2, at 10:8-24. | Undisputed that Officer Sun used his gun's mounted option or red dot. Undisputed that Officer Sun testified that the optic provides a better view of the totality of the incident by allowing the officer to focus both on the target as well as the scene. |
| | 204 | Officer Sun assessed between each shot as required and important to continuously evaluate the threat and determine if deadly force was inappropriate. **Supporting evidence:** **Exh. A, Sun Depo**, to Sincich Decl ¶2, at 12:9-19, 13:4-8. | Undisputed that Officer Sun testified that he assessed after each shot and continuously evaluated Valdivia as presenting an imminent threat to himself and Officer Meadows while he fired his six rounds. Disputed to the extent it suggests that reassessment is always required after each shot when the shots are fired continuously in a single volley in response to an imminent threat. On the contrary, case law is clear that where, as here, there is an imminent threat, the officers are justified in continuing to fire until the threat is eliminated and reassessment, if any, is only required after each individual |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | | volley of shots, if reasonable under the circumstances. *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014); *Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790, 799–800 (9th Cir.) (*en banc*); *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010).<br><br>**Supporting evidence**:<br><br>Ex. 13 at 27:8–12, 29:12–16, 29:20–25, 30:4–7, 39:22–40:6, 43:7–13;<br><br>Ex. 28 at 17:16–20, 71:20–23, 72:6–7. |
| | 205 | Officer Sun described seeing Valdivia's actions in slow motion prior to using deadly force.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 13:9-11, 39:16-40:5.<br>**Exh. B, Sun Statement**, to Sincich Decl ¶3, at 25:23-24. | Undisputed that Officer Sun testified that to him, it seemed that the actions ***prior to the shooting*** occurred in slow motion such that he could clearly see Valdivia reach for and retrieve the gun and start raising it.<br><br>Officer Sun also testified that it did not necessarily allow him to analyze the situation any better.<br><br>**Supporting evidence:**<br><br>Ex. B at 25:23–24;<br><br>Ex. A at 1312–14:1. |
| | 206 | Officer Cardoza intentionally used deadly force by firing five rounds with the intent of striking Valdivia center mass, knowing it would cause death or serious bodily injury.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 9:6-9, 9:13-24, | Undisputed that Officer Cardoza intentionally used deadly force by firing five rounds at Valdivia as a reasonable response to the threat of death or serious bodily injury posed by Valdivia as he reached for, retrieved, and started pointing a gun at Officers Sun and Meadows.<br><br>**Objections:** |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | |
|---|---|---|
| | 23:8-11, 36:21-22.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | Plaintiffs improperly rely on the sanitized frame-by-frame screenshots in discussing how Officer Cardoza must have perceived the situation. Such frame-by-frame screenshots do ***not*** accurately reflect how an officer perceived the situation in real time and under the stressful and quickly-evolving circumstances.<br><br>*See* Ex. 34 at 4–6. |
| 207 | Officer Cardoza also used a red dot optic to aim her shots more accurately and fire with both eyes open to assess while using force.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 10:10-11:6. | Disputed as it **misstates testimony**.<br><br>Officer Cardoza corrected herself at the deposition and testified that she did ***not*** use the red dot optic because that was not available on her firearm at the time of the incident.  She testified that she used the iron sights on her firearm during the incident.<br><br>**Supporting evidence:**<br><br>Ex. 33 at 80:2–5, 80:12–14. |
| 208 | Officer Cardoza assessed between shots as trained to determine whether the subject is still a threat and decide whether or not to continue shooting.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 11:19-20, 12:5-20.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand. | Undisputed that Cardoza testified that she assessed after each shot and continuously evaluated Valdivia as presenting an imminent threat to Officer Sun and Officer Meadows while she fired her five rounds.<br><br>Disputed to the extent it suggests that reassessment is always required after each shot when the shots are fired continuously in a single volley in response to an imminent threat.  On the contrary, case law is clear that where, as here, there is an imminent threat, the officers are justified in continuing to fire until the threat is |

| | | |
|---|---|---|
| | **Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | eliminated and reassessment, if any, is only required after each individual volley of shots, if reasonable under the circumstances. *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014); *Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790, 799–800 (9th Cir.) (*en banc*); *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010).<br><br>**Supporting evidence**:<br><br>Ex. 21 at 25:8–15, 34:2–12;<br><br>Ex. 30 at 11:19–20, 16:19–17:16, 18:2–4, 18:18–22.<br><br>**Objections:**<br><br>Plaintiffs improperly rely on the sanitized frame-by-frame screenshots in discussing how Officer Cardoza must have perceived the situation. Such frame-by-frame screenshots do ***not*** accurately reflect how an officer perceived the situation in real time and under the stressful and quickly-evolving circumstances.<br><br>*See* Ex. 34 at 4–6. |
| 209 | Officer Cardoza also saw the shooting in slow motion.<br><br>**Supporting evidence:**<br><br>**Exh. D, Cardoza Statement**, to Sincich Decl ¶5, at 30:12-25. | Undisputed that Officer Cardoza testified that to her, it seemed that the actions ***prior to the shooting*** occurred in slow motion such that she could see Valdivia reach for and retrieve the gun and start pointing it.<br><br>**Supporting evidence:**<br><br>Ex. D at 30:22–25. |
| 210 | After hearing Officer Sun start shooting, Officer Meadows | Undisputed that Officer Meadows intentionally used deadly force by |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

MANNING | KASS

| | | | |
|---|---|---|---|
| | | intentionally used deadly force firing one round intended for his shot to strike Valdivia center mass, knowing even one shot can cause death or serious bodily injury.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 7:13-8:3, 8:4-19, 9:1-3, 9:11-13, 15:6-10, 15:24-16:5.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | firing one round at Valdivia as a reasonable response to the threat of death or serious bodily injury posed by Valdivia as he reached for, retrieved, and started pointing a gun at Officers Sun and Meadows.<br><br>**Objections:**<br><br>Plaintiffs improperly rely on the sanitized frame-by-frame screenshots in discussing how Officer Meadows must have perceived the situation. Such frame-by-frame screenshots do **not** accurately reflect how an officer perceived the situation in real time and under the stressful and quickly-evolving circumstances.<br><br>*See* Ex. 34 at 4–6. |
| | 211 | Officer Meadows also described that time slowed down and that he could see exactly every step that Valdivia was doing.<br><br>**Supporting evidence:**<br><br>**Exh. F, Meadows Statement**, to Sincich Decl ¶7, at 21:3-9.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12- | Undisputed that Officer Meadows testified to him, it seemed that the actions ***prior to the shooting*** occurred in slow motion such that he could see Valdivia reach for and retrieve the gun and start pointing it.<br><br>**Supporting evidence:**<br><br>Ex. F at 21:3–9.<br><br>**Objections:**<br><br>Plaintiffs improperly rely on the sanitized frame-by-frame screenshots in discussing how Officer Cardoza must have perceived the situation. Such frame-by-frame screenshots do **not** accurately reflect how an officer |

MANNING | KASS

| | | |
|---|---|---|
| | 00:18, to Sincich Decl ¶16. | perceived the situation in real time and under the stressful and quickly-evolving circumstances.<br><br>*See* Ex. 34 at 4–6. |
| **Valdivia was Not an Immediate Threat of Death or Serious Bodily Injury** | | |
| 212 | Given that Officers did not know what Valdivia was thinking, officers must analyze *apparent* intent by the subject's observed conduct and statements made.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 26:4-6, 69:9-19.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 25:2-4.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6.<br>**Clark Decl** ¶12e. | Undisputed. |
| 213 | Defendants had never met Valdivia before, had no information about his personal or family life, no information about whether he had a criminal history, no information about whether he was involved in a gang, no information about whether he had a history of drug or alcohol use, and no information as to whether Valdivia had any experience handling weapons.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 47:21-48:25. | Undisputed except to the extent it **misstates the evidence**.<br><br>The officers testified that they knew Valdivia was armed and that he has threatened others with a gun. They also knew that they were responding to a high-crime area. Upon arrival, they also observed Valdivia arguing with two other persons.<br><br>Officer Sun also observed that the way Valdivia quickly retrieved the gun with a solid grip indicated that he had experience handling guns.<br><br>**Supporting evidence:** |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | |
|---|---|---|
| | **Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 46:3-17.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 30:21-31:10. | Ex. 13 at 19:8–20:1, 20:17–23, 21:7–10, 21:17–20, 23:11–13, 28:25–29:9;<br><br>Ex. 28 at 40:8–18, 41:4–17, 42:16–22, 43:1–5, 44:13–16, 45:3–4, 45:13–14, 45:19–23, 47:3–6, 49:1–3, 50:1–10;<br><br>Ex. 17 at 18:6–12, 18:17–22, 19:24–25, 20:14–15, 30:19–31:11;<br><br>Ex. 29 at 28:1–5, 28:16–21, 30:2–5, 30:13–14;<br><br>Ex. 21 at 22:7–10, 28:5–16, 30:1–4;<br><br>Ex. 30 at 43:10–15, 44:6–7, 44:17–24, 45:13–19, 53:12–20, 70:17–18. |
| 214 | Valdivia never verbally threatened any officer and only said "whatever" the entire incident.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 51:1-8, 61:6-8.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 49:25-50:2.<br>**Exh. O, 4-Up Video** at 00:00-00:14, to Sincich Decl ¶16. | Undisputed. |
| 215 | Officer Cardoza had no information that Valdivia ever verbally threatened anybody.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 49:22-24. | Disputed as it **misstates evidence**.<br><br>Officer Cardoza testified that she was informed by dispatch that Valdivia was armed with a gun and was waving it and that people were fearful.  She also testified that she was informed by dispatch that Valdivia was in a verbal argument or altercation with two other persons. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | |
|---|---|---|
| | | **Supporting evidence:** |
| | | Ex. 30 at 43:10–15, 44:6–7, 44:17–24, 45:13–19; |
| | | Ex. 21 at 28:5–16. |
| 216 | Further, Valdivia was not yelling any anyone around him.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 49:4-8.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 53:24-54:8. | Undisputed that Valdivia may not have been "yelling" at the time that the officers arrived.<br><br>The officers, however, testified that Valdivia was arguing with two other persons when they arrived.<br><br>**Supporting evidence:**<br><br>Ex. 28 at 49:1–3;<br><br>Ex. 13 at 23:11–13 ;<br><br>Ex. 17 at 19:24–25, 20:14–15;<br><br>Ex. 30 at 53:12–20, 70:17–18. |
| 217 | Valdivia never attempted to shoot anyone; never attempted to grab, strike, punch or kick anyone; never attempted to take a hostage; never physically harm anyone; only Valdivia was injured during this incident.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2,<br>  at 46:14-16, 71:13-19.<br>**Exh. B, Sun Statement**, to Sincich Decl ¶3, at 15:1-3.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 21:19-21, 23:12-15, 49:12-21, 53:24-54:8, 70:10-12, 70:19-71:4. | Disputed to the extent that it **misstates the evidence**.<br><br>Undisputed video evidence clearly demonstrates that Valdivia intentionally reached for, retrieved, and started pointing a gun at the officers, which a reasonable officer under the totality of the circumstances would perceive as an ***attempt to shoot the officers***, justifying the use of deadly force.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:43–2:58;<br><br>Ex. 2 at 0:40–0:56. |

32

| | | | |
|---|---|---|---|
| | | **Exh. D, Cardoza Statement**, to Sincich Decl ¶5, at 17:7-9.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 16:18-17:9, 32:3-5, 32:9-21.<br>**Exh. O, 4-Up Video** at 00:00-00:14, to Sincich Decl ¶16. | |
| | 218 | Valdivia never attempted to flee, run or lung; never attempted to enter any nearby business; and never attempted to enter any nearby vehicle.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 71:10-12.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 68:19-23, 71:6-11. | Undisputed but **<u>not relevant</u>** to any claims or defenses. |
| | 219 | Instead, Valdivia was compliant with several commands.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 59:8-10, 60:6-18.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 61:24-62:1.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 60:19-21, 60:25-61:5. 65:18-20, 66:4-9.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16.<br>**Clark Decl** ¶11. | Undisputed that Valdivia was compliant with several commands while failing to comply and disregarding multiple other commands, including multiple commands not to reach for the gun.<br><br>**Supporting evidence:**<br><br>Ex. 1 at 2:43–2:58;<br><br>Ex. 2 at 0:40–0:56. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| 220 | Valdivia's apparent intent was to comply with Officers and to discard the gun, which is what he did, prior to the shots being fired.<br><br>**Supporting evidence:**<br><br>**Exh. O, 4-Up Video** at 00:00-00:18, to Sincich Decl ¶16.<br>**Clark Decl** ¶12e. | Disputed as it grossly **mischaracterizes the evidence** and relies on **speculation** and **20/20 hindsight** to justify Valdivia's actions, a luxury that was ***not*** available to the responding officers.<br><br>Valdivia was ***not*** "complying" with the officers' commands as those commands clearly told him ***not*** to reach for his gun. By reaching for his gun and retrieving it, Valdivia was clearly ***disregarding*** the commands given to him by the officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force.<br><br>The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him.<br><br>As undisputed video evidence demonstrates (including Plaintiffs' |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

own evidence), there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took place within **a fraction of a second** from when the gun left Valdivia's hand, specifically: Cardoza — **0.08 seconds**; Sun — **0.28 seconds**; and Meadows — **0.84 seconds**.

**Supporting evidence:**

Ex. 1 at 2:43–2:58;

Ex. 2 at 0:40–0:56;

Ex. 34 at 16–17;

Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483).

**Objections:**

Plaintiffs' expert **lacks personal knowledge** about Valdivia's "intent" and, thus, his opinion is not based on any specialized knowledge but, instead, is pure speculation and guesswork based on 20/20 hindsight after watching the videos.

| | 221 | Valdivia dropped the gun, moved his hand back towards his head away from the gun, and went face-down to the ground where it remained, not reaching for the | Disputed as it grossly **mischaracterizes the evidence** and relies on **20/20 hindsight** based on after-the-fact still frame-by-frame |

gun, and had visibly empty hands at the time of all the shots.

**Supporting evidence:**

**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 72:16-20.
**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 63:16-21.
**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 77:19-21, 78:21-24.
**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.
**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.
**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.
**Exh. O, 4-Up Video** at 00:10-00:18, to Sincich Decl ¶16.
**Clark Decl** ¶12c-d.

screenshots, a luxury that was ***not*** available to the responding officers.

Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force.

The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him.

As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took

| | | | |
|---|---|---|---|
| | | | place within *a fraction of a second* from when the gun left Valdivia's hand, specifically: Cardoza — *0.08 seconds*; Sun — *0.28 seconds*; and Meadows — *0.84 seconds*. |
| | | | **Supporting evidence:** |
| | | | Ex. 1 at 2:43–2:58; |
| | | | Ex. 2 at 0:40–0:56; |
| | | | Ex. 34 at 16–17; |
| | | | Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483). |
| | | | **Objections:** |
| | | | Plaintiffs' expert **lacks personal knowledge** about Valdivia's actions. His opinion is not based on any specialized knowledge but, instead, is based on 20/20 hindsight after watching the videos and still frames. |
| | 222 | Valdivia did not have the capability and did not have the opportunity to imminently cause death or serious bodily injury after he dropped the gun prior to the shots being fired— was unarmed—moved his hand away from it, and looked down on the ground.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 70:19-71:3.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots,** | Disputed as it grossly **mischaracterizes the evidence** and relies on **speculation** and **20/20 hindsight** to justify Valdivia's actions, a luxury that was *not* available to the responding officers.<br><br>Undisputed video evidence clearly demonstrates that Valdivia *did* have the capability and the opportunity to imminently cause death or serious bodily injury at the time that the officers perceived his actions, made the decision to fire, and executed the movements necessary to fire.<br><br>Video evidence demonstrates that Valdivia repeatedly disregarded the |

MANNING | KASS

to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.
**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.
**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6.
**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16.
**Clark Decl** ¶12e.

commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an imminent intent to shoot at officers, justifying the use of deadly force.

The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him.

As undisputed video evidence demonstrates (including Plaintiffs' own evidence), there was approximately *1.5 to 2 seconds* between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took place within *a fraction of a second* from when the gun left Valdivia's hand, specifically: Cardoza — *0.08 seconds*; Sun — *0.28 seconds*; and Meadows — *0.84 seconds*.

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | **Supporting evidence:**<br><br>Ex. 1 at 2:43–2:58;<br><br>Ex. 2 at 0:40–0:56;<br><br>Ex. 34 at 16–17;<br><br>Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483).<br><br>**Objections:**<br><br>Plaintiffs' expert **lacks personal knowledge** about Valdivia's actions. His opinion is not based on any specialized knowledge but, instead, is based on 20/20 hindsight after watching the videos and still frames. |

| 223 | In slow motion, Officer Sun continued to assess, saw Valdivia drop the gun and put his right hand on the ground, and continued shooting until Valdivia stopped moving despite knowing he dropped the gun.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 13:9-11, 39:16-40:5, 72:8-20, 73:14-24: perceived "the firearm was no longer pointed at me"; saw "everything frame by frame before we had to act."<br>**Exh. B, Sun Statement**, to Sincich Decl ¶3, at 25:23-24, 26:20-22, 36:13-23.)<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | Disputed as it **misstates evidence**.<br><br>Officer Sun ***never*** testified that he saw Valdivia drop the gun and put his right hand on the ground as he continued shooting or that he continued shooting despite knowing that Valdivia dropped the gun.<br><br>On the contrary, Officer Sun testified that he observed Valdivia retrieve the gun and start to raise it until it was almost pointing in the direction of him and Officer Meadows.<br><br>According to Officer Sun, once Valdivia raised the gun so that the barrel was pointing in his direction, he felt that he had no choice but to shoot to avoid Valdivia shooting him or Officer Meadows.<br><br>Officer Sun testified that at the time he fired his first shot, Valdivia was leaning to his left side while on the ground and had the gun in his right hand pointing in the direction of him and Officer Meadows.<br><br>According to Officer Sun, he perceived Valdivia continuously pointing the gun in his direction between his first and sixth shot. He testified that he genuinely feared that Valdivia would kill him and his partner at the time that he fired.<br><br>Officer Sun testified that he stopped shooting when he no longer perceived Valdivia as a threat, which was when the gun was no longer pointed in the officers' direction. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MANNING | KASS

The only testimony about perceiving time as slowing down was Officer Sun testifying that to him, it seemed that the actions **prior to the shooting** occurred in slow motion such that he could clearly see Valdivia reach for and retrieve the gun and start raising the gun to point at the officers.

Further, undisputed video evidence demonstrates that Officer Sun did not have the luxury to wait and see if Valdivia would in fact shoot at him and Meadows.  Instead, after yelling at Valdivia not to reach for the gun, he had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat posed by him.

As undisputed video evidence demonstrates (including Plaintiffs' own evidence), there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Sun's first shot allegedly took place within approximately **a quarter of a second** (0.28 seconds) after the gun left Valdivia's hand.

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | **Supporting evidence:** |
|---|---|---|---|
| | | | Ex. 13 at 27:8–12, 29:9–30:7, 39:22–40:6, 43:7–13; |
| | | | Ex. 28 at 17:5—25, 71:20–23, 72:1–15; |
| | | | Ex. A at 39:16–40:5; |
| | | | Ex. 1 at 2:43–2:58; |
| | | | Ex. 2 at 0:40–0:56; |
| | | | Ex. 34 at 16–17; |
| | | | Ex. G at 51 (Officer Sun's BWC Frame 4469). |
| | 224 | Officer Sun's described: he was firing, he saw Valdivia moving, he saw the gun drop, he kept shooting, Valdivia stopped moving, then he stopped shooting.<br><br>**Supporting evidence:**<br><br>**Exh. B, Sun Statement**, to Sincich Decl ¶3, at 26:19-25.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | Disputed as it **misstates evidence**.<br><br>Officer Sun testified that he observed Valdivia retrieve the gun and start to raise it until it was almost pointing in the direction of him and Meadows.<br><br>According to Officer Sun, once Valdivia raised the gun so that the barrel was pointing in his direction, he felt that he had no choice but to shoot to avoid Valdivia shooting him or Officer Meadows.<br><br>Officer Sun testified that at the time he fired his first shot, Valdivia was leaning to his left side while on the ground and had the gun in his right hand pointing in the direction of him and Officer Meadows.<br><br>According to Officer Sun, he perceived Valdivia continuously pointing the gun in his direction between his first and sixth shot. He |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

testified that he genuinely feared that Valdivia would kill him and his partner at the time that he fired.

Officer Sun testified that he stopped shooting when he no longer perceived Valdivia as a threat, which was when the gun was no longer pointed in the officers' direction.

Further, undisputed video evidence demonstrates that Officer Sun did not have the luxury to wait and see if Valdivia would in fact shoot at him and Meadows. Instead, after yelling at Valdivia not to reach for the gun, he had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat posed by him.

As undisputed video evidence demonstrates (including Plaintiffs' own evidence), there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Sun's first shot allegedly took place within approximately **a quarter of a second** (0.28 seconds) after the gun left Valdivia's hand.

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | Supporting evidence: |
|---|---|---|---|
| | | | Ex. 13 at 27:8–12, 29:9–30:7, 39:22–40:6, 43:7–13; |
| | | | Ex. 28 at 17:5—25, 71:20–23, 72:1–15; |
| | | | Ex. A at 39:16–40:5; |
| | | | Ex. 1 at 2:43–2:58; |
| | | | Ex. 2 at 0:40–0:56; |
| | | | Ex. 34 at 16–17; |
| | | | Ex. G at 51 (Officer Sun's BWC Frame 4469). |
| | 225 | Still, Officer Sun admitted that Valdivia was no longer a perceived threat when "the firearm was no longer pointed at" him.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 72:1-3, 72:8-10. | Undisputed that Officer Sun testified that he stopped shooting once Valdivia was no longer a threat, which was when the gun was no longer pointing at the officers.<br><br>Disputed to the extent it mischaracterizes the evidence to suggest that Officer Sun continued shooting after he no longer perceived Valdivia as being a threat.<br><br>**Supporting evidence:**<br><br>*See supra* Defendants' responses to Plaintiffs' UF 223 and 224. |
| | 226 | Officer Sun admitted, a person armed with a gun would not be an immediate threat of death or serious bodily injury if they discard the gun, the gun is not within arm's reach, the subject has no other weapons on them, and refrain from making any | Undisputed but **not relevant** to any claims or defenses.<br><br>Indeed, Officer Sun testified that even after Valdivia dropped the gun, the gun was still within a hand's reach ("several inches") from Valdivia's right hand and Valdivia's right arm |

| | | |
|---|---|---|
| | movement to retrieve the gun.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 64:22-65:6.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6. | was "extended forward" "towards the gun" at the time. Valdivia, thus, had the ability to retrieve the gun at any moment and shoot at the officers.<br><br>**Supporting evidence:**<br><br>Ex. A at 72:11–15, 73:7–13. |
| 227 | Officer Sun admitted, even if a person points a gun at an officer, then drops the gun, and does not make any movement towards the gun, the subject is no longer an imminent threat of death or serious bodily injury because the subject lost the ability to cause death or serious bodily injury, and it would not be permissible to use deadly force against that person.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 67:2-7, 67:19-25, 70:19-71:3.)<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6. | Undisputed but **<u>not relevant</u>** to any claims or defenses.<br><br>Indeed, Officer Sun testified that even after Valdivia dropped the gun, the gun was still within a hand's reach ("several inches") from Valdivia's right hand and Valdivia's right arm was "extended forward" "towards the gun" at the time. Valdivia, thus, had the ability to retrieve the gun at any moment and shoot at the officers.<br><br>**Supporting evidence:**<br><br>Ex. A at 72:11–15, 73:7–13. |
| 228 | Officer Meadows knew that there was no imminent threat when he saw the gun on the ground and because Valdivia did not reach for the gun after it was on the ground, making deadly force inappropriate because there would not be a perceived imminent threat.<br><br>**Supporting evidence:** | Disputed to the extent that **<u>misstates the evidence</u>** to suggest that Officer Meadows fired his single shot after he perceived Valdivia dropping the gun and not reaching for it.<br><br>On the contrary, Officer Meadows testified that as Valdivia started getting on the ground, Officer Meadows observed that he posted himself on the ground with his left arm and begun reaching again for his |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | |
|---|---|
| **Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 58:17-59:8, 76:24-77:1.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | waistband with his right hand in the direction where his gun was.<br><br>Officers Meadows and Sun both gave Valdivia commands not to reach for it. Valdivia, however, ignored the commands, removed the gun from his waistband, and started to bring it up in the direction of him and Officer Sun. Officer Meadows testified that he could see clearly as the muzzle started to raise up in their direction.<br><br>Officer Meadows testified that he sidestepped to the side to avoid being in Valdivia's line of fire and pulled the trigger before Valdivia could get a round off. According to Officer Meadows, at the time that he fired, Valdivia's gun was pointed in the direction of him and Officer Sun.<br><br>Officer Meadows testified that he fired because he was afraid that Valdivia was going to start shooting and kill either him or Officer Sun.<br><br>Officer Meadows testified that following his shot, he reassessed and stopped shooting because Valdivia no longer had a gun in his hand.<br><br>Further, undisputed video evidence demonstrates that Officer Meadows did not have the luxury to wait and see if Valdivia would in fact shoot at him and Sun. Instead, after yelling at Valdivia not to reach for the gun, he had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions |

**MANNING | KASS**

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | |
|---|---|---|
| | | by moving to avoid being hit and shooting at Valdivia to stop the imminent threat posed by him.

As undisputed video evidence demonstrates (including Plaintiffs' own evidence), there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Meadows first shot allegedly took place within approximately **a fraction of a second** (0.84 seconds) after the gun left Valdivia's hand.

**Supporting evidence:**

Ex. 17 at 23:25–25:7, 38:14–24, 40:20–25;

Ex. 29 at 13:21–14:1, 55:14–25, 58:14–20;

Ex. 1 at 2:43–2:58;

Ex. 2 at 0:40–0:56;

Ex. 34 at 16–17;

Ex. G at 65 (Officer Sun's BWC Frame 4483). |
| 229 | In slow motion, seeing exactly what Valdivia was doing, Officer Meadows saw the gun fall out of Valdivia's hand, and fired only one round because during his | Disputed because it grossly <u>**mischaracterizes the evidence**</u>.

Officer Meadows **never** testified that he saw Valdivia's gun fall out of |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

assessment he did not perceive a threat since he no longer had the gun in his hand.

**Supporting evidence:**

**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 58:14-16: "I saw the gun on the ground, and I didn't see any imminent threat at that point."

**Exh. F, Meadows Statement**, to Sincich Decl ¶7, at 21:3-9, 21:18-22, 34:4-9.

**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.

**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.

**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.

**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16.

Valdivia's hand and then fired.

On the contrary, Officer Meadows testified that as Valdivia started getting on the ground, Officer Meadows observed that he posted himself on the ground with his left arm and begun reaching again for his waistband with his right hand in the direction where his gun was.

Officers Meadows and Sun both gave Valdivia commands not to reach for it. Valdivia, however, ignored the commands, removed the gun from his waistband, and started to bring it up in the direction of him and Officer Sun. Officer Meadows testified that he could see clearly as the muzzle started to raise up in their direction.

Officer Meadows testified that he sidestepped to the side to avoid being in Valdivia's line of fire and pulled the trigger before Valdivia could get a round off. According to Officer Meadows, at the time that he fired, Valdivia's gun was pointed in the direction of him and Officer Sun.

Officer Meadows testified that he fired because he was afraid that Valdivia was going to start shooting and kill either him or Officer Sun.

Officer Meadows testified that following his shot, he reassessed and stopped shooting because Valdivia no longer had a gun in his hand.

The only testimony about perceiving time as slowing down was Officer Meadows testifying that to him, it

seemed that the actions **prior to the shooting** occurred in slow motion such that he could see Valdivia reach for and retrieve the gun and start pointing it at the officers.

Further, undisputed video evidence demonstrates that Officer Meadows did not have the luxury to wait and see if Valdivia would in fact shoot at him and Sun. Instead, after yelling at Valdivia not to reach for the gun, he had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat posed by him.

As undisputed video evidence demonstrates (including Plaintiffs' own evidence), there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Meadows's shot allegedly took place within approximately **a fraction of a second** (0.84 seconds) after the gun left Valdivia's hand.

**Supporting evidence:**

Ex. 17 at 23:25–25:7, 38:14–24, 40:20–25;

MANNING | KASS

| | | | |
|---|---|---|---|
| | | | Ex. 29 at 13:21–14:1, 55:14–25, 58:14–20;<br><br>Ex. F at 21:3–9;<br><br>Ex. 1 at 2:43–2:58;<br><br>Ex. 2 at 0:40–0:56;<br><br>Ex. 34 at 16–17;<br><br>Ex. G at 65 (Officer Sun's BWC Frame 4483). |
| | 230 | After firing, Officer Meadows believed his round impacted Valdivia.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 69:3-12. | Undisputed. |
| | 231 | Officer Cardoza stated that she stopped firing because Valdivia was no longer a threat because he no longer had a gun in his hand.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 62:12-63:12.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6. | Undisputed. |
| | 232 | Based on officer training, if an officer does not objectively perceive a deadly threat, then that officer should not use deadly force.<br><br>**Supporting evidence:** | Undisputed that the cited policy provides, in relevant part, that the use of deadly force is justified "when the officer reasonably believes it is necessary … to protect him/herself or others from what he/she reasonably believes is an imminent threat of |

| | | | |
|---|---|---|---|
| | | **Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 63:9-13.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6. | death or serious bodily injury to the officer or another person."<br><br>**Supporting evidence:**<br><br>Ex. K at § 300.4(a). |
| | 233 | In slow motion, Officer Cardoza saw Valdivia drop the gun and continued to assess between shots.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 11:19-20, 63:14-15: saw Valdivia drop the gun.<br>**Exh. D, Cardoza Statement**, to Sincich Decl ¶5, at 30:12-25.<br>**Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 44-91 shots fired without gun in hand.<br>**Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 44-91 shots fired without gun in hand.<br>**Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10.<br>**Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. | Disputed to the extent it **misstates the evidence** to suggest that Officer Cardoza observed Valdivia drop the gun but continued to fire.<br><br>Officer Cardoza testified that given her position (approaching Valdivia from the side), she was able to observe how Valdivia started lifting up his sweater with his right hand as he started to lay down. As Valdivia lifted up his sweater, she observed the handle of a black handgun in his waistband. Immediately thereafter, she observed Valdivia reach for the gun with his right hand, pull it out, and start to point it at the officers.<br><br>Officer Cardoza indicated that she started firing when she observed Valdivia pointing the gun at Officers Sun and Meadows because she afraid he was going to shoot and kill one or both of them. Officer Cardoza testified that she genuinely feared that Valdivia would kill her partners at the time that she fired.<br><br>She testified that she assessed after each shot and that she perceived Valdivia continuously pointing the gun in the direction of Officers Sun and Meadows during her five shots.<br><br>Officer Cardoza testified that she stopped shooting once she perceived |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

that Valdivia dropped the gun because he was no longer a threat.

The only testimony about perceiving time as slowing down was Officer Cardoza testifying that to her, it seemed that the actions ***prior to the shooting*** occurred in slow motion such that she could see Valdivia reach for and retrieve the gun and start pointing it at the officers.

Further, undisputed video evidence demonstrates that Officer Cardoza did not have the luxury to wait and see if Valdivia would in fact shoot at her partners. Instead, she had to analyze Valdivia's actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions.

As undisputed video evidence demonstrates (including Plaintiffs' own evidence), there was approximately ***1.5 to 2 seconds*** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that Officer Cardoza's first shot allegedly took place within approximately ***one tenth of a second*** (0.08 seconds) after the gun left Valdivia's hand.

**Supporting evidence:**

Ex. 21 at 24:13, 25:1–22, 33:16–24,

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | | 34:2–12, 35:13–16;<br><br>Ex. 23 at 4:3–13;<br><br>Ex. 30 at 11:19–20, 16:19–17:16, 62:12–15, 62:18–21;<br><br>Ex. D at 30:22–25;<br><br>Ex. 1 at 2:43–2:58;<br><br>Ex. 2 at 0:40–0:56;<br><br>Ex. 34 at 16–17;<br><br>Ex. G at 46 (Officer Sun's BWC Frames 4464). |
| | 234 | Officer Cardoza admits, if a person has a gun and points it at somebody but then discards the gun, it would not be appropriate to use deadly force because they are unarmed and would not be a threat under the training.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 64:24-65:5, 66:19-22.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6. | Undisputed but **<u>not relevant</u>** to any claims or defenses. |
| | 235 | The ultimate objective of every law enforcement encounter is to avoid or minimize injury, including by de- escalation when feasible.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 76:2-8.<br>**Exh. E, Meadows Depo** 81:17-20, | Undisputed. |

| | | |
|---|---|---|
| | 81:21-23. | |
| 236 | Officers should only use force when it reasonably appears necessary under the totality of circumstances, which includes the officer's conduct leading up to the use of force.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 76:10-13.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 81:3-12.<br>**Exh. K, Policy 300**, to Sincich Decl ¶12, at 6. | Undisputed. |
| 237 | To use deadly force there needs to be more than just any threat, it must specifically be an immediate threat of death or serious bodily injury.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 25:19-22, 63:8-20.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 59:12-16. | Undisputed. |
| 238 | Meaning the subject must have the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 68:1-5. | Undisputed. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | |
|---|---|---|
| | **Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 24:21-23.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 82:3-9. | |
| 239 | Under Penal Code 835a, imminent is not fear of future harm no matter how great the fear and no matter how great the likelihood of the harm.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 82:10-25. | Undisputed. |
| 240 | An officer cannot use deadly force based on subjective fear alone and are trained to control their fear.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 77:8-10, 78:9-16.<br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 86:24-87:2. | Undisputed. |
| 241 | Officers cannot use deadly force merely because a person is not complying with commands, cannot use deadly force merely because a person has a gun in their hand, and cannot use deadly force merely because a subject might have the capability of picking up a gun once discarded.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 20:10-21:2, 25:14-18, 68:18- | Undisputed but **not relevant** to any claims or defenses. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | 22.<br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 24:10-19. | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17 | 242 | When using deadly force, officers must have reverence for human life, knowing that just one gunshot could kill, officers must justify every shot fired.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 77:1-7.<br>**Exh. F, Meadows Statement**, to Sincich Decl ¶7, at 32:25-33:1. | Undisputed except to the extent it suggests that reassessment is always required after each shot when the shots are fired continuously in a single volley in response to an imminent threat regardless of circumstances facing the officer.<br><br>Case law is clear that where, as here, there is an imminent threat, the officers are justified in continuing to fire until the threat is eliminated and reassessment, if any, is only required after each individual volley of shots, if reasonable and practical under the circumstances. *See Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014); *Estate of Hernandez v. City of Los Angeles*, 139 F.4th 790, 799–800 (9th Cir.) (*en banc*); *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010). |
| 18<br>19<br>20<br>21<br>22<br>23<br>24<br>25 | 243 | Valdivia suffered eight gunshot wounds, including two to the head, one to the right shoulder, one to the abdomen, two to the right thigh, and two to the back.<br><br>**Supporting evidence:**<br><br>**Exh. J, Autopsy Report** at 1 (CPD 120), to Sincich Decl ¶11. | Undisputed. |
| 26<br>27<br>28 | 244 | Valdivia died as a result of his injures, the manner of death being "Homicide" and cause of death "Shot by other(s), law | Undisputed. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | | |
|---|---|---|---|
| | | enforcement related." **Supporting evidence:** **Exh. J, Autopsy Report** at 1 (CPD 120), to Sincich Decl ¶11. | |
| | 245 | While face down on the ground, having complied several times, Defendants repeatedly shot Valdivia despite his visibly empty hands. **Supporting evidence:** **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. **Clark Decl** ¶11-12c-d. | Disputed as it grossly **mischaracterizes the evidence** and relies on **20/20 hindsight** based on after-the-fact still frame-by-frame screenshots, a luxury that was **not** available to the responding officers. Undisputed video evidence clearly demonstrates that Valdivia repeatedly **disregarded** the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an imminent intent to shoot at officers, justifying the use of deadly force. The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), |

| | | |
|---|---|---|
| | | there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire. |
| | | Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took place within **a fraction of a second** from when the gun left Valdivia's hand, specifically: Cardoza — **0.08 seconds**; Sun — **0.28 seconds**; and Meadows — **0.84 seconds**. |
| | | **Supporting evidence:** |
| | | Ex. 1 at 2:43–2:58; |
| | | Ex. 2 at 0:40–0:56; |
| | | Ex. 34 at 16–17; |
| | | Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483). |
| | | **Objections:** |
| | | Plaintiffs' expert **lacks personal knowledge** about Valdivia's actions. His opinion is not based on any specialized knowledge but, instead, is based on 20/20 hindsight after watching the videos and still frames. |
| 246 | There were at least 5 units with Officer Sun responding to the call. **Supporting evidence:** **Exh. A, Sun Depo**, to Sincich Decl ¶2, at 53:11-19. | Undisputed. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | |
|---|---|---|
| | **Exh. B, Sun Statement**, to Sincich Decl ¶3, at 17:9-17. | |
| 247 | Officer Sun was 5'8" and 175 pounds, with 6 years' experience including as a SWAT officer.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 22:3-8, 51:14-16. | Undisputed. |
| 248 | Officer Meadows was 5'10" and 220 pounds, with 11 years' experience.<br><br>**Supporting evidence:**<br><br>**Exh. E, Meadows Depo**, to Sincich Decl ¶6, at 14:20-23, 18:11-13. | Undisputed. |
| 249 | Officer Cardoza was 5'7" and 170 pounds, with over 3 years' experience.<br><br>**Supporting evidence:**<br><br>**Exh. C, Cardoza Depo**, to Sincich Decl ¶4, at 34:13-15. 36:1-6. | Undisputed. |
| 250 | Valdivia was 5'10" and 215 pounds.<br><br>**Supporting evidence:**<br><br>**Exh. A, Sun Depo**, to Sincich Decl ¶2, at 51:10-13.<br>**Exh. J, Autopsy Report** at 6 (CPD 125), to Sincich Decl ¶11. | Undisputed. |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| 251 | Any reasonable officer under these circumstances would not consider Valdivia to be an immediate threat of death or serious bodily injury at the time; that the use of deadly force against Valdivia by Defendants was inappropriate and unnecessary under the circumstances of this case, violated the standard of care, violated basic law enforcement training, and violated POST standards. **Supporting evidence:** **Exh. G, 4-Up Screenshots**, to Sincich Decl ¶8: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. H, Sun BWC Screenshots**, to Sincich Decl ¶9: at 1-43 discarding gun; at 44-91 shots fired without gun in hand. **Exh. I, Shots Screenshots** at 1-11 to Sincich Decl ¶10. **Exh. K, Policy 300**, to Sincich Decl ¶12, at 3-6. **Exh. O, 4-Up Video** at 00:12-00:18, to Sincich Decl ¶16. **Clark Decl** ¶12. | This is a legal conclusion, not a material "fact" and, thus, is improperly included in the statement of additional material facts. Disputed as it grossly **mischaracterizes the evidence** and relies on **20/20 hindsight** based on after-the-fact still frame-by-frame screenshots, a luxury that was **not** available to the responding officers. Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force. The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him. As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately **1.5 to 2 seconds** between Valdivia retrieving |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | |
|---|---|---|
| | | the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire. |
| | | Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took place within ***a fraction of a second*** from when the gun left Valdivia's hand, specifically: Cardoza — ***0.08 seconds***; Sun — ***0.28 seconds***; and Meadows — ***0.84 seconds***. |
| | | **Supporting evidence:** |
| | | Ex. 1 at 2:43–2:58; |
| | | Ex. 2 at 0:40–0:56; |
| | | Ex. 34 at 16–17; |
| | | Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483). |
| | | **Objections:** |
| | | Plaintiffs' expert **lacks personal knowledge** about Valdivia's actions. His opinion is not based on any specialized knowledge but, instead, is based on 20/20 hindsight after watching the videos and still frames. |
| 252 | Any reasonable officer would know that the law was clearly established at the time of the incident that law enforcement officers could not use deadly force under these circumstances where a subject complies with officer commands, goes to the ground, then discards a gun, then once | This is a legal conclusion, not a material "fact" and, thus, is improperly included in the statement of additional material facts.<br><br>Disputed as it grossly **mischaracterizes the evidence** and relies on **20/20 hindsight** based on after-the-fact still frame-by-frame |

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

visibly unarmed as determined by officers who assessed the situation occurring to them in slow motion, repeatedly used deadly force.

**Supporting evidence:**

**Exh. K, Policy 300**, to Sincich Decl ¶12, at 3-6.
**Clark Decl ¶13.**

screenshots, a luxury that was **not** available to the responding officers.

Undisputed video evidence clearly demonstrates that Valdivia repeatedly disregarded the commands given to him, reached for and retrieved a gun, and started moving his hand with the gun forward towards Officers Sun and Meadows, which a reasonable officer under the totality of the circumstances would perceive as an intent to shoot at the officers, justifying the use of deadly force.

The officers did not have the luxury to wait and see if Valdivia would in fact shoot at them. Instead, after yelling at Valdivia not to reach for the gun, they had to analyze his actions of retrieving the gun and starting to move the hand with the gun towards them and then react to those actions by moving to avoid being hit and shooting at Valdivia to stop the imminent threat presented by him.

As undisputed video evidence demonstrates (including Plaintiffs' own frame-by-frame screenshots), there was approximately **1.5 to 2 seconds** between Valdivia retrieving the gun and the officers shooting at him, which accounts for the officers' need to assess the situation, make the decision to fire, and complete the movements necessary to fire.

Indeed, Plaintiffs' own frame-by-frame screenshots show that each of the officers' first shot allegedly took

Defendants' Response to Plaintiffs' Statement of Additional Material Facts

| | | place within *a fraction of a second* from when the gun left Valdivia's hand, specifically: Cardoza — *0.08 seconds*; Sun — *0.28 seconds*; and Meadows — *0.84 seconds*. |
| --- | --- | --- |
| | | **Supporting evidence:** |
| | | Ex. 1 at 2:43–2:58; |
| | | Ex. 2 at 0:40–0:56; |
| | | Ex. 34 at 16–17; |
| | | Ex. G at 46, 51, 65 (Officer Sun's BWC Frames 4464, 4469, 4483). |
| | | **Objections:** |
| | | Plaintiffs' expert **lacks personal knowledge** about Valdivia's actions. His opinion is not based on any specialized knowledge but, instead, is based on 20/20 hindsight after watching the videos and still frames. |

DATED:  July 1, 2025              Respectfully submitted,

                                                **MANNING & KASS**
                                                **ELLROD, RAMIREZ, TRESTER LLP**

                                                By:      */s/ Yury A. Kolesnikov*
                                                           Mildred K. O'Linn
                                                           Yury A. Kolesnikov
                                                           *Attorneys for Defendants City of Covina,*
                                                           *Vanessa Cardoza, David Meadows, and*
                                                           *Billy Sun*

Defendants' Response to Plaintiffs' Statement of Additional Material Facts