Mildred K. O'Linn (State Bar No. 159055)
*missy.olinn@manningkass.com*
Robert E. Murphy (State Bar No. 103936)
*robert.murphy@manningkass.com*
David Fleck (State Bar No. 192912)
*David.Fleck@manningkass.com*
Gigi Gutierrez (State Bar No. 235138)
*Gigi.Gutierrez@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF
COVINA, VANESSA CARDOZA,
DAVID MEADOWS, and BILLY SUN



**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| E.V. and X.V., minors by and through their guardian ad litem, Karla Juarez; D.V., a minor, by and through his guardian ad litem, Elias Valdivia; individually and as successors-in-interest to Daniel Luis Valdivia, deceased; JESSICA VALDIVIA; LUIS VALDIVIA JR., individually;,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF COVINA; VANESSA CARDOZA; DAVID MEADOWS; BILLY SUN; DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:23-cv-01562-CBM-ACCV<br>District Judge: Consuelo B. Marshall<br>Magistrate Judge: Angela C. C. Viramontes<br><br>**DECLARATION OF SAFI HENSON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ORDER CERTIFYING DEFENDANTS' APPEAL AS FRIVOLOUS AND RETAIN JURISDICTION**<br><br>*Filed concurrently with Opposition*<br><br>Filed Date:       08/04/23 |

I, Safi Henson, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am an Associate with Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for Defendants, CITY OF COVINA, VANESSA CARDOZA, DAVID MEADOWS, and BILLY SUN.  I have personal knowledge of the facts set forth herein, and if called

1  as a witness, I could and would competently testify thereto.

2       2.    Attached hereto as **Exhibit A** is a true and correct copy of Defendants'

3  Ninth Circuit Court of Appeals Mediation Questionnaire dated November 17, 2025.

4       3.    On January 2, 2026, responsive to Plaintiffs' New Years' Eve email that

5  they planned to move ex parte to dismiss the appeal, counsels met by conference call

6  to discuss the issues in the case. In that meeting, I conveyed to defense counsel that

7  we had ample grounds based on the legal framework utilized by this Court. I also

8  responded to the theory of "delay" set forth by emphasizing that the Appellate

9  Opening Brief ("AOB") was nearly done and would be filed in just a few weeks with

10 briefing finished by March 2026. I did not seem to convince plaintiffs' counsel with

11 this reasoning. Attached hereto as **Exhibit B** is a true and accurate copy of the email

12 I sent to Plaintiffs' Counsel memorializing our meeting.

13      4.    On January 22, 2026, Defendants filed their AOB with the Ninth Circuit.

14 Attached hereto as **Exhibit C** is a true and accurate copy of Defendants' AOB.

15

16      I declare under penalty of perjury under the laws of the United States of

17 America that the foregoing is true and correct.

18

19      Executed on this 3rd day of February, 2026, at San Francisco, California.

20

21                                    /s/ Safi Henson
                                      Safi Henson
22

23

24

25

26

27

28

DECLARATION OF SAFI HENSON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ORDER CERTIFYING DEFENDANTS' APPEAL AS FRIVOLOUS

MANNING | KASS

# EXHIBIT A

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 7. Mediation Questionnaire**

*Instructions for this form:* https://www.ca9.uscourts.gov/forms/form07instructions.pdf

**9th Cir. Case Number(s)** | 25-7151

**Case Name** | E.V., et al. v. City of Covina, et al

**Counsel submitting this form** | Safi Henson

**Represented party/parties** | Defendants and Appellants City of Covina, Vanessa Cardoza, David Meadows, and Billy Sun

*Briefly describe the dispute that gave rise to this lawsuit.*

On April 9, 2022, Country Liquor employee Jonathan Logan was approached by decedent Valdivia. Valdivia threatened Mr. Logan, including telling him he "kill [s] n[****]s like you, all day" and showing Mr. Logan a gun and threatening to shoot him. At least three other witnesses observed Valdivia and called 911 describing that Valdivia was flashing his gun, scaring people, arguing with people, and overall scaring people.

Officers were dispatched and informed that Valdivia had a black handgun, was actively disturbing the peace, and was the subject of three calls. Defendants Cardoza, Meadows, and Sun were among the officers that responded. Cardoza arrived on the scene from the north and assisted while Sun and Meadows arrived after her from the West and spoke with Valdivia. Sun and Meadows yelled to Valdivia to show his hands, put his hands up, and not move; they also yelled that they were police. Valdivia eventually puts his hands up and Meadows told him to get on the ground and not reach for anything. The firearm protruding from Valdivia's waistband was visible to officers. Valdivia did lower to the ground but reached for his waistband, pulled out the gun, and pointed it in the direction of Meadows and Sun despite their instructions to "not reach for it." All three Defendant officers saw this and fired their guns. Valdivia was fatally wounded.

Immediately after firing shots, officers requested medical aid, secured the gun, checked for a pulse, and initiating CPR within 2 minutes of firing gunshots

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 7**                                                                 *Rev. 09/01/22*

1

*Briefly describe the result below and the main issues on appeal.*

The District Court denied Defendant-Appellant's Motion for Summary Judgment. By applying an improper legal standard to Plaintiffs' excessive force and due process claims, the District Court erroneously framed the right at issue for purposes of analyzing qualified immunity. The issues on appeal are that Defendants Officers Cardoza, Meadows, and Sun are entitled to qualified immunity.

This issue is eligible for an immediate interlocutory appeal. Hopkins v. Bonvicino, 573 F.3d 752 (9th Cir. 2009)

*Describe any proceedings remaining below or any related proceedings in other tribunals.*

The District Court's summary judgment order was issued on October 14, 2025. This case is set for Pretrial Conference in the District Court on December 16, 2025 and the Trial on January 20, 2026. Defendants plan to move the District Court to stay the case pending the result of appeal. There are no other related proceedings in other tribunals.

**Signature** s/Safi Henson    **Date** November 17, 2025

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 7**                                                                 *Rev. 09/01/22*

2

# EXHIBIT B

## Safi Henson

| | |
|---|---|
| **From:** | Safi Henson |
| **Sent:** | Friday, January 2, 2026 10:44 AM |
| **To:** | Stefany Anderson; Susannah Conn; Marcel Sincich; Missy OLinn; dalekgalipo@yahoo.com |
| **Cc:** | David Fleck; Robert E. Murphy; Gigi Gutierrez; David R. Ruiz; Athena N. Reddersen; Delia Flores; Adriana Alvarado; Mireya Linares |
| **Subject:** | RE: Valdivia (PC) meet and confer re ex parte |

Hi Marcel,

Thank you for speaking with Susannah and I this morning to discuss Plaintiffs' ex parte motion seeking for the trial court to deem Defendants' appeal as frivolous. We understand that your motion is primarily based on your position that there exists an unappealable disputed issue of fact. Defendants' position remains that the issue, imbedded in QI, is immediately appealable with legal basis to support it and therefore does not lack merit. Defendants maintain that the dispute of fact is secondary to the legal framework issue and is also appealable as contradicted by the evidence. I also inquired as to the jurisdiction of the trial court now that the matter is on appeal and will look into that issue prior to your anticipated motion.

Unfortunately, we could not reach an agreement at this juncture.

If you have any questions or follow up, please reach out to us.

**Safi Henson**
Associate



101 Montgomery Street, Suite 2550
San Francisco, CA 94104
Main: (415) 217-6990 Ext.: 4624
Safi.Henson@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco

Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The information transmitted in or with this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

**From:** Stefany Anderson <sanderson@galipolaw.com>
**Sent:** Friday, January 2, 2026 8:45 AM
**To:** Susannah Conn <Susannah.Conn@manningkass.com>; Marcel Sincich <msincich@galipolaw.com>; Safi Henson <Safi.Henson@manningkass.com>; Missy OLinn <Missy.OLinn@manningkass.com>; dalekgalipo@yahoo.com
**Cc:** David Fleck <David.Fleck@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Gigi

Gutierrez <Gigi.Gutierrez@manningkass.com>; David R. Ruiz <David.Ruiz@manningkass.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Adriana Alvarado <Adriana.Alvarado@manningkass.com>; Mireya Linares <Mireya.Linares@manningkass.com>
**Subject:** RE: Valdivia (PC) meet and confer re ex parte

Good morning, please see below the conference call details for today at 9:30 a.m.

**Conference-Call Details**
Meeting Date: January 2, 2026
Meeting Time: 9:30 A.M.
Phone number: (681)999-0250
Access Code: 503086#

To join the call, dial the conference phone number (681)999-0250 and enter the access code 503086# when prompted. Upon receipt, please confirm receipt of this email. If you have any questions or issues connecting to the conference call, please contact me at (818) 347-3333.

Thank you.

Best Regards,

**Stefany Anderson, Litigation Assistant** | **The Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office: +1.818.347.3333 | Fax: +1.818.347.4118  sanderson@galipolaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED INFORMATION. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

**From:** Susannah Conn <Susannah.Conn@manningkass.com>
**Sent:** Friday, January 2, 2026 8:04 AM
**To:** Marcel Sincich <msincich@galipolaw.com>; Safi Henson <Safi.Henson@manningkass.com>; Missy OLinn <Missy.OLinn@manningkass.com>; dalekgalipo@yahoo.com; Stefany Anderson <sanderson@galipolaw.com>
**Cc:** David Fleck <David.Fleck@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Gigi Gutierrez <Gigi.Gutierrez@manningkass.com>; David R. Ruiz <David.Ruiz@manningkass.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores <Delia.Flores@manningkass.com>; Adriana Alvarado <Adriana.Alvarado@manningkass.com>; Mireya Linares <Mireya.Linares@manningkass.com>
**Subject:** RE: Valdivia (PC) meet and confer re ex parte

Marcel,

Please circulate a zoom link or a conference call line for this meet and confer.

Thank you.

**Susannah Conn**
Partner



225 Broadway, Suite 2000
San Diego, CA 92101
Main: (619) 515-0269 | Ext.: 4329

Susannah.Conn@manningkass.com | manningkass.com

Dallas | Los Angeles | New York | Orange County | Phoenix | San Diego | San Francisco

Note: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521 and is legally privileged. The
information transmitted in or with this message is intended only for the person or entity to which it is addressed and may
contain confidential and/or privileged material and is protected from disclosure. If the reader of this message is not the intended
recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified
that any retransmission, dissemination, distribution, copying or other use of, or the taking of any action in reliance upon, this
communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying
to the message and deleting the material from your computer. Thank you. Manning & Kass, Ellrod, Ramirez, Trester, LLP

**From:** Marcel Sincich <msincich@galipolaw.com>
**Sent:** Friday, January 2, 2026 7:34 AM
**To:** Safi Henson <Safi.Henson@manningkass.com>; Missy OLinn <Missy.OLinn@manningkass.com>;
dalekgalipo@yahoo.com; Stefany Anderson <sanderson@galipolaw.com>
**Cc:** David Fleck <David.Fleck@manningkass.com>; Robert E. Murphy <Robert.Murphy@manningkass.com>; Gigi
Gutierrez <Gigi.Gutierrez@manningkass.com>; David R. Ruiz <David.Ruiz@manningkass.com>; Susannah Conn
<Susannah.Conn@manningkass.com>; Athena N. Reddersen <Athena.Reddersen@manningkass.com>; Delia Flores
<Delia.Flores@manningkass.com>; Adriana Alvarado <Adriana.Alvarado@manningkass.com>; Mireya Linares
<Mireya.Linares@manningkass.com>
**Subject:** Re: Valdivia (PC) meet and confer re ex parte

Hi Safi,

I will call you at 9:30 am this morning. Thank you for providing me with your position thus far.

Generally, I refer you to all the authority cited by our trial court in properly denying summary
judgment. Nevertheless, see *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Graham v. Connor*, 490 U.S.
386, 397 (1989); *Mitchell v. Forsyth*, 472 U.S. 511, 528, 530 (1985); *Johnson v. Jones*, 515 U.S. 304,
307 (1995); *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009); *Estate of Lopez v. Gelhaus*, 871
F.3d 998, 1003, 1010-11, 1023) (9th Cir. 2017); *Zion v. Cty. of Orange*, 874 F.3d 1072, 1076 (9th Cir.
2017); and *Maropulos v. Cnty. of Los Angeles*, 560 F.3d 974, 975 (9th Cir. 2009).

Very Respectfully,

**Marcel F. Sincich, Esq.**
**Law Offices of Dale K. Galipo** | 21800 Burbank Blvd., Suite 310, Woodland Hills, CA 91367 | Office:
+1.818.347.3333 | Fax: +1.818.347.4118 | Email: msincich@galipolaw.com

THIS EMAIL MESSAGE IS FOR THE SOLE USE OF THE INTENDED RECIPIENT AND MAY CONTAIN CONFIDENTIAL, AND PRIVILEGED
INFORMATION. ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT,
PLEASE CONTACT THE SENDER BY REPLY EMAIL AND DESTROY ALL COPIES OF THE ORIGINAL MESSAGE.

# EXHIBIT C

No. 25-7151

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

E.V AND X.V., MINORS BY AND THROUGH THEIR GUARDIAN *AD LITEM*,
KARLA JUAREZ; D.V., A MINOR, BY AND THROUGH HIS GUARDIAN *AD
LITEM*, ELIAS VALDIVIA; INDIVIDUALLY AND AS SUCCESSORS-IN-
INTEREST TO DANIEL LUIS VALDIVIA, DECEASED; JESSICA
VALDIVIA; LUIS VALDIVIA JR., INDIVIDUALLY,

*Plaintiffs-Appellees*,

v.

CITY OF COVINA; VANESSA CARDOZA, DAVID MEADOWS;
BILLY SUN; DOES 1 – 10 INCLUSIVE,

*Defendants-Appellants*,

On Appeal from the United States District Court
for the Central District of California
Case No. 5:23-cv-1562-CBM-SHK
Honorable Consuelo B. Marhsall

## APPELLANTS' OPENING BRIEF

Mildred K. O'Linn (SBN 159055)
*missy.olinn@manningkass.com*
Robert E. Murphy (SBN 103936)
*robert.murphy@manningkass.com*
David Fleck (SBN 192912)
*david.fleck@manningkass.com*
801 S. Figueroa St, 15th Floor
Los Angeles, CA 90017
Phone: (213) 624-6900

\*Safi U. Henson (SBN 342115)
101 Montgomery Street, Suite 2550
San Francisco, CA 94104
Phone: (415) 217-6990

Susannah R. Conn (SBN 205085)
*susannah.conn@manningkass.com*
225 Broadway, Suite 2000
San Diego, CA 92101
Phone: (619) 515-0269

*Attorneys for Defendants-Appellants CITY OF COVINA, VANESSA CARDOZA,
DAVID MEADOWS, and BILLY SUN*

## DISCLOSURE STATEMENT

Appellant City of Covina is a public entity, and Appellants Vanessa Cardoza, David Meadows, and Billy Sun are public employees (police officers).

DATED: January 22, 2026          Respectfully submitted,

**MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP**

Safi U. Henson (342115)

By: _____*s/ Safi U. Henson*_____

Safi Henson (SBN 342115)
*safi.henson@manningkass.com*
Mildred K. O'Linn (SBN 159055)
*missy.olinn@manningkass.com*
Robert E. Murphy (SBN 103936)
*robert.murphy@manningkass.com*
David Fleck (SBN 192912)
*david.fleck@manningkass.com*
Susannah R. Conn (SBN 205085)
*susannah.conn@manningkass.com*

Attorneys for Defendants-Appellants *CITY OF COVINA, VANESSA CARDOZA, DAVID MEADOWS, and BILLY SUN*

## TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ...................................................................... i

TABLE OF AUTHORITIES ...................................................................... iv

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ............................................................2

ISSUES PRESENTED...............................................................................3

STATEMENT OF THE CASE ...................................................................3

SUMMARY OF THE ARGUMENT ..........................................................8

STANDARD OF REVIEW .......................................................................9

ARGUMENT ..........................................................................................10

    I.    QUALIFIED IMMUNITY ANALYSIS IS APPLICABLE AND NECESSARY AT THE SUMMARY JUDGMENT STAGE............10

    II.    THE DISTRICT COURT ERRED BY APPLYING A CONDEMNED LEGAL FRAMEWORK TO THE FIRST PRONG OF ITS QUALIFIED IMMUNITY ANALYSES AND FOUND A DISPUTED FACT THAT IS CONTRADICTED BY THE RECORD ..................................................................................13

        A.    The District Court Applied Piecemeal Moment-In-Time Analyses Rather Than Totality-Of-The-Circumstances Analyses ..................................................................13

        B.    The District Court Erroneously Adopted Plaintiffs' Police-Practice Expert's Conclusions In Its Qualified Immunity Analysis..................................................................16

        C.    The District Court's Factual Interpretation Is Contradicted By The Record ..................................................................18

III.    THE DISTRICT COURT ERRED BY USING AN IMPROPER AND INCOMPLETE LEGAL ANALYSIS WHEN DECIDING THE SECOND PRONG OF QUALIFIED IMMUNITY ............................20

    A.    The District Court Merged the First and Second Prong Of Qualified Immunity And Defined The Right At Issue Generally ....................................................................................................21

    B.    The District Court Did Not Identify Precedent To Support A Clearly Established Right To Put Officers On Notice..............23

IV.    OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' EXCESSIVE FORCE AND SUBSTANTIVE DUE PROCESS CLAIMS ...........................................................................29

    A.    Officers Are Entitled To Qualified Immunity For Plaintiffs' Excessive Force Claim............................................................29

        1.    Officers' Use Of Force Was Reasonable Under The Totality Of The Circumstances.......................................30

        2.    There is No Clearly Established Law Addressing The Facts Of This Case Which Puts Officers' Conduct Beyond Debate.................................................................32

    B.    Officers Are Entitled To Qualified Immunity For Plaintiffs' Substantive Due Process Claim ...............................................33

        1.    Officers' Use Of Force Under The Totality Of The Circumstances Did Not Shock The Conscience .............33

        2.    There is No Clearly Established Law Addressing The Facts Of This Case Which Puts Officers' Conduct Beyond Debate.................................................................36

CONCLUSION.......................................................................................37

# TABLE OF AUTHORITIES

*Cases*

*Anderson v. Creighton*
    483 U.S. 635 (1987)....................................................................................... 10, 29

*Anderson v. Russell*,
    247 F.3d 125 (4th Cir. 2001) .................................................................................30

*Ashcroft v. al–Kidd*,
    563 U.S. 731 (2011)...............................................................................................32

*Atienza v. Hall*,
    2021 WL 3409254 (N.D. Cal. Aug. 4, 2021) .............................................. 35, 37

*Barnes v. Felix*,
    605 U.S. 73 (2025)............................................................................ 14, 15, 22, 31

*Behrens v. Pelletier*,
    516 U.S. 299 (1996)..................................................................................................2

*Bishop v. City of Buckley*,
    2024 WL 1701949, (W.D. Wash. Apr. 19, 2024) ........................................ 35, 36

*Brooks v. Clark Cnty.*,
    828 F.3d 910 (9th Cir. 2016) .................................................................................29

*Brosseau v. Haugen*,
    543 U.S. 194 (2004)...............................................................................................11

*City & Cnty. of San Francisco, Calif. v. Sheehan*,
    575 U.S. 600 (2015)................................................................................ 16, 17, 18

*Curnow By & Through Curnow v. Ridgecrest Police*,
    952 F.2d 321 (9th Cir. 1991) .................................................................................24

*D.C. v. Wesby*,
    583 U.S. 48 (2018)........................................................................................ 22, 26

*Est. of Lopez by & through Lopez v. Gelhaus*,
    871 F.3d 998 (9th Cir. 2017) ......................................................................... 26, 27

*Estate of Strickland v. Nevada Cnty.*,
   69 F.4th 614 (9th Cir. 2023) ........................................................................... 31, 32

*Foster v. City of Indio*,
   908 F.3d 1204, (9th Cir. 2018) ............................................................................32

*George v. Morris*,
   736 F.3d 829 (9th Cir. 2013*)* ...............................................................................30

*Graham v. Connor*,
   490 U.S. 386 (1989)........................................................................ 10, 14, 22, 30

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)..............................................................................................11

*Hernandez by & through Hernandez v. City of Los Angeles*,
   139 F.4th 790 (9th Cir. 2025) ....................................................................... 16, 23

*Hope v. Pelzer,*
   536 U.S. 730 (2002)...................................................................................... 12, 20

*Hunter v. Bryant*
   502 U.S. 224 (1991)..............................................................................................11

*Hyer v. City & Cnty. of Honolulu*,
   118 F.4th 1044 (9th Cir. 2024) ............................................................................17

*Johnson v. Jones*,
   515 U.S. 304 (1995)..............................................................................................21

*Kisela v. Hughes*,
   584 U.S. 100 (2018)..............................................................................................32

*Long v. City & Cnty. of Honolulu*,
   511 F.3d 901 (9th Cir. 2007) ......................................................................... 30, 33

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985)................................................................................................8

*Morales v. Fry*,
   873 F.3d 817 (9th Cir. 2017) ...............................................................................11

*Mullenix v. Luna*,
 577 U.S. 7 (2015)..................................................................................................32

*Napouk v. Las Vegas Metro. Police Dep't*,
 123 F.4th 906 (9th Cir. 2024) ....................................................................... 14, 23

*Nicholson v. City of Los Angeles*,
 935 F.3d 685 (9th Cir. 2019) ........................................................... 12, 20, 28, 36

*Ochoa v. City of Mesa*,
 26 F.4th 1050 (9th Cir. 2022) ...................................................................... 33, 34

*Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856 (9th Cir. 2011) ...................................9

*Porter v. Osborn*,
 546 F.3d 1131 (9th Cir. 2008) ..............................................................................34

*Rosenbaum v. City of San Jose*,
 107 F.4th 919 (9th Cir. 2024) ...............................................................................22

*S.B. v. County of San Diego*,
 864 F.3d 1010 (9th Cir. 2017) ..............................................................................10

*Sabbe v. Wash. Cnty. Bd. of Comm'rs*,
 84 F.4th 807 (9th Cir. 2023) .................................................................................33

*Saucier v. Katz*,
 533 U.S. 194 (2001).................................................................................... 11, 17

*Scott v. Harris*,
 550 U.S. 372 (2007)...............................................................................................19

*Scott v. Henrich*,
 39 F.3d 912 (9th Cir. 1992) ..................................................................................33

*Scott v. Smith*,
 109 F.4th 1215 (9th Cir. 2024) ...................................................................... 34, 36

*See Reynolds v. County of San Diego*,
 84 F.3d 1162 (9th Cir. 1996) ................................................................................16

*Shafer v. County of Santa Barbara*, 868 F.3d 1110 (9th Cir. 2017).........................32

*Singh v. City of Phoenix*,
   124 F.4th 746 (9th Cir. 2024) .................................................................................21

*Smith v. Agdeppa*,
   81 F.4th 994 (9th Cir. 2023) ..................................................................... 9, 14, 21

*Tennessee v. Garner,*
   471 U.S. 1 (1985).................................................................................................12

*Tolan v. Cotton*,
   572 U.S. 650 (2014)............................................................................... 12, 18, 22

*Toussaint v. City of El Monte*,
   No. 2:20-CV-06669-AB-KK, 2022 WL 2125140 (C.D. Cal. Jan. 27, 2022)25, 26

*U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge,
LLC*, 583 U.S. 387 (2018).........................................................................................9

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)............................... 10, 20, 24, 35

*Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024) ................................2

*Zion v. Cnty. of Orange*,
   874 F.3d 1072 (9th Cir. 2017) ...................................................................... 25, 35

### **Statutes**

28 U.S.C. § 1291......................................................................................................2

28 U.S.C. § 1331......................................................................................................2

28 U.S.C. § 1367......................................................................................................2

42 U.S.C. § 1983............................................................................................... 3, 7, 8

Cal. Civ. Code § 52.1................................................................................................8

### **Rules**

Fed. R. App. P. (4)(a)(1)(A) ........................................................................................8

**INTRODUCTION**

The facts of this § 1983 case epitomize the when and why of qualified immunity. City of Covina police officers responded to a series of three 9-1-1 calls reporting an armed suspect acting erratically and threatening members of the public. Arriving at the scene, the officers immediately confronted the suspect, later identified as decedent Luis Valdivia ("Valdivia"). The officers ordered Valdivia to get on the ground and keep his hands visible. Instead, Valdivia reached into his waistband, where he had stashed his gun, and brought the gun forward and towards the officers. The officers opened fire.

This is exactly the kind of in-the-moment decision-making officers should be free to exercise without worry that they will become embroiled in years-long litigation as a result. Decades of precedent has developed to foster and protect law enforcement's exercise of judgment in tense, unpredictable and escalating circumstances – such as were faced here – by affording them immunity for their tactical choices in all but the most extreme outlier cases.

Flouting this well-established precedent and relying on a hindsight-driven analysis that has repeatedly been repudiated by reviewing courts, the district court concluded that the officers were not entitled to qualified immunity as a matter of law. This was clear error. Compounding the error was the district court's dereliction of its duty to fully analyze the totality of the circumstances as a

1

reasonable officer at the scene would have perceived them. Absent these errors, the undisputed evidence unquestionably supports the officers' entitlement to qualified immunity.

Appellants Vanessa Cardoza, David Meadows, and Billy Sun ("Officers"), and City of Covina ("City")[1] (collectively "Appellants") bring this appeal to correct the district court's egregious departure from precedent.

## JURISDICTIONAL STATEMENT

The District Court has original jurisdiction over the federal claims and supplemental jurisdiction over the state claims in this action under 28 U.S.C. §§ 1331, 1367. Appellants now appeal on the grounds that the District Court erred in denying qualified immunity, which is an immediately appealable decision under the collateral order doctrine per 28 U.S.C. § 1291. *See Behrens v. Pelletier*, 516 U.S. 299, 306 (1996); *See also Williams v. City of Sparks*, 112 F.4th 635, 642 (9th Cir. 2024).

---

[1]Plaintiffs voluntarily dismissed their *Monell* Claims. [4-ER-00634-635] Without a predicate constitutional violation, there can be no liability on part of city. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (municipal liability claims "require [Plaintiffs] to show an underlying constitutional violation"). In the event that Plaintiffs' seek to renew their *Monell* claims, the City will participate in this Appeal.

## ISSUES PRESENTED

Whether the District Court erred in denying Officers qualified immunity on Plaintiffs' Fourth Amendment excessive force and Fourteenth Amendment substantive due process claims pursuant to 42 U.S.C. § 1983.

This issue takes shape in three parts.

I.      Whether The District Court Erred By Applying An Erroneous, Hindsight-Driven Legal Framework To The First Prong Of Qualified Immunity And Finding A Disputed Fact As A Result;

II.     Whether The District Court Erred By Performing An Improper and Incomplete Legal Analysis To The Second Prong Of Qualified Immunity;

III.    Whether Officers Are Entitled To Qualified Immunity On Plaintiffs' Excessive Force And Substantive Due Process Claims.

## STATEMENT OF THE CASE

### I.      FACTUAL BACKGROUND

#### A.      <u>Valdivia Scares Members of The Public Who Call The Police</u>

On April 9, 2022, Luis Valdivia ("Valdivia") approached nonparty Jonathan Logan outside of Country Liquor on East Arrow Highway in the City of Covina.[2-ER-00094-108]. Valdivia informed Logan that he was in a gang and "kill[s] n[****]s like [Logan] all day," showing Logan what appeared to be a real gun and threatening to shoot Logan. [2-ER-00094-108] Logan was not the only member of

the public to be approached, threatened, or scared by Valdivia that night. At least three other people witnessed Valdivia brandishing his gun and threatening them and called 911 to report the incident. [2-ER-00110-122]. The calls told the story that Valdivia was brandishing a gun and people were running away from him. [2-ER-00118-119].

### B.    Dispatch Notified Officers Of Valdivia's Disturbance

It was 10:12 p.m. when dispatch broadcasted to Officers Sun, Meadows, and Cardoza both Valdivia's description and that Valdivia was at a liquor store "holding a can of beer and a black handgun." [2-ER-00123-131] A few minutes later, dispatch told Officers that Valdivia was actively disturbing the peace and was the subject of already three other calls. [2-ER-00123-127]

### C.    Officers Engage Valdivia

Sun, Meadows, and Cardoza arrived at the scene at or around 10:16:30 p.m. [2-ER-00127-128]. Sun and Meadows approached the liquor store where Valdivia was located, seeing him later, while Cardoza arrived and observed Valdivia from the north. [2-ER-00127-128]. Officers had only twenty seconds before the interaction was over. Once Officers sighted Valdivia, the situation unfolded rapidly.

It was 10:16:54; Immediately upon seeing Valdivia, Sun yelled to him: "Hey, let me see your hands! Let me see your hands!" and when that failed to get

Valdivia's attention, Sun continued: "Put your hands up! Don't fucking move!" [2-ER-00128-130] Meadows told Valdivia: "Police! Put your hands up! Put your hands up!" [2-ER-00128-130] Valdivia moved the beer in his right hand over to his left, using his now free right hand to reach for his waistband. [2-ER-00130-131] Seeing this, Sun yelled: "Hey, get your fucking hands out of your pocket, dude!" [2-ER-00131] Valdivia said: "Whatever!" but raised his hands and Meadows told him to "Get on the ground, now!" and "Don't reach for anything!" [2-ER-00131-132] At the ground, Valdivia propped himself on his left elbow and reached for his waistband; Sun and Meadows, in fear for their lives and believing Valdivia was going to produce and shoot, desperately yelled to Valdivia, "Don't reach for it!" [2-ER-00132-134]

It was 10:17:07 p.m. Valdivia ignored Officers; he reached to his waist, he retrieved the gun, and he raised it up and forward in the direction of Sun and Meadows. [2-ER-00135-139] Officers opened fire, ceasing fire within one to two seconds. [2-ER-00135-139] All Officers' shots were fired between 10:17:08 p.m. and 10:17:11 p.m. – i.e., less than 20 seconds after they first engaged Valdivia. [2-ER-00137] Valdivia's gun dropped in front of him. [2-ER-00137]

D.    The Court's Summary Judgment Order

For Plaintiffs' excessive force claim, the district court held "There is evidence in the record creating a genuine issue of disputed fact as to whether the

Decedent pointed his gun at officers, and therefore the Court cannot determine at the summary judgment stage whether Decedent posed an immediate threat to officers and the Defendant Officers' use of deadly force was objectively reasonable." [1-ER-00005-6]. For Plaintiffs' substantive due process claim, the district court further held that, "Resolving facts and inferences in favor of Plaintiffs who are the non-moving party as required here, if Decedent was not pointing his gun at officers and did not pose an immediate threat to officers when shots were fired at Decedent, a reasonable jury could find the Defendants Officers' use of deadly force against Decedent shocks the conscience and that officers used deadly force against Decedent with a purpose to harm without regard to legitimate law enforcement objectives, which precludes summary judgment in favor of Defendants on Plaintiffs' Fourteenth Amendment due process claim." [1-ER-00010]. Upon this alleged disputed fact, the district court held that it could not decide the question of reasonableness or whether Officers shocked the conscience. [1-ER-00005-6][1-ER-00010]

The district court failed to point to clearly-established authority that would place all reasonable officers on notice that the actions at issue were violations of constitutional rights. Rather, the district court stated that "genuine issue of material fact" remained as to whether or not decedent successfully pointed his gun at Officers before shots were fired, thereby calling his threat level—and therefore

qualified immunity—into question under either prong. [1-ER-00006-10]
Specifically, the court held that "the law is clearly established that use of deadly
force against an individual who is not threatening to officers and not pointing his
gun at officers is not objectively reasonable" and denied qualified immunity for
excessive force under the second prong. [1-ER-00008]. The court stated "[T]hat
officers fired shots at Decedent when he did not have gun in his hands, did not
point the gun at officers, and did not pose a threat to officers, the law was clearly
established that officers acted with deliberate indifference through immediate use
of deadly force against Decedent who was not engaged in any threatening
behavior" and denied qualified immunity for substantive due process under the
second prong. [1-ER-00010].

## II.   PROCEDURAL HISTORY

On August 4, 2023, Plaintiffs (Valdivia's minor children and parents) sued
Appellants alleging nine causes of action pursuant to 42 U.S.C. § 1983 and state
tort law. [5-ER-01061] On June 3, 2025, following Plaintiffs' voluntary dismissal
of their first, third, fifth, and sixth causes of action without prejudice, Appellants
moved for summary judgment on the remaining causes of action: (2) Fourth
Amendment—Excessive Force, 42 U.S.C. § 1983 ("excessive force claim"); (4)
Substantive Due Process, 42 U.S.C. § 1983 ("substantive due process claim"); (7)

Battery; (8) Negligence; and (9) Violation of Cal. Civ. Code § 52.1. [4-ER-00640-674] [4-ER-00634-635]

The district court denied Defendants' motion on October 14, 2025. [1-ER-00002-12]. This timely appeal follows. Fed. R. App. P. (4)(a)(1)(A).

## SUMMARY OF THE ARGUMENT

The district court initiated, maintained, and ended its qualified immunity analysis making use of a legal framework that runs afoul of precedent. First, the district court erroneously employed a condemned framework when assessing Officers' use of force during the rapidly-evolving confrontation with an armed suspect in this matter. *Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985). Because the entire qualified immunity analysis, including its denial, was premised on this erroneous framework, this Court should reverse the denial in full.

Using this improper framework, the district court came to find a material factual dispute which colored and impacted all of its final determinations. So finding, the district court used this dispute as a launch-point to forgo its own determinations of legal questions of threat and objective reasonability and chose to adopt only plaintiff's rendering of facts instead. This is not the proper way to approach the question of qualified immunity. The district court's finding of a material dispute of fact is derivative of and dependent upon its use of the aforementioned incorrect legal standard, without which the so-called "dispute"

8

ceases to exist. Further, the district court's finding of a dispute is incongruent with the incontrovertible video footage.

Building on these departures from precedent, the district court further erred in finding that Officers were not entitled to qualified immunity. Even viewing the facts in a light most favorable to Appellees, there is no clearly established precedent that would have put Officers on notice that their use of force was unreasonable, let alone shocking to the conscience. Therefore they are entitled to qualified immunity on both the excessive force and substantive due process claims.

## STANDARD OF REVIEW

Purely legal questions decided on summary judgment are subject to review. *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 393 (2018). The Court determines independently whether the substantive law was correctly applied. *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011). Factual disputes do not preclude appellate review and this Court retains "jurisdiction to review an issue of law determining entitlement to qualified immunity—even if the district court's summary judgment ruling also contains an evidence-sufficiency determination." *Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023).

This Court also reviews whether the record reveals a genuine dispute of fact under a de novo standard. *Id*. Although the Court views the facts in the light most

favorable to the plaintiffs, it need not consider allegations and purported facts that are unsupported by the record. *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Courts are reminded that what matters is the information actually known to the officers at the time they acted and the standard is a totality of the circumstances. *See Graham v. Connor*, 490 U.S. 386 (1989); *See also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (analysis is based on "the information the searching officers possessed" at the time of the incident); *S.B. v. County of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017) (qualified immunity analysis should be conducted "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight…").

## ARGUMENT

## I. QUALIFIED IMMUNITY ANALYSIS IS APPLICABLE AND NECESSARY AT THE SUMMARY JUDGMENT STAGE

### A. Qualified Immunity Must Be Resolved As Early As Possible

Qualified immunity is an important mechanism courts use to strike a balance between the need to hold government officials liable for abuses of their offices while preventing the risk that damage suits and litigation harassment will have on public officials' ability to effectively discharge their duty. *Anderson*, 483 U.S. at 638. Qualified immunity is grounded in courts' recognition that subjecting government officials to litigation and trial based on their good faith decisions would result in "distraction of officials from their governmental duties inhibition of

discretionary action, and deterrence of able people from public services." *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982). Accordingly, the Supreme Court has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This Court, too, has recognized that qualified immunity should be decided on summary judgment when possible. *See Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017) ("[Q]ualified immunity was conceived as a summary judgment vehicle, and the trend of the Court's qualified immunity jurisprudence has been toward resolving qualified immunity as a legal issue before trial whenever possible.")

## B.  Two-Pronged Qualified Immunity Analysis

When determining whether an officer is entitled to qualified immunity, courts must focus on whether the officer had fair notice that their conduct was unlawful and the reasonableness of an officer's actions is judged against the backdrop of the law at the time of the conduct. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). If the law did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability. *Id*.

To resolve these questions at summary judgment, courts engage in a two-pronged inquiry. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The first prong asks whether the facts show the officer's conduct violated a [federal] right. *Id*. In the context of excessive force violative of the Fourth Amendment, this inquiry requires

11

a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8 (1985). In the context of substantive due process violations pursuant to the Fourteenth Amendment, courts employ a "shocks the conscience" standard wherein a violation will be deemed to have occurred if officers acted with deliberate indifference. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692–93 (9th Cir. 2019)

The second prong of qualified immunity asks whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). The "salient question" is whether the state of the law at the time of an incident provided fair warning to the defendants that the alleged conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Law enforcement officers' immunity is presumed; to overcome the presumption, plaintiffs must identify authority that rendered the contours of the right at issue "sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *Nicholson*, 935 F.3d at 695.

Courts have discretion as to the order in which the two prongs are addressed.

12

II.   **THE DISTRICT COURT ERRED BY APPLYING A CONDEMNED LEGAL FRAMEWORK TO THE FIRST PRONG OF ITS QUALIFIED IMMUNITY ANALYSES AND FOUND A DISPUTED FACT THAT IS CONTRADICTED BY THE RECORD**

A.   **The District Court Applied Piecemeal Moment-In-Time Analyses Rather Than Totality-Of-The-Circumstances Analyses**

The district court chose to address the first prong of the qualified immunity analysis first for both the excessive force and substantive due process claims. [1-ER-00004-7][1-ER-00008-10]

The district court began its discussion by analyzing whether Officers' actions were reasonable. [1-ER-00004-7] The district court did **not** find Officers' use of force was excessive unconstitutional per se but found it could not determine whether Officers violation the constitution as a matter of law because of a purported dispute of fact. [1-ER-00004-7] The district court came to this conclusion by contrasting "Defendants' version of the incident" with Plaintiffs' expert's "photographic evidence of still shots from officers' body cam footage showing that shots were fired at Decedent by officers after Decedent's gun was already on the floor in front of Decedent. (Plaintiffs' Ex. G.)" [1-ER-00006] The district court used this same analysis, and the conclusions borne out of it, in its first prong analysis for the substantive due process claim. [1-ER-00008-10]

This frame-by-frame carving up of the incident is the type of piecemeal analysis that prior courts have condemned because it necessarily applies 20/20

vision to the circumstances Officers faced from the "peace of a judge's chambers." *Barnes v. Felix*, 605 U.S. 73, 89 (2025). Since the seminal *Graham v. Connor* case, courts have emphasized that an officer's use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" with allowances for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 915 (9th Cir. 2024); *Graham*, 490 U.S. at 396; *See also Kisela v. Hughes*, 584 U.S. 100, 103 (2018). This applies equally to courts' analyses of substantive due process violations under the first prong of qualified immunity. *Wilkinson*, 610 F.3d at 554 (Finding plaintiffs did not establish a substantive due process claim where officers were required to make split-second decisions in a rapidly evolving situation). Courts "do not"—and must not—"second-guess officers' real-time decisions from the standpoint of perfect hindsight." *Smith*, 81 F.4th at 1002.

Here, rather than analyze Officers' use of force in the holistic and comprehensive manner laid out by courts prior, the district court focused solely on the micro-fact of whether or not plaintiff successfully aimed his gun at Officers in that split second. [1-ER-00005-6] [1-ER-00010]. Based on this myopic analysis, and taking only Plaintiffs' expert's version of events into account, the district court concluded the evidence could support a finding that Valdivia posed no threat to

14

officers. [1-ER-00006-10]. This is not the proper method of analysis. Indeed, the
Supreme Court recently rejected the district court's approach, stating "a court
cannot narrow the totality-of-the-circumstances inquiry to focus on a single
moment but must look too in this and all excessive-force cases, at any relevant
events coming before." *Barnes*, 605 U.S. at 83.

The district court's focus on whether the gun was pointed at Officers or had
dropped to the ground (yet still within Valdivia's reach) prioritizes semantics over
substance. Although the district court repeatedly characterized Valdivia as being
"unarmed" for nanoseconds when shots were fired, this characterization is based
on Plaintiffs' narrative (and their expert's conclusions) as opposed to due
consideration of the totality of the undisputed facts and circumstances. [1-ER-
00006]. There is no dispute Valdivia was armed, and that Officers were aware of
that fact. [2-ER-00123-127]. Officers did not tell Valdivia to pull his gun out of his
pants and put it on the ground right in front of him; to the contrary, they told him
"don't reach for it." [2-ER-00127-134] Yet Valdivia retrieved his gun from his
waistband, where it was concealed, and moved it up and towards Officers. [2-ER-
00133-136]. The district court's reliance on still-shots of a moment in time to
conclude Valdivia did not pose an imminent threat improperly narrows the totality
of the circumstances analysis to a fraction of a second. [1-ER-00006-11][2-ER-
00310-312][3-ER-00313-314] [3-ER-00395-00491]

15

The district court's focus on whether Valdivia put Officers in his sights before they could constitutionally use deadly force is far too narrow, and overemphasizes a single moment that does not look through the eyes of an officer in the moment. Because "[c]onstitutional violations do not rise and fall on a fraction of a second," the district court's findings must be reversed. *Est. of Hernandez by & through Hernandez v. City of Los Angeles*, 139 F.4th 790, 816 (9th Cir. 2025) (Nelson J., concurring).

## B.   The District Court Erroneously Adopted Plaintiffs' Police-Practice Expert's Conclusions In Its Qualified Immunity Analysis

Qualified immunity measures police conduct against "clearly-established law," not against best practices, and expert opinions are not a substitute for controlling precedent. *See Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996) ("The fact that an expert disagrees with an officer's actions does not render the officer's actions unreasonable.") The Supreme Court has stated that even if an officer acts contrary to training, "that does not itself negate qualified immunity where it would otherwise be warranted." *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 616 (2015).

Here, the district court borrowed conclusions—including legal ones—from Plaintiffs' expert to serve as facts "most favorable to Plaintiffs." [1-ER-00006][1-ER-00010-11]. Critical to the question of qualified immunity, the district court used the expert report's conclusion that Valdivia was non-threatening and on that

16

basis likewise declined to decide the legal issue of whether Officers were entitled to qualified immunity.

By adopting the expert's legal conclusion that Valdivia was not a threat, the district court neglected her responsibility to evaluate the record on summary judgment. Though expert testimony can help a court to assess the level of threat a suspect posed as part of the totality of the circumstances, an expert's conclusions on this point should replace of the court's own analysis. *See Sheehan*, 575 U.S. at 616–17 ("[A] jury does not automatically get to second-guess these life and death decisions, even though a plaintiff has an expert and a plausible claim that the situation could better have been handled differently")(*citing Saucier v. Katz*, 533 U.S. 194, 216, n. 6 (2001)); *see also Hyer v. City & Cnty. of Honolulu*, 118 F.4th 1044, 1059 (9th Cir. 2024) (In disapproving the court's exclusion of expert reports in their totality, the court nevertheless stated "To be sure, a district court need not permit an expert witness to testify to legal opinions.").

As to the district court's statement that it could not "assume Decedent took other actions that would have been objectively threatening," no such "assumption" was necessary. [1-ER-00006] The district court needed only to consider whether an armed and noncompliant suspect reaching for a gun after he was specifically commanded to show his hands and not to "reach for it," was sufficiently

17

threatening in comparison to existing precedent to entitle Officers to qualified immunity. [4-ER-00702-4] [2-ER-00128-138]

Instead of conducting this analysis, the district court inexplicably deferred to Plaintiffs' expert regarding whether Valdivia was a threat. [1-ER-00006][1-ER-00010-11]. The district court did not consider whether a reasonable peace officer in Officers' position could have perceived an imminent threat from an armed suspect fumbling with his gun. *See Sheehan*, 575 U.S. at 616–17 (expert's opinion that an officer's conduct "was imprudent, inappropriate, or even reckless" does not defeat summary judgment if "a reasonable officer could have believed his conduct was justified"). The district court's analysis is therefore incomplete and deficient.

## C.   The District Court's Factual Interpretation Is Contradicted By The Record

In ruling on summary judgment motions, courts are not required to adopt plaintiffs' version of events wholesale but instead must accept "competent evidence" all drawn in favor of the nonmoving party. *Tolan*, 572 U.S. at 656–57. Even then, the court should not look **only** to facts favoring the nonmoving party or reason that "no other facts might contribute to the reasonableness of the officer's actions as a matter of law." *Id*.

Here, the disputed fact identified by the district court is not reflected in the video evidence. According to the district court, Defendants' claims that the Valdivia started to point his gun at officers was disputed by Plaintiff's expert's

testimony and still-frame screenshots, apparently showcasing that the gun was out

of Valdivia's hands when shots were fired. [1-ER-00006]. However, the video

evidence shows that Valdivia pulled out a gun from his waistband, ignoring Officer

commands to not reach for it, and was fatally shot **and** his gun fell to the ground.

[4-ER-00702-3]. The video evidence shows that no more than two seconds elapsed

between Valdivia starting to pull out his gun on Officers, shots being fired, and

Valdivia's gun ending up on the ground. [4-ER-00702-3] Unambiguously, the

video shows that Valdivia dropped his gun and Officers opened fire near-

simultaneously. [4-ER-00702-3]

Whether the gun was out of Valdivia's hands a nanosecond before or after

Officers opened fire is not determinative of Valdivia's threat level. Nor does the

video support the characterization of the weapon being well out of Valdivia's

hands so as to render him non-threatening before Officers opened fire. The district

court, even finding for plaintiffs, should have taken into account the undisputable

video evidence showing that these events happened simultaneously. Construing

facts favorable to Plaintiff is not the same as adopting Plaintiff's facts wholesale,

especially when the contradict the record. *Scott v. Harris*, 550 U.S. 372, 379–80

(2007) (The Supreme Court overturned the lower court purporting a genuine

factual dispute because "the videotape [told] quite a different story." "Where the

record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial."); *See also Wilkinson*, 610

F.3d at 551 (Plaintiffs' sanitized version of the incident cannot control on summary

judgment when the record as a whole does not support that version.).

## III.  THE DISTRICT COURT ERRED BY USING AN IMPROPER AND INCOMPLETE LEGAL ANALYSIS WHEN DECIDING THE SECOND PRONG OF QUALIFIED IMMUNITY

The second prong of qualified immunity asks whether the right in question

was "clearly established" at the time of the violation. *Hope,* 536 U.S. at 739. It was

Plaintiffs' burden to identify authority pursuant to which the contours of the Fourth

and Fourteenth amendment rights at issue "sufficiently definite that any reasonable

official in the defendant's shoes would have understood he was violating it."

*Nicholson*, 935 F.3d at 695

The district court further erred by combining the "reasonableness" and

"deliberate indifference" standards of the first prong with the "clearly established"

standard of the second prong, thereby failing to specifically define the right at issue

or produce caselaw that clearly establishes it. The cases that the district court cites

in its Order prove factually inapposite to this case or demonstrate why Officers'

qualified immunity is necessary in this case.

The mere existence of a factual dispute does not render a court—district or

appellate—unable to find that officers are entitled to qualified immunity when the

factual dispute does not "take away" from the core undisputed features of the case.

*Smith*, 81 F.4th at 1003–04. For example, when the core features of the case confirm that there was no violation or clearly established right, a factual dispute will not be dispositive. *Id*.; *See also Singh v. City of Phoenix*, 124 F.4th 746, 755–56 (9th Cir. 2024) ("[T]he purely legal issue [of] what law was 'clearly established' is up for review") (*citing Johnson v. Jones*, 515 U.S. 304, 313, (1995)).

### A.   The District Court Merged the First and Second Prong Of Qualified Immunity And Defined The Right At Issue Generally

Building on the same erroneous framework used in prong one, the district court denied qualified immunity for excessive force, holding "the law is clearly established that use of deadly force against an individual who is not threatening to officers and not pointing his gun at officers is not objectively reasonable." [1-ER-00008] The court denied qualified immunity for Plaintiffs' substantive due process claim as well, stating "the law was clearly established that officers acted with deliberate indifference through immediate use of deadly force against Decedent who was not engaged in any threatening behavior." [1-ER-00010] In so finding, the district court improperly borrowed the first prong standard to resolve the second prong query and did so by defining the right far too generally.

An asserted right must be specific to overcome qualified immunity. The Supreme Court has repeatedly stressed that "courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial

question whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 583 U.S. 48, 63–64 (2018). A right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024). Although the district court invoked the phrase "clearly established," it did not engage the salient question of "whether the state of the law at the time of an incident provided fair warning to the defendants that the alleged conduct was unconstitutional." *Tolan*, 572 U.S. at 655–56.

The district court could not engage that question having tied its own hands early in the analysis. By improperly focusing on the split second shots were fired, the district court absolved itself of the duty to pay careful attention to the facts and circumstances relating to the incident, as then known to the officer. *Barnes*, 605 U.S. at 80 (*citing Graham v. Connor*, 490 U.S. 386, 396 (1989)). Instead, the district court assumed, based on its flawed application of the law, that Valdivia was not a threat and ended its analysis there. [1-ER-00008-10]

The fruits of the district court's improper standard when analyzing the first prong of the qualified immunity question contaminate its analysis of the second prong. Not only does the court improperly blend the first and second prong queries, but it bases the "clearly established right" on the determinations it came to in the

first prong—again, by focusing the single moment of shooting. The result is an erroneous holding that is incomplete and diverts dramatically from precedent.

**B.    The District Court Did Not Identify Precedent To Support A Clearly Established Right To Put Officers On Notice**

The district court identified no controlling precedent that supports the notion that Valdivia's rights as an armed suspect who disobeyed Officers' orders and reached into his waistband to pull out a gun on Officers, were violated by Officers using proportionate force in response. [1-ER-00007-8] [1-ER-000010]. Nor is there precedent supporting a clear violation of Plaintiffs' familial rights under this set of facts. [1-ER-00007-8] [1-ER-000010]

Most of the cases the district court cites under the second prong are immediately distinguishable from this case, and in fact each case **supports** Defendants' argument that the right at issue was not clearly established in this case. The Supreme Court "has repeatedly told courts…not to define clearly established law at a high level of generality." *Hernandez*, 139 F.4th at 822–23. It "**does not suffice** for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness." *Id*. To be clearly established, there need not be a case "directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Napouk*, 123 F.4th at 922.

The district court cites to *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) but does not adopt its precedent. [1-ER-00008] In *Wilkinson*, the court found Officers' use of deadly force constitutional, explaining that while an officer may not use deadly force against a suspect that poses no immediate threat, it is not constitutionally unreasonable to prevent escape using deadly force "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id*. Here, although Valdivia was not a fleeing felon, for the reasons described above, he posed a threat to Officers and *Wilkinson* supports their use of deadly force.

The district court cites to several other distinguishable but informative cases. For example, *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) gives weight to Appellants' entitlement to immunity in its distinguishability. [1-ER-00008] In that case, the court denied qualified immunity when officers shot an armed suspect after gaining purchase into his residence, focusing on the fact that the suspect was not a threat when the first shot was fired because he was shot the back. *Id*. In contrast, Valdivia was facing and drawing his gun on Officers. [4-ER-00702-4] This distinction is crucial. The *Curnow* court stated, "the police officers' **could not reasonably have believed** the use of deadly force was lawful because…[suspect] did not point the gun at the officers and apparently was not facing them when they shot him the first time." *Id*. Here, there

24

is no evidence that Valdivia was turned well away—the undisputed evidence is
that he was face-to-face with Officers, armed and disobeying their commands.
Their reasonable belief that the use of force was lawful in these circumstances is
not undermined by *Curnow*.

Also distinguishable is *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1076 (9th
Cir. 2017) cited by the district court. In *Zion*, the court denied qualified immunity
based on a disputed fact which, unlike in this case, was in fact genuine. *Zion*
involved an irreconcilable contradiction between the police officer testimony
regarding his belief that the suspect was getting up when the video evidenced no
sign of suspect getting up. *Id*. This dispute goes directly to the issue of whether an
officer would have reasonably believed deadly force was lawful given what was
before him at the time. Again, there is no such contradiction in this case. The
incontrovertible video evidence shows that Valdivia was pulling out his gun and
that Valdivia was starting to point it towards Officers at the same time as Officers
opening fire. [4-ER-702-3]. In these circumstances, *Zion* does not negate the
Officers' reasonable belief that Valdivia posed an imminent threat

Also impacting reasonable belief is whether or not the suspect was
compliant, or indicated an attempt to comply, at the time of the shooting. This is
illustrated in the unpublished case *Toussaint v. City of El Monte*, No. 2:20-CV-
06669-AB-KK, 2022 WL 2125140, at *8 (C.D. Cal. Jan. 27, 2022) that was also

25

cited by the district court[2]. In *Toussaint*, officers responding to a call of "shots fired" chased a suspect to a bus stop where the suspect stated "it's a BB gun." *Id*. The suspect moved to open his backpack and remove the weapon seemingly in response to or in compliance with officer orders to "drop the gun." *Id*. Here, Valdivia disobeyed Officers' commands to "not reach for" his gun, and gave no word or indication that by reaching for his waist he was somehow attempting to comply with this command. [4-ER-00702-4][2-ER-00131-137]. The sharp contrast between these two cases reinforces the importance of analyzing an officers' reasonable belief—and based on the undisputed evidence including video evidence—regarding whether a suspect poses an imminent threat to the officers or others.

The district court also cites to *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1019 (9th Cir. 2017) to support its denial of qualified immunity based on a clearly established right. In that case, officers were denied qualified immunity for shooting a seemingly armed suspect who was turning towards them from 60 feet away. *Id*. The circumstances in *Lopez* are distinguishable in a way that highlights why qualified immunity was not appropriate there but is necessary

---

[2] Even if *Toussaint* were on point, unpublished decisions do not suffice to clearly establish the law. *See Wesby*, 583 U.S. at 63 ("to be clearly established . . . [the] rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority."). Nevertheless, as the district court relied on *Toussaint*, appellants address it here

here. In *Lopez*, the suspect did not have the police called on him, officers were not
dispatched to find him, he never raised up, pulled out, or pointed his gun, and
officers only engaged him after spotting him holding a gun on the street. *Id*.
Critically, this Circuit noted and took into account the fact that the lower court
performed a full analysis of the facts and approved of district court's conclusion
that the suspect was "holding a weapon pointed down at his side, and merely
turned around in response to an officer's command." *Id*.

The circumstances facing Appellants fall on the other, immunized, end of
the spectrum. Officers were dispatched to find Valdivia, who was scaring and
threatening members of the public with his gun. [4-ER-00702-4][2-ER-00109-
125][2-ER-00143-149]. Officers encountered Valdivia who refused to put his
hands up and deliberately disobeyed Officers' commands to not reach for his gun.
[4-ER-00702-4][2-ER-00128-139]. Valdivia was not simply turning around in
response to officer presence, like the suspect in Lopez. Valdivia was facing
officers and made the choice to pull his gun out and towards them at near point
blank range. [4-ER-00702-4][2-ER-00133-139]. Unlike the suspect in *Lopez*,
Valdivia's threat was apparent and Officers' belief in that threat under the totality
of the circumstances was reasonable. Moreover, unlike the lower court in *Lopez*,
the district court did not perform a complete analysis of all these facts, choosing
instead to adopt the conclusions of Plaintiffs' expert.

27

Regarding appellees' due process claim, the district court cited to *Nicholson v. City of Los Angeles*, 935 F.3d 685, 695 (9th Cir. 2019), which also supports a finding in Officers' favor. In *Nicholson*, "the parties dispute[d] whether [the suspect turned and dropped the toy gun] before or after [Officers] fire[d]." *Id*. at 689. Despite this dispute, the officers were entitled to qualified immunity for the Fourteenth amendment violation because "no analogous case existed at the time of the shooting." *Id*. at 695. In this case too, even though the district court found a disputed fact, neither plaintiffs nor the district court identified a clearly established right, and Officers are entitled to qualified immunity. Importantly, the *Nicholson* court also rejected the idea that a violation of the Fourth Amendment ipso fact demonstrates a violation of the Fourteenth Amendment. *Id*. at 695-96. "While [Plaintiffs'] cases may help to identify whether the use of force...amounted to a Fourth Amendment violation," the court stated, "they do not clearly establish that a shooting in these circumstances constitutes deliberate indifference to Plaintiffs." *Id*. at 695–96.

The cases cited by the district court do not support its method or rationale—borrowed from Plaintiff's expert—for denying qualified immunity. [1-ER-00007-10] These cases instead highlight the district court's error in determining Valdivia's threat level and failure to make use of the incontrovertible evidence. They highlight how, instead of fully examining whether the right at issue was

28

clearly established in the specific circumstances Officers faced, the district court
erroneously relied on the expert opinion to deny immunity.

The district court did not define the contours of Valdivia's right nor show
that it was clearly established such that Officers should have known they were in
violation given the totality of the circumstances, requiring reversal. *Anderson*, 483
U.S. at 635–36. (finding error in lower court's "refusal to consider" the "relevant
[and]…objective question whether a reasonable officer could have believed [his
conduct] to be lawful, in light of clearly established law and the information
the…officer possessed".) *Brooks v. Clark Cnty.*, 828 F.3d 910, 922 (9th Cir. 2016)
(qualified immunity asks "whether it would be clear to a reasonable officer that his
conduct was unlawful ***in the situation he confronted***.").

## IV.   OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' EXCESSIVE FORCE AND SUBSTANTIVE DUE PROCESS CLAIMS

### A.   Officers Are Entitled To Qualified Immunity For Plaintiffs' Excessive Force Claim

Stripped of the foregoing errors, the inevitable conclusion on the record
before the district court is that Officers are entitled to qualified immunity, both
because there was no constitutional violation and because no clearly established
law put them on notice that their use of deadly force was unconstitutional in the
particular circumstances they were in.

### 1. Officers' Use Of Force Was Reasonable Under The Totality Of The Circumstances

Per *Graham*, an excessive force claim is properly analyzed under an objective reasonableness standard. *Id*. at 388. It is well-settled that lethal force is justified if an officer has "probable cause to believe that [a] suspect poses a significant threat of death or serious physical injury to the officer or others." *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007). And, when a suspect points a gun in an officer's direction, "the Constitution undoubtedly entitles the officer to respond with deadly force." *Id*. Officers are not required to "wait until a gun is pointed at [them] before [they are] entitled to take action." *Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001). "If the person is armed— or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013*)*. Furthermore, "[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of" an immediate threat, and "in those situations courts will not hold that they have violated the Constitution." *Saucier*, 533 U.S. at 206.

Here, it is undisputed that Officers arrived on the scene with the knowledge that Valdivia was armed and was brandishing his gun at members of the public. [1-ER-00006-11][2-ER-00094-122]. Although Valdivia eventually complied with Officers' commands to get on the ground, he refused to keep his hands visible and

30

defied the instruction not to reach for his gun. [2-ER-00130-131] *Barnes*, 605 U.S. at 80 ("The totality of the circumstances inquiry into a use of force has no time limit.") In fact, after going to the ground, Valdivia—unprompted—lifted himself up, pulled out his gun, and raised it up towards Officers, disobeying their orders to "not reach for it" and "not grab it." [2-ER-00132-136]

This situation is squarely governed by *Strickland* which holds that officers are warranted in using deadly force in response to a suspect pulling out his gun on them. *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620–21 (9th Cir. 2023). Nor were Officers required to "delay their fire until [Valdivia] turn[ed] his weapon on them." *Id.* at 620 (Officers should not be required to "wait until a gun is pointed at [them] before [they are] entitled to take action.")

Even viewed favorably towards Plaintiffs, the undisputed facts of the numerous 911 calls, Valdivia's disobedience, and his choice to perform the universally threatening gesture of reaching for and pulling out a gun on Officers would reasonably pose an immediate threat to Officers. [2-ER-00123-136] Even if Officers were mistaken as to whether Valdivia had a real gun or had internal, personal plans to shoot them, Officers were reasonable in their perception of Valdivia pulling out and raising out his gun as threatening. *Id*. at 620 (even if officer's "use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact"). The dispute as

to whether or not the muzzle was pointed at Officers in the millisecond they opened fire does not float or sink a finding of Officer reasonableness under a totality of the circumstances. That Valdivia disobeyed Officer orders, immediately reached for the gun at his waist to pull it out and upward has been enough to find an immediate threat warranting deadly force.

### 2. There is No Clearly Established Law Addressing The Facts Of This Case Which Puts Officers' Conduct Beyond Debate

With respect to second prong, the burden of identifying clearly established law falls on plaintiff. *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) This burden is meant to be significant. Citing to abstract principles is not enough. *Kisela v. Hughes*, 584 U.S. 100, 103 (2018). The clearly established law at issues must be particular to the facts of the case. *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018). The clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), (*citing Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011))

As detailed in Section III.B above, the cases cited by the district court are immediately distinguishable or even support Officers' position. This Circuit's precedent does not state that the use of deadly force is only reasonable if the suspect successfully points the gun at them; instead, when a suspect "start[s] to" point a gun at officers, that can be sufficient. *See Strickland*, 69 F.4th at 620–23

(finding it was not objectively unreasonable for officers to shoot a suspect who started pointing a BB gun at them); *see also Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 828 (9th Cir. 2023) ("Our case law is clear that when a suspect reaches for a gun or aims a weapon at officers, responding with deadly force does not violate the Constitution."); *Long*, 511 F.3d at 906–07 (holding officer was justified in shooting the suspect where he heard radio transmission suggesting that the suspect was shooting at officers and observed him pointing a rifle in the direction of other officers); *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1992) (holding the use of deadly force was not constitutionally excessive where the suspect held a "long gun" and pointed it at the officers).

Without any law to support a suspect's clearly established right to be free from the use of deadly force where that suspect is armed, noncompliant, and reaching for his weapon, and with the wealth of precedent finding that this law is not in fact clearly established, Officers are entitled to qualified immunity under the second prong.

**B.    Officers Are Entitled To Qualified Immunity For Plaintiffs' Substantive Due Process Claim**

### 1. *Officers' Use Of Force Under The Totality Of The Circumstances Did Not Shock The Conscience*

Two tests govern whether an officer's conduct "shocks the conscience." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). "Which test applies

33

turns on whether the officers had time to deliberate their conduct." *Id*. The "deliberate-indifference test" applies when a situation "evolve[s] in a time frame that permits the officer to deliberate before acting." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The more demanding "purpose-to-harm test" applies when a situation escalates so quickly that the officer must make a "snap judgment." *Scott v. Smith*, 109 F.4th 1215, 1228 (9th Cir. 2024)

The district court utilized the purpose of harm test and concluded that "if [Valdivia] was not pointing his gun at officers and did not pose an immediate threat to officers when shots were fired at Decedent, a reasonable jury could find the Defendants Officers' use of deadly force against Decedent shocks the conscience and that officers used deadly force against Decedent with a purpose to harm without regard to legitimate law enforcement objectives." [1-ER-00009-10] Again, the district court focuses on the freeze0frames proffered by Plaintiffs to arrive at this conclusion. [1-ER-00009-10] This 20/20 analysis, as discussed above, is not proper.

Further, the record does not reflect an intent to harm Valdivia outside of a legitimate law enforcement purpose. Officers approached Valdivia, ordered him to the ground, and had to make a split-second decision when Valdivia, without warning or non-threatening indication of his plans, reached for his gun, pulled it out, and raised it upwards. [4-ER-00702-3]. Unlike in the unpublished cases of

34

*Atienza v. Hall*, 2021 WL 3409254 (N.D. Cal. Aug. 4, 2021) or *Bishop v. City of Buckley*, 2024 WL 1701949, (W.D. Wash. Apr. 19, 2024), there is no dispute as to Officers' belief that their lives were threatened or that they needed to protect themselves and innocent bystanders from Valdivia's unpredictable and threatening behavior. [2-ER-00154-204]. The shocks the conscience standard is not met when an officer is not able to predict what may quickly happen next and has to make split-second judgments "about how best to minimize the risk to his own safety and the safety of others." *Zion,* 874 F.3d at 1077 (*citing Porter*, 546 F.3d at 1139). Nor is there evidence that Valdivia's weapon remained in a non-threatening, downward facing position throughout the encounter as in *Nicholson*.

Instead, similarly to *Zion v. Cnty. of Orange*, 874 F.3d 1072 (9th Cir. 2017), cited by the district court, the Officers here did not shock the conscience or demonstrate an intent to harm when they fired their weapons in rapid succession, without time for reflection, in response to Valdivia who made immediate, furtive movements to grab for his gun and bring it out and up towards Officers. *Id*. at 1077. [4-ER-00702-3] And there is no evidence to indicate Officers evidenced intent to harm Valdivia for no legitimate law enforcement purpose Valdivia when they opened fire in response to these actions. *Wilkinson*, 610 F.3d at 554–55.

### 2. There is No Clearly Established Law Addressing The Facts Of This Case Which Puts Officers' Conduct Beyond Debate

As with the analysis of the second prong for the excessive force claim, the district court did not identify cases involving substantially similar circumstances where Officers were not granted qualified immunity when a suspect pulled a gun on the officers within a few seconds and Officers opened fire.

As detailed in sections III.B and IV.A.2 above, the cases cited by the district court are distinguishable in key ways as to the first prong, support a finding of qualified immunity on the second prong, and overall support Officers' position. The precedent does not state that shooting a suspect, even if the suspect was not successful in pointing a gun at Officers, satisfies the shocks-the-conscience standard.

Instead, the law cited by the district court highlights how, even when a violation occurred, Officers are entitled to qualified immunity based on the clearly established right. *See Scott v. Smith*, 109 F.4th at 1229 (Finding qualified immunity based on failure to show clearly established right); *see also Nicholson*, 935 F.3d at 695 (9th Cir. 2019) (same); *see also Bishop v. City of Buckley*, No. C22-5759-KKE, 2024 WL 1701949, at *6 (W.D. Wash. Apr. 19, 2024) (Court did not find qualified immunity due to genuine disputes of fact including conspiracy of officers to plant a gun on decedent and that they took immediate pictures of him after shooting him); *see also Atienza v. Hall*, No. 19-CV-03440-RS, 2021 WL 3409254,

at *6 (N.D. Cal. Aug. 4, 2021) (Court did not find qualified immunity due to a genuine dispute of fact to Officers' conflicting testimonies and where decedent's car was and how it was positioned, which are at the heart of the analysis)

Without any law to support a clearly established right, and with the wealth of precedent finding that this right is not clearly established, Officers are entitled to qualified immunity under the second prong.

## CONCLUSION

The district court employed a legal framework that this Court has specifically condemned and reached an absurd conclusion as a result. To correct the district court's clear error and divergence from precedent, the district court's denial of summary judgment should be reversed. And because the undisputed evidence does not support a finding of either a constitutional violation or clearly established law that would put Officers on notice of a violation, Officers are entitled to qualified immunity as a matter of law, and this Court should accordingly instruct the district court to enter judgment in Officers' favor on appellees' causes of action for violation of the Fourth and Fourteenth Amendments on remand.

///

///

///

///

DATED:  January 22, 2026      Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

Safi U. Henson (342115)


By:         *s/ Safi U. Henson*
_____

Safi Henson (SBN 342115)
*safi.henson@manningkass.com*
Mildred K. O'Linn (SBN 159055)
*missy.olinn@manningkass.com*
Robert E. Murphy (SBN 103936)
*robert.murphy@manningkass.com*
David Fleck (SBN 192912)
*david.fleck@manningkass.com*
Susannah R. Conn (SBN 205085)
*susannah.conn@manningkass.com*

Attorneys for Defendants-Appellants *CITY
OF COVINA, VANESSA CARDOZA,
DAVID MEADOWS, and BILLY SUN*

38

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-7151

I am the attorney or self-represented party.

**This brief contains** | 9,906 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [            ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Safi U. Henson | **Date** | January 22, 2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*