**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.V. and X.V., minors by and through their guardian ad litem, Karla Juarez; D.V., a minor, by and through his guardian ad litem, Elias Valdivia; individually and as successors-in-interest to Daniel Luis Valdivia, deceased; JESSICA VALDIVIA; LUIS VALDIVIA JR., individually, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF COVINA; VANESSA CARDOZA; DAVID MEADOWS; BILLY SUN; DOES 1-10, inclusive, <br><br>, <br><br> Defendants. | Case No. 5:23-cv-01562-CBM-ACCV <br><br> [*Honorable Consuelo B. Marshall*] <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION *IN LIMINE* No. 1 TO EXCLUDE INFORMATION UNKNOWN** <br><br> [(Proposed) Order; Declaration of Marcel F. Sincich and attached exhibits *filed concurrently herewith*] <br><br> **Final Pretrial Conference & Hearing on Motions *in Limine*:** <br> Date:   May 5, 2026 <br> Time:   02:30 p.m. <br> Place:  Courtroom 8D <br> **Trial:** <br> Date:   June 9, 2026 <br> Time:   10:00 a.m. <br> Place:  Courtroom 8D |

Case No.: 5:23-cv-01562-CBM-ACCV

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Plaintiffs E.V. and X.V., minors by and through their guardian *ad litem*, Karla Juarez; D.V., a minor, by and through his guardian *ad litem*, Elias Valdivia; individually and as successors-in-interest to Daniel Luis Valdivia, deceased; JESSICA VALDIVIA; and LUIS VALDIVIA JR., hereby move *in limine* for an order excluding any evidence, testimony, argument, reference or inference at trial as to any information unknown to the Defendant Officers at the time of their use of excessive and unreasonable deadly force, regarding liability and damages, including:

A.    **DRUGS and ALCOHOL**: any drug or alcohol use or possession by Valdivia, and any Plaintiff or Guardian *ad Litem*, at any time, including on the date of the shooting (not including the bottle in hand at the time of officers' arrival), prior to the date of the shooting, and after the shooting, and also including the post-incident toxicology results.

B.    **CRIMINAL HISTORY, WRONGS, or "BAD ACTS"**: contacts with law enforcement, arrests, convictions, custody, incarceration, probation, parole, related reports, allegations of crimes including domestic violence, weapons possession history, crimes not committed, booking photographs, and child protective services history of Valdivia, and any Plaintiffs or Guardian *ad Litem*. (This motion does not seek to exclude information the Officers received from dispatch prior to arrival.)

C.    **GANG/VIOLENT HISTORY**: any alleged gang affiliation and tattoos that may be interpreted as gang-related.

D.    **PERSONAL HISTORY**: Valdivia, and any Plaintiffs or Guardian *ad Litem's* irrelevant and unrelated family history, residence history, education history, disciplinary history, child support history, custody history, work history, tax history,

income history, other children history, social medial history, and living arrangements.

  E. **MEDICAL HISTORY**: pre-incident, and post-incident, unrelated and unclaimed medical history.

  F. **AFTER-ACQUIRED INVESTIGATORY INFORMATION and AGENCY FINDING**: after-acquired investigatory records (post-incident discovered, drafted, created) and information therefrom, including any officer-involved shooting post-incident briefing; any 9-1-1 calls not heard by the Defendant Officers (including CPD 1-4); any witness statements that include information not known to the Defendant Officers; any post-incident video of interview of witnesses giving information unknown as well as opinions (including CPD 952); body-worn camera video from officers not depicting the incident (including CPD 39, 40, 41, 42, 43, 44, 48, 49, 50, 51, 52, 53, 55, 952, 954, 955); the post-incident-created Critical Incident Video; Defendant City of Covina's various reports (including Preciado Report CPD 87-91, CAD Call CPD 92-93, Property Report CPD 94-96, Names Involved CPD 97-98, Flores Report CPD 99, Avila Report 100-101, Rasmussen Report CPD 102, Dixon Repot 103-104, Lee Report 105-106, Statler Report CPD 107, Marquez Report CPD 108-109, Ardery Report CPD 110, Husley Report CPD 111-113, Preciado Report CPD 114, Statler Repot CPD 115, Ragan Report CPD 116-117, Coroner Case Report CPD 140-144, Watch Commander Logs CPD 912-915, DOJ Letter CPD 916-919, DOJ Notice CPD 920, Property Report CPD 921-922, InterOffice Memo CPD 923-925, DMV Record CPD 926-942, CPD IOM CPD 943-944, Press Release CPD 945, CPD Incident Reports CPD 1038-1051, POST Training CPD 1052-1059, Rialto Report CPD 1060-1069, DOJ Report CPD 1076-1110 – unless for impeachment or record refresh); <u>whether the replica gun was loaded</u>; evidence collected from Decedent Valdivia's vehicle or home searched after the incident, including any photographs of the evidence collected after the incident and any information acquired from said evidence; and Covina Police Department,

**PLAINTIFFS' MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN**

Department of Justice, or District Attorney's Office post-incident finding including any internal findings that the force used was within policy, whether the force was subject to criminal charges, investigative reports and memos, and press releases.

Plaintiffs will suffer undue prejudice if this Motion *in Limine* is not granted because all the above information was undisputedly unknown to Defendant Officers Cardoza, Meadows, and Sun at the time of the incident giving rise to the above-referenced lawsuit. Further, even if the Officers claim to have suspected drug and/or alcohol use or possession (besides the possession of the bottle during the incident), crimes wrongs or bad acts, or gang affiliation, personal and medical history, and after-acquired investigatory information and findings are all irrelevant or have minimal, if any, probative value, yet carries a substantial danger of unfair prejudice; confusing the jury; presentation of cumulative evidence; unnecessarily consuming time and misleading the jury in their task of determining whether Defendant Officers Cardoza, Meadows, and Sun are liable and the extent of Plaintiffs' damages; and includes impermissible character evidence and hearsay. Plaintiffs make this Motion under Federal Rules of Evidence, Rules 401, 402, 403, 404, 602, 801 and the prohibition of hindsight evidence in the reasonableness analysis of use of excessive force cases pursuant to *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011).

Plaintiffs base this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Marcel F. Sincich in Support of Plaintiffs' Motion *in Limine* No. 1 and Exhibits attached thereto, Plaintiffs' [Proposed] Orders, any argument raised at the hearing on this motion, and all other pleadings and papers on file with this Honorable Court.

**Statement of Local Rule 7-3 Compliance**: This motion is made following a conference of counsel during which it was Plaintiffs' impression that at least partial resolution was reached.

**PLAINTIFFS' MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN**

At the time of drafting this motion, with the anticipation that the parties will be able to reach an agreement and file a stipulation regarding specific evidence that will be excluded from trial, based on the parties' discussion of the redlined draft stipulation, Plaintiffs are under the impression that Defendants would agree to exclude the following:

(1)     "Decedent's substance use history, including any pre-incident drug or alcohol use, unknown to the Defendant Officers, is excluded from trial. This stipulation does not touch upon information known by the Defendant Officers at the time of the incident, which may be subject to objection or motion *in limine*."

(2)     "Whether Decedent was under the influence of any substance during the incident, unknown to the Defendant Officers, is excluded from trial. This stipulation does not touch upon information known by the Defendant Officers at the time of the incident, which may be subject to objection or motion *in limine*."

(3)     "Any post-incident toxicology or investigative results into any substance."

(4)     Plaintiffs' and Guardian *ad Litem's* substance use history, including any reference to drugs or alcohol is excluded from liability. This stipulation does not touch upon the admissibility of this information as to damages, which may be subject to objection or motion *in limine*."

(5)     "Decedent's criminal history including any contacts with law enforcement, convictions, custody, incarcerations, probation, parole, allegations of criminal conduct, and any criminal records or booking photographs, unknown to the Defendant Officers, is excluded from trial. This stipulation does not touch upon information known by the Defendant Officers at the time of the incident, which may be subject to objection or motion *in limine*."

(6)     "Plaintiffs' and Guardian *ad Litem's* criminal history is excluded from liability. This stipulation does not touch upon the admissibility of this information as to damages, which may be subject to objection or motion *in limine*."

(7)    "Reference to gangs, gang neighborhood, gang involvement, criminal neighborhood, and violence in the neighborhood, including showing any tattoos that may be interpreted as gang related, unknown to the Defendant Officers, is excluded from trial. This stipulation does not touch upon information known by the Defendant Officers at the time of the incident, which may be subject to objection or motion *in limine*."

(8)    "Personal and family history of Decedent, Plaintiffs, and Guardians, including marital history, dating history, residence history, education history, disciplinary history, child support, custody, and social media is excluded from liability. This stipulation does not touch upon the admissibility of this information as to damages, which may be subject to objection or motion *in limine*."

(9)    "Medical history of Decedent, Plaintiffs, and Guardians is excluded from liability. This stipulation does not touch upon the admissibility of this information as to damages, which may be subject to objection or motion *in limine*."

(10)    "After acquired investigatory information from Covina Police Department, Department of Justice, and District Attorney's Office, including agency findings and analysis, whether the shooting was within policy, whether the shooting was subject to criminal charges, investigative reports and memos, and press releases."

(11)    "As to liability but not as to damages, information unknown including 911 call recordings and interviews with 911 callers and witnesses providing information that was not received by the Defendant Officers." And

(12)    "The parties additionally agree that no party will call as a witness nor discuss Felene Abeytia."

(Declaration of Marcel F. Sincich ("Sincich Decl.") at ¶2.)

PLAINTIFFS' MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN

Respectfully submitted,

DATED: April 7, 2026                    **LAW OFFICES OF DALE K. GALIPO**

By:  /s/        *Marcel F. Sincich*
                Dale K. Galipo
                Marcel F. Sincich
                *Attorneys for Plaintiffs*

**PLAINTIFFS' MOTION IN LIMINE NO. 1 – TO EXCLUDE INFORMATION UNKNOWN**

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ..........................................1

**I.     INTRODUCTION** ........................................................................1

**II.    RELEVANT FACTS** ....................................................................3

**III.   INFORMATION UNKNOWN IS EXPRESSLY PROHIBITED** ..............9

**IV.    THIS EVIDENCE IS IMPERMISSIBLE CHARACTER EVIDENCE** ..............................................................................11

**V.     THIS INFORMATION UNKNOWN IS UNDULY PREJUDICIAL** ......12

**VI.    THIS EVIDENCE IS INADMISSIBLE HEARSAY** ...............................16

**VII.   CONCLUSION** ..........................................................................16

PLAINTIFFS' MOTION *IN LIMINE* NO. 1 – TO EXCLUDE INFORMATION UNKNOWN

# TABLE OF AUTHORITIES

Cases

*Arlio v. Lively*,
474 F.3d 46 (2d Cir. 2007) ...................................................................................15

*Blancha v. Raymark Industries*,
972 F.2d 507 (3d Cir. 1992) ...........................................................................15, 16

*C.B. v. City of Sonora*,
769 F.3d 1005 (9th Cir. 2014) .............................................................................13

*Estate of Diaz v. City of Anaheim*,
840 F.3d 592 (9th Cir. 2016) ...............................................................................14

*Gates v. Rivera*,
993 F.2d 697 (9th Cir. 1993) ...............................................................................11

*Glenn v. Washington Cnty.*,
673 F.3d 864 (9th Cir. 2011) .................................................................................9

*Graham v. Connor*,
490 U.S. 386 (1989) ...............................................................................................9

*Gregory v. Oliver*,
2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) .........................................13, 14

*Jackson v. City of Gahanna*,
2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011) ...............................................12

*Kunz v. DeFelice*,
538 F.3d 667 (7th Cir. 2008) ...............................................................................13

*Larez v. City of Los Angeles*,
946 F.2d 630 n.5 (9th Cir. 1991) ..........................................................................12

*Mason v. City of Chicago*,
631 F. Supp. 2d 1052 (N.D. Ill. 2009) .............................................................14, 15

*Palmerin v. City of Riverside*,
794 F.2d at 1414 ..................................................................................................11

*Palmquist v. Selvik*,
111 F.3d 1332 (7th Cir. 1997) .............................................................................10

*Rascon v. Hardiman*,
803 F.2d 269 (7th Cir. 1986) ...............................................................................14

*Rockwell v. Yukins*,
341 F.3d 507 (6th Cir. 2003) (*en banc*) ...............................................................15

*Tennessee v. Garner*,
471 U.S. 1 (1985) ...................................................................................................9

PLAINTIFFS' MOTION *IN LIMINE* NO. 1 – TO EXCLUDE INFORMATION UNKNOWN

*United States v. Aims Back,*
588 F.2d 1283 (9th Cir. 1986) ............................................................................ 13

*United States v. Hankey,*
203 F.3d 1160 (9th Cir. 2000) ............................................................................ 12

*United States v. Mendoza–Prado,*
314 F.3d 1099 (9th Cir. 2002) ............................................................................ 11

*United States v. Place,*
462 U.S. 696 (1983) ............................................................................................ 9

*Wiersta v. Heffernan,*
789 F.2d 968 (1st Cir. 1986) ............................................................................ 13

*Wilson v. City of Chicago,*
6 F.3d 1233 (7th Cir. 1993) ............................................................................ 14

*Wilson v. Union Pacific R. Co.,*
56 F.3d 1226 (10th Cir. 1995) ............................................................................ 13

*Wisler v. City of Fresno,*
2008 WL 2954179, *5 (E.D. Cal., July 22, 2008) ................................... 10, 13

*Witt v. West Virginia State Police, Troop 2,*
633 F.3d 272 n.* (4th Cir. 2011) ............................................................................ 10

Statutes

Fed. R. Evid. 405(b) ............................................................................................ 11

Fed. R. Evid. 602 ............................................................................................ 14, 16

Fed. R. Evid. Rule 404(b)(2) ............................................................................ 12

Fed. R. Evid. Rule 406 ............................................................................................ 12

Fed. R. Evid. Rule 608 ............................................................................................ 12

Fed. R. Evid. Rules 401, 402 ............................................................................ 9

Fed. R. Evid. Rule 403 ............................................................................................ 12, 13

PLAINTIFFS' MOTION *IN LIMINE* NO. 1 – TO EXCLUDE INFORMATION UNKNOWN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a §1983 civil rights and state tort case arising from the use of excessive and unreasonable force against Decedent Daniel Valdivia ("Valdivia") by City of Covina Police Department ("CPD") Officers Vanessa Cardoza ("Cardoza"), David Meadows ("Meadows"), and Cheng Wei Sun ("Sun") on April 9, 2022. The central issue in liability in this case is whether the Officers' use of deadly force was excessive or unreasonable under the totality of the circumstances known to them at the time not acquired later, in hindsight, in an attempt to justify a wrongful shooting. The pertinent issues regarding this officer-involved shooting involve the reasonableness of the Officers' pre-shooting conduct, whether Valdivia was an immediate threat of death or serious bodily injury, whether a warning was given, whether there were less intrusive alternatives including de-escalation, and whether Valdivia was resisting or attempting to flee. These issues must be judged based only on the totality of the circumstances known to the involved officers *at the time* of the use of force. Any other information or evidence that does not fall under this standard and is not relevant to the issues in this case should be excluded. Under the legal standards for evaluating the reasonableness of an officer's use of force under federal and state law, Defendants should be precluded from introducing or referencing at trial information unknown to the Officers when determining whether Valdivia was an immediate threat of death or serious bodily injury. Further, the central issue in this case regarding damages is Valdivia's pre-death pain and suffering, and the Plaintiffs' loss of their son and father, respectively – the loss of his love. Thus, prejudicial evidence that was unknown to the Officers, that is otherwise inadmissible, should not be admitted through damages back door, where there is a substantial risk that we cannot un-ring the bell and risk the jury considering this information as to liability. Nevertheless, Plaintiffs contend that the following information has no connection with Plaintiffs claims for damages.

By way of this Motion *in Limine*, Plaintiffs move to exclude any evidence, testimony, argument, reference or inference at trial as to (**A**) any drug or alcohol use or possession by Valdivia, and any Plaintiff or Guardian *ad Litem*, at any time, including on the date of the shooting (not including the bottle in hand at the time of officers' arrival), prior to the date of the shooting, and after the shooting, and also including the post-incident toxicology results ("Drug and Alcohol history"); (**B**) contacts with law enforcement, arrests, convictions, custody, incarceration, probation, parole, related reports, allegations of crimes including domestic violence, weapons possession history, crimes not committed, booking photographs, and child protective services history of Valdivia, and any Plaintiffs or Guardian *ad Litem* (this motion is not including information the Officers received from dispatch prior to arrival) ("Criminal History"); (**C**) alleged gang affiliation and tattoos that may be interpreted as gang related ("Gangs and Tattoos"); (**D**) Valdivia, and any Plaintiffs or Guardian *ad Litem's* irrelevant and unrelated family history, residence history, education history, disciplinary history, child support history, custody history, work history, tax history, income history, other children history, social medial history, and living arrangements ("Personal History"); (**E**) pre-incident, and post-incident, unrelated and unclaimed medical history ("Medical History"); and (**F**) after-acquired investigatory records and information, including any officer-involved shooting post-incident briefing; any 9-1-1 calls not heard by the Defendant Officers; any witness statements that include information not known to the Defendant Officers; any post-incident video of interview of witnesses giving information unknown as well as opinions; body-worn camera video from officers not depicting the incident; the post-incident created Critical Incident Video; Defendant Covina's varios reports; whether the replica gun was loaded; photograph and information from Decedent Valdivia's vehicle or home searched after the incident; and Covina Police Department, Department of Justice, or District Attorney's Office post-incident finding including any internal findings that the force used was within policy, whether the force was subject to criminal charges,

investigative reports and memos, and press releases ("After-Acquired Finding") – as all this information was undisputedly unknown to the Officers at the time of their use of excessive and unreasonable force against Valdivia, therefore rendering this information irrelevant and inadmissible also having no bearing on damages, but nevertheless is substantially outweighed by the risk of unfair prejudice and is inextricably impermissible character evidence and hearsay.

The jury will determine whether the force used against Valdivia by the Officers was excessive or unreasonable, and the nature and extent of Plaintiffs' claims for damages caused by the Officers. The analysis regarding the reasonableness of the Officers' use of force is limited to information known to the Officers at the time force was used. The only information the Officers had and considered before their use of force was relayed to them from dispatch and from their own perceptions, not information from Plaintiffs or any other witnesses about Valdivia or the neighborhood that the officer did not consider prior to taking Valdivia's life. Information unknown to the Officers at the time of the use of force is not pertinent to the determination of any relevant issue in this matter. The Officers cannot justify their use of excessive deadly force, nor attempt to minimize full and fair compensation for the harm they caused, with the use of post-incident acquired information that is nevertheless unduly prejudicial, and improper character evidence designed to taint the jury's perspective of Plaintiffs and deprive them of a fair trial. The subject evidence is also hearsay and speculative.

Thus, for the following reasons, Plaintiffs respectfully request the Court issue an order excluding all irrelevant and unrelated information unknown from trial.

## II.    RELEVANT FACTS

The Officers responded to calls regarding a subject brandishing to a gun that they knew had deescalated to information that the gun had been placed in the subject's pocket prior to the Officers' arrival. With the information received from dispatch, the calls still did not reasonably indicate an emergency response and the

allegations needed to be investigated for accuracy. The Officers rushed into the scene without a plan and without coordinating less-lethal options. They then began giving simultaneous and/or conflicting commands that caused confusion and likely prevent the subject from being able to adequate hear and/or understand the commands or police announcements. Still, Valdivia complied with commands to not reach, to put his hands up, and to get on the ground.

After Valdivia went to the ground, he discarded a BB gun that was in his waistband. Then without warning, while Valdivia was on the ground, unarmed, having already discarded the gun, with hands visibly empty, the Defendant Officers began opening fire. Even after their first shots, while each of the Defendant Officers assessed between shots, seeing exactly what was occurring given that they were able to see Valdivia's conduct in slow motion, they continued to use excessive and unreasonable force against Valdivia. Valdivia dropped the gun, moved his hand away, was face-down, did not reach for the gun, and had visibly empty hands at all times during the shooting. Thus, Valdivia did not have the capability nor opportunity to imminently cause death or serious bodily injury—he was unarmed on the ground and did not display the apparent intent to cause death or serious bodily injury to any person including the Officers. Although the Officers observed that Valdivia had dropped the gun and was no longer a threat, the Officers nevertheless repeatedly shot and killed him, including shooting him in the head.

Under basic officer training, a reasonable officer understands that the ultimate objective was to avoid or minimize injury, including by de-escalation; to only use force when it reasonably appears necessary under the totality of circumstances, which includes the officer's conduct leading up to the use of force. But to use deadly force there specifically must be an imminent threat of death or serious bodily injury, meaning the subject must have the present ability, opportunity, and apparent intent to immediately cause death or serios bodily injury. Imminent is not fear of future harm no matter how great the fear and no matter how great the likelihood of the harm.

Only what the Officers knew at the time should be relevant to the analysis.

Here, there is no dispute that the Defendant Officers had no knowledge as to any drug or alcohol use or possession as to any of Valdivia in the action:

**Q. Prior to your use of force, did you have any information that Mr. Valdivia had a history of drug or alcohol use?**
A. I did not know, sir.
**Q. Did you know, prior to your use of force, whether or not Mr. Valdivia was under the influence of any drugs?**
A. I did not know, sir.
**Q. Did you know whether he was under the influence of alcohol?**
A. I didn't know, sir.

(Exh. A, Sun Depo at 48:11-21)

**Q. Did you have any information as to whether he had a history of drug or alcohol use?**
A. No.
**Q. Did you have any specific information as to whether he was under the influence of drugs or alcohol?**
A. I believe there was mention on the radio that he may have been consuming alcohol.
**Q. Did you have any specific information that he had ever consumed drugs?**
A. Yes.
**Q. What information did you have?**
A. It was dispatched over the radio that he may have consumed drugs and alcohol.
**Q. Dispatch said that he may have consumed?**
A. I don't remember specifically their exact words, but it was to that effect.
**Q. Okay. With regards to drugs and alcohol, is it fair to say that you didn't use deadly force because you thought that he had consumed drugs or alcohol?**
A. Not for merely consuming drugs or alcohol, no.

(Exh. B, Meadows Depo 31:8-32:2)

**Q. Did you have any information as to whether Mr. Valdivia had a history of drug or alcohol use?**
A. No.
**Q. And I understand that you said that the information was that he was holding a beer?**
A. Correct. …

PLAINTIFFS' MOTION *IN LIMINE* NO. 1 – TO EXCLUDE INFORMATION UNKNOWN

**Q. And did you have any specific information as to whether he was under the influence of drugs prior to your use of force?**
A. I was not aware.
(Exh. C, Cardoza Depo at 46:15-20, 47:11-17)

The Officers had no information as to whether Valdivia was under the influence at the time, but only that the subject was holding a can of beer. Dispatch makes no reference to the subject being under the influence, no reference to the can being open, no reference to the subject drinking from the can, and making no mention whatsoever of drug use or possession.

Further, Defendants had no information as to whether Valdivia had a criminal history, had no information about any supposed bad acts or wrongs, and had no information as to whether they were affiliated with a gang:

**Q. Had you ever met Mr. Valdivia before?**
A. No.
**Q. Prior to your use of deadly force, did you have any information about Mr. Valdivia's personal or family history?**
A. No, sir.
**Q. Prior to your use of force, did you have any information about whether he had a criminal history?**
A. No, sir. …
**Q. Did you have any information as to whether or not Mr. Valdivia was involved in a gang?**
A. No, sir.
(Exh. A, Sun Depo at 47:21-48:10)

**Q. Had you ever met Mr. Valdivia prior to this incident personally?**
A. I don't believe so.
**Q. Did you have any knowledge of Mr. Valdivia prior to your use of force?**
A. I don't believe so.
**Q. Did you have any specific information as to whether he had a criminal history or not?**
A. No.
**Q. Any information as to whether he was involved in a gang or not?**
A. No. …
**Q. Did you have any information prior to your use of force that Mr. Valdivia had ever harmed anybody?**

A. No.

Q. From your observations, did you see Mr. Valdivia harm anybody?

A. Can you rephrase that question, please.

Q. From the time that you arrived on scene to the time that you fired your shot, did you see Mr. Valdivia physically harm anybody?

A. No.

Q. Did you see Mr. Valdivia attempt to take a hostage during that time frame?

A. No.

Q. Did you see Mr. Valdivia attempt to strike anybody?

A. No.

Q. Did you see Mr. Valdivia attempt to grab anybody?

A. No.

(Exh. B, Meadows Depo 30:21-31:7, 32:3-21)

Q. Okay. Prior to the incident, had you ever met Mr. Valdivia before?

A. No.

Q. Did you have any information about his personal or family life?

A. No.

Q. Prior to your use of force, did you have any information about whether he had a criminal history?

A. No.

Q. Any specific information as to whether he was involved in a gang?

A. No.

(Exh. C, Cardoza Depo at 46:3-14.)

Additionally, having no information about Valdivia, it is clear that the Defendant Officers had no information about the Plaintiffs or Guardian *ad Litems*. Upon arrival at the scene, the Officer knew nothing about Valdivia, had never met him before, did not know who he was, and of course did not know anything about his family, the Plaintiffs.

Q. Had you ever met Mr. Valdivia before?

A. No.

Q. Prior to your use of deadly force, did you have any information about Mr. Valdivia's personal or family history?

A. No, sir.

(Exh. A, Sun Depo at 47:21-48:1)

Q. Had you ever met Mr. Valdivia prior to this incident personally?

A. I don't believe so.

**Q. Did you have any knowledge of Mr. Valdivia prior to your use of force?**
A. I don't believe so.
(Exh. B, Meadows Depo at 30:21-31:1)

**Q. Okay. Prior to the incident, had you ever met Mr. Valdivia before?**
A. No.
**Q. Did you have any information about his personal or family life?**
A. No.

(Exh, C, Cardoza Depo at 46:3-8). Clearly, Defendants had no information as to (**A**) Drug and Alcohol History; (**B**) Criminal History; (**C**) Gangs and Tattoos; (**D**) Personal History; (**E**) Medical History; or (**F**) After-Acquired Findings.

Additionally, there are three main categories of claimed damages here, (1) wrongful death damages, (2) survival damages, and (3) punitive damages. The primary focus for wrongful death damages here is the loss of Valdivia's love, companionship, conform, care, assistance, protection, affection, society, moral support, training, and guidance. (See Ninth Circuit Manual of Model Civil Jury Instructions, Instruction 5.1 and 5.2; CACI 3900, 3902, 3903A, 3905, 3921, 3922.) For survival damages, the jury will consider the nature and extent of Valdivia's injuries; the mental, physical, and emotional pain and suffering Valdivia experienced prior to his death, his loss of life, and his loss of enjoyment of life. (See 9th Cir. Mod Jury Inst. 5.1 and 5.2; CACI 3900, 3905A.) For punitive damages, the jury will consider the degree of reprehensibility of the Defendants' conduct, including whether the conduct that harmed the Valdivia and Plaintiffs was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. In addition, the jury will consider the relationship of any award of punitive damages to any actual harm inflicted on Valdivia and the Plaintiffs. (See 9th Cir. Mod Jury Inst. 5.5.)

The Plaintiffs' and guardian *ad litems'* depositions included hours of irrelevant personal history unknown to the Defendant Officers. None of this information reduces the value of Plaintiffs' loss of Valdivia's love, companionship, conform, care,

-8-    Case No.: 5:23-cv-01562-CBM-ACCV

assistance, protection, affection, society, moral support, training, and guidance, nor does it reduce the nature and extent of Valdivia's injuries and his loss of his life. Irrelevant information unknown, on the other hand, will confuse the issues, mislead the jury, certainly wasting time and risk needless presentation of cumulative, irrelevant, unrelated, and harassing personal information.

## III. INFORMATION UNKNOWN IS EXPRESSLY PROHIBITED

Under the Federal Rule of Evidence, evidence that does not tend to make the existence of any fact that is of consequence to the determination of the action more probable or less probable is not admissible. Rules 401, 402. Since the Supreme Court first elucidated the Fourth Amendment reasonableness standard in police shooting cases, lower courts and juries have been required to confine their inquiry to the information known to the officer at the time of the use of force. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The clarity of hindsight cannot provide the standard for judging the reasonableness of police decisions." *Tennessee v. Garner*, 471 U.S. 1, 26 (1985). Adhering to the parameters of what the officer knew at the time of the seizure in a Fourth Amendment reasonableness analysis is of the utmost importance because it maintains an essential balance and protects both officers and the public. *See Id.* at 25-26; *United States v. Place*, 462 U.S. 696, 703 (1983). After acquired information by investigators or during discovery cannot be considered. *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011); 9th Cir. Mod Jury Inst. 9.27.

In light of how the jury will be instructed and given great weight from the Supreme Court and Ninth Circuit authority on this issue, permitting the jury to learn about facts and circumstances that the Officers were not confronted with at the time they made the decision to use deadly force against Valdivia would be improper. Evidence of facts and circumstances unknown to the Officers at the time of their use of deadly force—including (**A**) Drug and Alcohol History; (**B**) Criminal History; (**C**) Gangs and Tattoos; (**D**) Personal History; (**E**) Medical History; or (**F**) After-Acquired Findings—is irrelevant and inadmissible because it was not part of the totality of the

circumstances facing the Officers at the time. Thus, any argument that this information is relevant fails. The Officers never met and had no information about Valdivia or his family regarding drug and alcohol use, intoxication, criminal history or past allegations thereof, wrongs or bad acts, or gang affiliation and certainly did not have access to after-acquired investigatory information at the time of their use of deadly force. Thus, testimony and exhibits related to the same did not play in the totality of circumstances confronting the Officers when using deadly force. *See Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 275 n.* (4th Cir. 2011) (noting that the plaintiff's "criminal history and possession of illegal narcotics...are irrelevant to the excessive force analysis because, as the troopers themselves acknowledge, they 'did not know' these facts 'at the time'"—even though the facts of the incident were profoundly disputed); *Palmquist v. Selvik*, 111 F.3d 1332, 1339 (7th Cir. 1997) ("[W]hen considering a charge of excessive force under the Fourth Amendment, evidence outside the time frame of the shooting is irrelevant and prejudicial."); *Wisler v. City of Fresno*, No. CVF 06-1694 LJO SMS, 2008 WL 2954179, at *5 (E.D. Cal. July 30, 2008) (excluding evidence of marijuana because it was not known by defendants).

Plaintiffs submit that evidence related to (**A**) Drug and Alcohol History; (**B**) Criminal History; (**C**) Gangs and Tattoos; (**D**) Personal History; (**E**) Medical History; and (**F**) After-Acquired Findings do not make any material fact related to damages any more or less probable in this matter. None of Valdivia's, Plaintiffs' or the guardian *ad litems'* criminal, personal or medical history, wrongs or bad acts, is even remotely relevant to funeral or burial expenses; or whether Plaintiffs lost Valdivia's love, companionship, conform, care, assistance, protection, affection, society, moral support, training, and guidance; or nature and extent of Valdivia's injuries, his mental, physical, and emotional pain and suffering experienced prior to death, loss of life, and his loss of enjoyment of life.

The only information the Defendant Officers had was from Dispatch and from

their own observations; none of which included drug or alcohol use, criminal, personal, or medical history, gangs or tattoos information. Therefore, this irrelevant unknown information from other sources was not part of the totality of the circumstances facing the Officers at the time of the Officers' use of excessive and unreasonable deadly force and should be excluded.

## IV.    THIS EVIDENCE IS IMPERMISSIBLE CHARACTER EVIDENCE

Under Rule 404, ((**A**) Drug and Alcohol History; (**B**) Criminal History; (**C**) Gangs and Tattoos; (**D**) Personal History; (**E**) Medical History; or (**F**) After-Acquired Findings, cannot be used to prove that Valdivia acted in some general "bad character" during the incident, or would somehow act in some bad character in the future if he would have lived. Rule 404(a)(1) specifically prohibits character evidence, stating that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See also Palmerin*, 794 F.2d at 1414 ("The federal rules bar the use of any circumstantial evidence that requires an inference of a person's character to make it relevant...."). Further, Ninth Circuit case law is clear that character evidence is normally not admissible in a civil rights case. *Gates v. Rivera*, 993 F.2d 697, 700 (9th Cir. 1993). Character must be "in issue," i.e., an essential element of a charge, claim, or defense, for character evidence to be admitted. *See* Adv. Comm. Notes, Fed. R. Evid. 405(b); *United States v. Mendoza–Prado*, 314 F.3d 1099, 1103 (9th Cir. 2002). <u>Character is not an essential element to this matter</u>. Admission of crimes, wrongs, or bad acts, gathered after the incident—poses a substantial danger that the jury will (1) improperly infer that the Officers knew this information, (2) will improperly infer that Valdivia had the propensity to act violently towards the Officers, or have some other form of propensity to act a certain way towards his family, and (3) will reach a verdict that does not reflect the circumstances facing the Officers at the time and/or minimize Plaintiffs' damages on improper basis.

The aforementioned evidence cannot be used to show Valdivia's character or

that he acted in conformity therewith. Admission of such evidence would be nothing more than a backdoor attempt to tarnish Valdivia's character and pollute the jury against him. This information has nothing to do with motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Rule 404(b)(2). Any such information cannot establish a habit, nor would any habit be relevant to this action. Rule 406. Further, it has no bearing on truthfulness. Rule 608. Thus, this impermissible character evidence should be excluded.

## V.     THIS INFORMATION UNKNOWN IS UNDULY PREJUDICIAL

It is axiomatic that evidence of drug or alcohol use, criminal history, gang inferences, "bad acts" or wrongs in personal history, has a strong potential for unfair prejudice. Meanwhile, its probative value in this case is, as explained above, negligible at best. Accordingly, this evidence should be excluded under Rule 403 of the Federal Rules of Evidence. Rule 403 excludes even relevant evidence "if its probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Unfair prejudice" means "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000); *Larez v. City of Los Angeles*, 946 F.2d 630, 642 n.5 (9th Cir. 1991) (noting that evidence is likely to inflame the jury if it tends to evoke a juror's anger or punitive impulses); *Jackson v. City of Gahanna*, 2011 WL 587283, at *5 (S.D. Ohio Feb. 9, 2011) ("Allowing evidence of the illegal items seized from the Plaintiff...would undermine the protections of the Fourth Amendment by permitting the jury to infer that the Plaintiff's culpability or status as a presumed drug dealer justify the Defendant's use of force against him.").

Plaintiffs submit that evidence of drugs, alcohol, crimes, wrongs, bad acts, violence allegations, contacts with law enforcement, gang allegations and tattoo inferences can only serve to unjustly inflame a jury's passions and prejudices against

-12-        Case No.: 5:23-cv-01562-CBM-ACCV

Valdivia. *See generally, Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) (granting a motion *in limine* in an excessive force case to exclude drug paraphernalia the officers discovered after the alleged excessive force occurred, because it was irrelevant and unduly prejudicial under Rule 403); *id.* at *1 ("In today's climate, any evidence as to a litigant's use of drugs has an obvious potential for being extraordinarily prejudicial—for creating the prospect of deflecting the factfinders' attention from the matters that are really at issue in the case to everyone's universally-shared concerns as to the problems that drug usage is creating for our society."); *Kunz v. DeFelice*, 538 F.3d 667, 676-77 (7th Cir. 2008) (affirming district court's ruling that barred "use of the word 'heroin,' because at the It is axiomatic that evidence of drug or alcohol use has a strong potential for unfair prejudice; *Wisler v. City of Fresno*, 2008 WL 2954179, *5 (E.D. Cal., July 22, 2008) (excluding evidence of marijuana use on grounds it was unduly prejudicial because not known by Defendants); *Wiersta v. Heffernan*, 789 F.2d 968, 972 (1st Cir. 1986) ("Convictions for possession of a syringe and hypodermic needle and possession of heroin … are unquestionably highly prejudicial."); *Wilson v. Union Pacific R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995) ("Evidence of a conviction for drug possession alone … can be highly prejudicial and arouse jury sentiment against a party-witness.").

The jury should not be misled to believe that Valdivia's unknown history is at issue—the jury should properly remain focused on the Officers' conduct. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1021 (9th Cir. 2014), cert. denied, 135 S. Ct. 1482 (2015) (<u>the issue is the conduct of the police, evidence regarding what a witness at the scene of the incident thought was irrelevant and unfairly prejudicial, when the witness never disclosed the thought to the police</u>).

Furthermore, "evidence of other crimes or wrong acts is not looked upon with favor and must be carefully scrutinized to determine probative value." *United States v. Aims Back*, 588 F.2d 1283, 1287 (9th Cir. 1986). Any testimony offered by the defense regarding some unrelated crimes, criminal allegations, drugs, alcohol, or gang

activity, will lack foundation and call for speculation. Fed. R. Evid. 602. Plaintiffs' concern is that Defendants will attempt to take every opportunity to insert gangs, arrests, crimes, violent acts, wrongs, bad acts or conduct, and drug detail having nothing to do with this incident and unknown to the Officers, into as many witnesses' testimony as possible to inflame the passions of the jury against Valdivia and Plaintiffs, depriving them of a fair trial. "[E]ven a murderer has a right to be free from [civil rights violations] and the correlative right to present his claim[s] of [violations] to a jury that has not been whipped into a frenzy of hatred." *Wilson v. City of Chicago*, 6 F.3d 1233, 1236 (7th Cir. 1993).

Evidence of (**A**) Drug and Alcohol History; (**B**) Criminal History; (**C**) Gangs and Tattoos; (**D**) Personal History; (**E**) Medical History; or (**F**) After-Acquired Findings can only serve to unjustly inflame a jury's passions and prejudices against Valdivia and Plaintiffs. *See Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016); *Gregory v. Oliver*, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) (granting motion *in limine* in an excessive force case to exclude drug paraphernalia officers discovered after the alleged excessive force occurred, because it was irrelevant and unduly prejudicial under Rule 403); *cf. Rascon v. Hardiman*, 803 F.2d 269, 278 (7th Cir. 1986) (affirming exclusion of excessive force decedent's mental health history, even though officers knew about his past suicide attempt and mental illness history and argued it justified their actions in subduing him, because of danger jury would conclude subduing was reasonable based on status rather than conduct at the time); *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1060-61 (N.D. Ill. 2009) ("The question of whether Plaintiff smoked a marijuana cigarette three hours before the incident is no more probative than whether the officers drank coffee before the incident. The introduction of expert testimony or testimony concerning facts unrelated to the physical encounter would merely divert the jury from the relevant inquiry.... Marijuana plays no part in this inquiry and the introduction of such evidence serves no purpose other than to make a general character attack on Plaintiff."). This

inflammatory evidence is likely to mislead and confuse the jury into reaching a verdict that reflects its consideration of unrelated crimes, wrongs, bad acts and post-incident investigatory hindsight evidence, as a reason justifying the use of force on an improper basis.

This inflammatory evidence is likely to mislead or confuse the jury into reaching a verdict that reflects its consideration of hindsight evidence, as a reason justifying the use of unreasonable force or limiting damages on an improper basis. *See Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1060-61 (N.D. Ill. 2009) ("The question of whether Plaintiff smoked a marijuana cigarette three hours before the incident is no more probative than whether the officers drank coffee before the incident. The introduction of expert testimony or testimony concerning facts unrelated to the physical encounter would merely divert the jury from the relevant inquiry.... Marijuana plays no part in this inquiry and the introduction of such evidence serves no purpose other than to make a general character attack on Plaintiff.").

The subject inflammatory evidence was not known by the Officers, including (**A**) Drug and Alcohol History; (**B**) Criminal History; (**C**) Gangs and Tattoos; (**D**) Personal History; (**E**) Medical History; and (**F**) After-Acquired Findings; thus, its probative value is minimal if there is any at all, and substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Admission of such evidence also poses a substantial risk of leading to "litigation of collateral issues, thereby creating a side issue which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); *Rockwell v. Yukins*, 341 F.3d 507, 513 (6th Cir. 2003) (*en banc*), *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007). The central factual dispute in this case is whether Valdivia posed an immediate threat of death or serious bodily injury to anyone when the Officers used excessive and unreasonable force against him shooting Valdivia in the head while he was unarmed, submissive, and lying on the ground.

Refuting the inferences of drugs, alcohol, crimes, bad acts, and gangs will necessitate several mini trials on collateral issues that have nothing to do with the central factual dispute, depriving Plaintiffs of a fair trial. *Blancha*, 972 F.2d at 516. To rebut Defendants' character evidence, Plaintiffs will be forced to call several witnesses to rehabilitate the jurors' view of him which will unduly consume this Court's and jury's time and resources. Accordingly, Plaintiffs respectfully request that the Court also exclude evidence and argument regarding information unknown under Rule 403.

**VI.    THIS EVIDENCE IS INADMISSIBLE HEARSAY**

Finally, the Court should exclude any and all documentary evidence in support of the aforementioned information unknown, including the post-incident reports, audio/video recordings of interviews, and mugshots as inadmissible hearsay, including multiple layers of hearsay without any exception under Federal Rule of Evidence 801, 802, and 805. Given that this present Motion pertains to information unknown to the Officers, the Officers cannot testify to this information based on personal knowledge. Fed. R. Evid. 602. Thus, to the extent that the information Defendants intend to introduce would be through admission of hearsay statements and documents, it should also be excluded. Investigative documents from CPD officer reports, laboratory reports, Valdivia's criminal history, and DOJ reports related to this subject area were all made from out of this court, and Defendant impermissibly intends to offer them for the truth of the matter asserted.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request an order excluding any evidence, witness, or argument at trial as to (**A**) Drug and Alcohol History; (**B**) Criminal History; (**C**) Gangs and Tattoos; (**D**) Personal History; (**E**) Medical History; or (**F**) After-Acquired Findings.

Respectfully submitted,

DATED: April 7, 2026                    **LAW OFFICES OF DALE K. GALIPO**

By:    _/s/        Marcel F. Sincich_
       Dale K. Galipo
       Marcel F. Sincich
       *Attorneys for Plaintiff*

PLAINTIFFS' MOTION *IN LIMINE* NO. 1 – TO EXCLUDE INFORMATION UNKNOWN

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs certifies that this brief contains 5,375 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 7, 2026

**LAW OFFICES OF DALE K. GALIPO**

By:    /s/        *Marcel F. Sincich*
Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiffs*

## DECLARATION OF MARCEL F. SINCICH

I, Marcel F. Sincich, hereby declare as follows:

I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California. I am one of the attorneys of record for the Plaintiffs.  I make this declaration in support of Plaintiff's Motion *in Limine* No. 1 to Exclude Information Unknown. I have personal knowledge of the facts contained herein and could testify competently thereto if called.

1.     Attached hereto as "**Exhibit A**" is a true and correct copy of relevant portions of Defendant Officer CHENG-WEI (BILLY) SUN's March 6, 2025 deposition testimony ("**Exh. A, Sun Depo**").

2.     Attached hereto as "**Exhibit B**" is a true and correct copy of relevant portions of Defendant Officer DAVID MEADOWS's March 7, 2025 deposition testimony ("**Exh. B, Meadows Depo**").

3.     Attached hereto as "**Exhibit C**" is a true and correct copy of relevant portions of Defendant Officer VANESSA CARDOZA's March 6, 2025 deposition testimony ("**Exh. C, Cardoza Depo**").

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 7th day of April, 2026.

_____

Marcel F. Sincich

-19-     Case No.: 5:23-cv-01562-CBM-ACCV