**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

E.V. and X.V., minors by and through their guardian ad litem, Karla Juarez; D.V., a minor, by and through his guardian ad litem, Elias Valdivia; individually and as successors-in-interest to Daniel Luis Valdivia, deceased; JESSICA VALDIVIA; LUIS VALDIVIA JR., individually,

Plaintiffs,

vs.

CITY OF COVINA; VANESSA CARDOZA; DAVID MEADOWS; BILLY SUN; DOES 1-10, inclusive,

Defendants.

Case No.: **5:23-cv-01562-CBM-ACCV**

[*Honorable Consuelo B. Marshall*]
Magistrate Judge Angela C. C. Viramontes

**PLAINTIFFS' BRIEF RE. EFFECT OF NINTH CIRCUIT MEMORANDUM ON PLAINTIFFS' STATE LAW CLAIMS**

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. PLAINTIFFS' STATE CLAIMS MUST SURVIVE .......... 3

A. California Law is Broader and Legally Distinct .......... 3

1. The governing standards between Negligence and the Fourth Amendment are different in kind, not just in scope .......... 3

2. California Negligence law reaches the officers' pre-shooting conduct across the whole encounter. .......... 4

3. Penal Code § 835a and CACI No. 441 codify a state standard broader than the federal inquiry. .......... 4

4. Plaintiffs recognize the grey area related to battery. .......... 10

B. Ninth Circuit Reasonableness Finding Does Not Collaterally Estop Plaintiffs State Law Claims .......... 11

1. Issue preclusion requires an identical issue that was actually and necessarily decided. .......... 11

2. Alves is directly on point and defeats the foreclosure argument. .......... 12

3. Hernandez does not require a different result and should be distinguished. .......... 12

III. DISMISSAL OF FEDERAL CLAIMS DOES NOT COMPEL DISMISSAL OF STATE CLAIMS .......... 13

IV. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

Cases


*Alves v. Cnty. of Riverside*, 135 F.4th 1161 (9th Cir. 2025) .......... passim

*Brown v. Ransweiler*, 171 Cal. App. 4th 516 (2009) .......... 11

*Grudt v. City of Los Angeles*, 2 Cal. 3d 575 (1970) .......... 4

*Handy v. Jones*, F.4th, 2026 WL 2716416, at *2-7 (9th Cir. 2026) .......... 5

*Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622 (2013) .......... 3, 4

*Hernandez v. City of Pomona*, 46 Cal. 4th 501 (2009) .......... 3, 12, 13

*Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159 (9th Cir. 2013) .......... 1

*Johnson v. Jones*, 515 U.S. 304 (1995) .......... 2

*Tabares v. City of Huntington Beach*, 988 F.3d 1119 (9th Cir. 2021) (*citing Hayes*, 57 Cal 4th 622) .......... 3, 4, 13


Statutes


28 U.S.C. § 1367(c)(3) .......... 13

28 U.S.C. §1367(c) .......... 2

California Penal Code §835a, as amended in 2020 by AB 392 .......... 2, 4


Other Authorities


CACI No. 1305B .......... 2, 5, 10

CACI No. 441 .......... 5, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights action arises from the unreasonable shooting of Decedent Daniel Valdivia by Officers Vanessa Cardoza, Cheng Sun, and David Meadows, on April 9, 2022. Viewing the evidence in the light most favorable to Plaintiffs, Officers rapidly approached Valdivia in a parking lot, failed to give a warning, failed to de-escalate, and failed to attempt less-intrusive alternatives; then Officers repeatedly shot Valdivia after he complied with several commands, put his hands up, got on the ground, and when he was not resisting, not fleeing, and had visibly empty hands—when he did not pose an immediate threat of death or serious bodily injury. This Court found in favor of Plaintiffs and denied Defendants Motion for Summary Judgement after properly construing all facts in the light most favorable to Plaintiffs as the non-moving party. (Doc. 66.) This Court found that there was a genuine dispute in the record especially given that Plaintiffs submitted objective including "body cam footage showing that shots were fired at Decedent by officers after Decedent's gun was already on the floor in front of Decedent." (Doc. 66 at 5.) Defendants filed their interlocutory appeal regarding the federal claims on the basis that qualified immunity is immediately appealable. (Doc. 71; App. Dkt. 11.1.) With only two pages of analysis, the Ninth Circuit reversed and remanded regarding the federal law claims only and dismissed the appeal regarding the City. (Doc. 99-2; App. Dkt. 38.1.)

In their status report, Plaintiffs requested that this Court exercise its discretion to retain supplemental jurisdiction over Plaintiffs' remaining state law claims and permit this action to proceed before this Court. (Doc. 103.) The Ninth Circuit's memorandum has no effect on Plaintiffs' state law claims for several reasons. Plaintiffs state law claims are <u>not subject to qualified immunity</u> (*Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013)), <u>survived summary judgment</u> (Doc. 66), and <u>were not immediately appealable</u> (*Johnson v. Jones*, 515

U.S. 304, 309-13 (1995)). Further, the Ninth Circuit did not address any issues of state law—the questions it answered were all premised on qualified immunity—and the only ruling the Ninth Circuit made that relates to Plaintiffs' state law claims was to dismiss the appeal regarding Defendant City thereby communicating that it did not reach any state law issues.

Finally, California law governing an officer's use of deadly force is broader than federal law. The factors and analysis are different, and these claims are analyzed under separate standards, such that the Ninth Circuit's ruling does not dispose of them. For negligence, California's standard measures the officer's conduct against a duty of reasonable care that considers the totality of the circumstances across the entire encounter, including pre-shooting tactics. On the other hand, the federal claims focused more narrowly on the moment the force was used. Given that the claims are governed by different standards, the Ninth Circuit's finding that the force was reasonable under the Fourth Amendment is not an identical issue and issue preclusion does not apply. *See Alves v. Cnty. of Riverside*, 135 F.4th 1161, 1166 (9th Cir. 2025).

For battery, recent statutory changes in California show that claims challenging use of deadly force by law enforcement officers (including battery and negligence) are subject to a stricter standard than similar claims brought under the Fourth Amendment. Although the Ninth Circuit has considered federal excessive force and state law battery as coextensive, it and other courts have not yet addressed the "necessary" requirement for battery in their analysis. *See id*. Specifically, California Penal Code §835a, as amended in 2020 by AB 392, and upon which CACI No. 1305B is based, now defines the reasonableness based on the totality of the circumstances as force that is "necessary."

Even if the Court were to conclude the Ninth Circuit's ruling has some effect on Plaintiffs' state law claims, dismissal of the federal claims do not compel dismissal of the state law claims, and this Court retains discretion to exercise supplemental jurisdiction over those claims under 28 U.S.C. §1367(c).

## II. PLAINTIFFS' STATE CLAIMS MUST SURVIVE

### A. California Law is Broader and Legally Distinct

*1. The governing standards between Negligence and the Fourth Amendment are different in kind, not just in scope.*

The California Supreme Court has squarely held that the two inquiries of reasonableness (under federal law and state negligence law) are not the same. In *Hayes v. Cnty. of San Diego*, the Court explained that "[t]he Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law, and negligent acts do not incur constitutional liability," and that state negligence law, which considers the totality of the circumstances surrounding any use of deadly force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used. *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 638-39 (2013) (citations omitted); *Alves v. Cnty. of Riverside*, 135 F.4th 1161, 1164 (9th Cir. 2025). The Ninth Circuit recognized that the *Hayes* Court cautioned that its prior decision in *Hernandez v. City of Pomona*, 46 Cal. 4th 501 (2009) "should not be read to mean that the federal and state standards are co-extensive simply because both require consideration of the 'totality of the circumstances.'" *Alves*, 135 F.4th at 1172.

The Ninth Circuit has repeatedly recognized this divergence. In *Tabares v. City of Huntington Beach*, the Court described California negligence law and the Fourth Amendment as "two distinct legal frameworks," reaffirming that "[i]ndividual States may surely construe their own laws as imposing more stringent constraints on police conduct than does the Federal Constitution" and that "the California Supreme Court has held that California negligence law 'is broader than federal Fourth Amendment law.'" *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1122 (9th Cir. 2021) (*citing Hayes*, 57 Cal 4th 622).

/ / /

2. *California Negligence law reaches the officers' pre-shooting conduct across the whole encounter.*

Under California law, an officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of shooting might be reasonable in isolation, while "[f]ederal law, however, generally focuses on the tactical conduct at the time of shooting." *Hayes*, 57 Cal. 4th at 630; *Tabares*, 988 F.3d at 1125. *Hayes* also traces this rule to *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 587 (1970), where a shooting that appeared justified if examined in isolation could still support negligence liability because "the totality of the circumstances, including the preshooting conduct of the officers, might persuade a jury to find the shooting negligent." *Hayes*, 57 Cal. 4th 622 at 629; *Alves*, 135 F.4th at 1171. For Negligence, the officer's "duty to act reasonably when using deadly force extends to preshooting conduct." *Hayes*, 57 Cal. 4th at 632.

Critically, the difference is one of standard, not merely temporal scope. In *Alves*, the Ninth Circuit rejected the defense argument that the only difference between a federal excessive force claim and a California negligence claim is with respect to an officer's tactical conduct and decisions preceding the use of force. *Alves*, 135 F.4th 1172. The court held that a factfinder "could view those circumstances differently when determining whether a law enforcement officer's use of deadly force was unreasonable" under each claim, and that *Hayes* is not confined to pre-force conduct. *Id*.

3. *Penal Code § 835a and CACI No. 441 codify a state standard broader than the federal inquiry.*

The state law standard the jury will apply under both battery and negligence is more demanding than the federal test the Ninth Circuit applied. As amended by AB 392, Penal Code § 835a declares that "every person has a right to be free from excessive use of force" and that officers are to "use deadly force only when necessary in defense of human life." Cal. Pen. Code §835a(a). Deadly force is justified "only

when the officer reasonably believes, based on the totality of the circumstances, that such force is necessary" to defend against an imminent threat of death or serious bodily injury. *Id*. at §835a(c). Further, the statute expressly defines "[t]otality of the circumstances" to mean "all facts known to the peace officer at the time, including the conduct of the officer and the subject leading up to the use of deadly force." *Id*. at §835a(e)(3). Additionally, the statue expressly defines what it means for a threat of death or serious bodily injury to be "imminent" in a manner federal law does not. California law requires (for both battery and negligence), a deadly threat is only imminent if "a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person." *Id*. at §835a(e)(2). This is a patently stricter standard than the Fourth Amendment standard. *See, e.g.*, *Handy v. Jones*, F.4th , 2026 WL 2716416, at *2-7 (9th Cir. 2026) (concluding that individual who "belligerently wav[ed] his shotgun around" overhead posed an imminent threat under Fourth Amendment because he could have suddenly "fired the shotgun from the hip," despite never pointing gun or taking any action indicating he was about to do so). Section 835a also clearly specifies that "An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed." Pen. Code. §835a(e). The statute thus also codifies the very feature that makes the state standard broader — the officer's own pre-force conduct is part of the reasonableness inquiry.

The Judicial Council of California Advisory Committee on Civil Jury Instructions ("CACI") Nos. 441 and 1305B embodies this standard for the jury. As *Alves* described the parallel instruction, the negligence charge "allowed the jury to consider more broadly 'all facts known to a reasonable officer at the time,' including the decedent's and the deputies' conduct 'leading up to the use of force'," whereas the Fourth Amendment instruction focused more attention on the moment when force

was applied. *Alves*, 135 F.4th at 1174. Nearly same standard now applies for battery and negligence while Pen. Code §835a applies equally under CACI Nos. 441 and 1305B:

> **441. Negligent Use of Deadly Force by Peace Officer—Essential Factual Elements**
>
> **A peace officer may use deadly force only when necessary in defense of human life. [*Name of plaintiff*] claims that [*name of defendant*] was negligent in using deadly force to [arrest/detain/ [,/or] prevent escape of/ [,/or] overcome resistance to] [him/her/*nonbinary pronoun*/*name of decedent*]. To establish this claim, [*name of plaintiff*] must prove all of the following:**
>
> **1. That [*name of defendant*] was a peace officer;**
>
> **2.** That [*name of defendant*] **used deadly force on [*name of plaintiff/decedent*];**
>
> **3. That [*name of defendant*]'s use of deadly force was not necessary to defend human life;**
>
> **4. That [*name of plaintiff/decedent*] was [harmed/killed]; and**
>
> **5. That [*name of defendant*]'s use of deadly force was a substantial factor in causing [*name of plaintiff/decedent*]'s [harm/death].**
>
> **[*Name of defendant*]'s use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by [*name of defendant*] at the time, that deadly force was necessary [either]:**
>
> **[to defend against an imminent threat of death or serious bodily injury to [*name of defendant*] [and/or] [another person]][; or/.]]**
>
> **[to apprehend a fleeing person for a felony, when all of the following conditions are present:**
>
> **i. The felony threatened or resulted in death or serious bodily injury to another;**
>
> **ii. [*Name of defendant*] reasonably believed that the person fleeing would cause death or serious**

**bodily injury to another unless immediately apprehended; and**

**iii.** **[***Name of defendant***] made reasonable efforts to identify [himself/herself/***nonbinary pronoun***] as a peace officer and to warn that deadly force may be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.]**

**[A peace officer must not use deadly force against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.]**

**[A person being [arrested/detained] has a duty not to use force to resist a peace officer unless the peace officer is using unreasonable force.]**

**["Deadly force" is force that creates a substantial risk of causing death or serious bodily injury. It is not limited to the discharge of a firearm.]**

**A threat of death or serious bodily injury is "imminent" if, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or to another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.**

**"Totality of the circumstances" means all facts known to or perceived by the peace officer at the time, including the conduct of [***name of defendant***] and [***name of plaintiff/decedent***] leading up to the use of deadly force. In determining whether [***name of defendant***]'s use of deadly force was necessary in defense of human life, you must consider [***name of defendant***]'s tactical conduct and decisions before using deadly force on [***name of plaintiff/decedent***] and whether [***name of defendant***] used other available resources and techniques as [an] alternative[s] to deadly force, if it was reasonably safe and feasible to an objectively reasonable officer.**

**[A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by using objectively reasonable force to [arrest/detain/ [,/or] prevent escape/[,/or] overcome resistance].]**

CACI No. 441.

**<u>1305B. Battery by Peace Officer (Deadly Force)—Essential Factual Elements</u>**

**A peace officer may use deadly force only when necessary in defense of human life. [*Name of plaintiff*] claims that [*name of defendant*] unnecessarily used deadly force on [him/her/*nonbinary pronoun*/*name of decedent*]. To establish this claim, [*name of plaintiff*] must prove all of the following:**

1. **That [*name of defendant*] intentionally touched [*name of plaintiff*/*decedent*] [or caused [*name of plaintiff*/*decedent*] to be touched];**
2. **That [*name of defendant*] used deadly force on [*name of plaintiff*/*decedent*];**
3. **That [*name of defendant*]'s use of deadly force was not necessary to defend human life;**
4. **That [*name of plaintiff*/*decedent*] was [harmed/killed]; and**
5. **That [*name of defendant*]'s use of deadly force was a substantial factor in causing [*name of plaintiff*/*decedent*]'s [harm/death].**

**[*Name of defendant*]'s use of deadly force was necessary to defend human life only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by [*name of defendant*] at the time, that deadly force was necessary [*insert one or both of the following:*]**

**[to defend against an imminent threat of death or serious bodily harm to [*name of defendant*] [or] [to another person][; or/.]]**

**[to apprehend a fleeing person for a felony, when all of the following conditions are present:**

**i. The felony threatened or resulted in death or serious bodily injury to another;**

**ii. [*Name of defendant*] reasonably believed that the person fleeing would cause death or serious bodily injury to another unless immediately apprehended; and**

**iii. If practical under the circumstances, [*name of defendant*] made reasonable efforts to identify [himself/herself/*nonbinary pronoun*] as a peace officer and to warn that deadly force would be used, unless the officer had objectively reasonable grounds to believe the person is aware of those facts.]**

**[A peace officer must not use deadly force against persons based only on the danger those persons pose to themselves, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the peace officer or to another person.]**

**[A person being [arrested/detained] has a duty not to use force to resist the peace officer unless the peace officer is using unreasonable force.]**

**"Deadly force" means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm.**

**A threat of death or serious bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed.**

**"Totality of the circumstances" means all facts known to the peace officer at the time, including the conduct of [*name of defendant*] and [*name of plaintiff/decedent*] leading up to the use of deadly force. In determining whether [*name of defendant*]'s use of deadly force was necessary in defense of human life, you must consider [*name of***

> ***defendant*]'s tactical conduct and decisions before using deadly force on [*name of plaintiff/decedent*] and whether [*name of defendant*] used other available resources and techniques as [an] alternative[s] to deadly force, if it was reasonably safe and feasible to do so. [You must also consider whether [*name of defendant*] knew or had reason to know that the person against whom [he/she/*nonbinary pronoun*] used force was suffering from a physical, mental health, developmental, or intellectual disability [that may have affected the person's ability to understand or comply with commands from the officer[s]].]**
>
> **[A peace officer who makes or attempts to make an arrest does not have to retreat or stop because the person being arrested is resisting or threatening to resist. Tactical repositioning or other deescalation tactics are not retreat. A peace officer does not lose the right to self-defense by use of objectively reasonable force to effect the arrest or to prevent escape or to overcome resistance. A peace officer does, however, have a duty to use reasonable tactical repositioning or other deescalation tactics.]**

CACI No. 1305B.

The differences between CACI 441 and 1305B are minor. For negligence, Plaintiffs must prove negligence in using force and the additional element that the defendant was a peace officer, whereas for battery, Plaintiffs must prove unnecessary deadly force with the additional element that the force was intentional. The instructions are otherwise nearly identical as they properly match §835a and are distinguished from the Ninth Circuit Model Jury Instruction No. 9.27.

Because the battery and negligence claims will be measured against this broader "necessary" totality of the circumstances standard, the Ninth Circuit's conclusion that the shooting was constitutionally reasonable at the moment of force does not answer whether the officers breached their broader duty of reasonable care under §835a and CACI Nos. 441 and 1305B.

*4. Plaintiffs recognize the grey area related to battery.*

Since the amended §835a was put into law, courts have not specifically addressed the amendment's effect as applied to battery as clearly as to negligence.

California courts have historically treated the battery claim as "a counterpart to a federal claim of excessive use of force," in which "a plaintiff must prove that the peace officer's use of force was unreasonable," analyzed "under the reasonableness standard of the Fourth Amendment." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009). However, this is no longer the case, and cases that have treated these standards as coextensive have not considered the effect of the amended §835a on the standard for battery claims based on deadly force.

The reasonableness element of a battery claim is defined by state law pursuant to Penal Code §835a and shown in CACI No. 1305B (above), not by the Fourth Amendment. Battery requires the plaintiff to prove that the officer used "unnecessary force," which is an element of the tort the plaintiff must establish. Section 835a now supplies that content, and it authorizes deadly force "only when necessary in defense of human life" under a totality of the circumstances that expressly "includ[es] the conduct of the officer and the subject leading up to the use of deadly force." Pen. Code §835a. The coextensiveness cases like *Brown* and *Edson* were decided before AB 392 and did not address whether the amended statute imposes a standard more protective than the Fourth Amendment. To the extent §835a and CACI No. 1305B now measure battery against the same broader "necessary" standard, just as it is applied to negligence, the constitutional finding would not conclusively resolve battery either. *But see Alves*, 135 F.4th 1161 (though does not address the necessary requirement).

### B. Ninth Circuit Reasonableness Finding Does Not Collaterally Estop Plaintiffs State Law Claims

#### 1. *Issue preclusion requires an identical issue that was actually and necessarily decided.*

Under California law, issue preclusion applies only if, among other requirements, "the issue sought to be precluded from relitigation …[is] identical to that decided in a former proceeding" and was "actually litigated" and "necessarily

decided." *Hernandez*, 46 Cal. 4th at 511. The "identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings." *Id*. at 512. Because the state negligence and battery standards are broader than the Fourth Amendment standard, the reasonableness question resolved by the Ninth Circuit is not the identical issue presented by Plaintiffs state claims.

*2. Alves is directly on point and defeats the foreclosure argument.*

The *Alves* Court confronted the precise contention the defense will make here — that a no-excessive-force finding forecloses a negligence finding — and rejected it. For the same reasons, and for the reasons addressed above explaining the distinction between California battery and the Fourth Amendment, Plaintiffs contend the ruling should also apply to battery. In *Alves*, a jury "returned a mixed verdict finding that the deputies had not used excessive force…under the Fourth Amendment but had acted negligently under California law," and the Ninth Circuit held the verdicts were reconcilable "because the legal standard governing the reasonableness of the deputies" conduct" differs between the two claims. *Alves*, 135 F.4th at 1164. "California law, which considers the totality of the circumstances surrounding any use of deadly force, is broader than federal Fourth Amendment law, so the jury was permitted to evaluate the totality of the circumstances for each claim in distinct ways." *Id*. If a jury may return verdicts on these two claims that were not inconsistent with each other, then a finding on one cannot preclude the other. *See also Tabares*, 988 F.3d at 1126-27.

*3. Hernandez does not require a different result and should be distinguished.*

The defense will likely rely on *Hernandez*, where the California Supreme Court applied issue preclusion to bar a wrongful-death negligence theory after a federal no-excessive-force finding. *Hernandez*, 46 Cal. 4th at 517-20. Three points distinguish it. First, *Hernandez* predates and does not account for *Hayes*. The *Alves* Court expressly explained that *Hayes* later clarified that *Hernandez* "should not be

read to mean that the federal and state standards are co-extensive simply because both require consideration of the 'totality of the circumstances.'" *Alves*, 135 F.4th at 1172.

Second, *Hernandez*'s own reasoning limits its preclusive reach. The Court held that the federal finding "implies no more than a finding that the shooting itself was reasonable," and that "neither the jury nor the federal court made a finding as to whether all of the officers['] preshooting conduct was itself independently reasonable, i.e., not negligent." *Hernandez*, 46 Cal. 4th at 517-18. The broader pre-shooting conduct question — the heart of the California negligence standard and Plaintiffs contend pursuant to §835a and CACI 1305B the heart of the battery standard — was therefore not actually litigated "or" necessarily decided in the federal proceeding. The Ninth Circuit simply did not review briefs nor hear argument on state law matters.

Third, *Hernandez* ultimately barred the pre-shooting theories not on preclusion grounds but on the specific "conceded facts" of that case and on statutory immunities for vehicular pursuit that have no application here. *Hernandez*, 46 Cal. 4th at 519-20. Its holding was fact-bound, not a categorical rule that a Fourth Amendment ruling defeats a California negligence claim.

The Ninth Circuit decided only Fourth Amendment reasonableness, not the broader state-law questions. No final determination has been made under California's standards.

## III. <u>DISMISSAL OF FEDERAL CLAIMS DOES NOT COMPEL DISMISSAL OF STATE CLAIMS</u>

Even if the court had doubts about the merits, the disposition of the federal claim does not dictate the fate of the state claims. Supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) is discretionary. As *Tabares*, 988 F.3d at 1131, n. 11, confirmed, a district court is "free on remand to decline to exercise supplemental jurisdiction over the state-law claim and allow plaintiff to bring it in state court." (Citation omitted, cleaned up.) The elimination of the Fourth Amendment claim thus does not

require dismissal of the battery and negligence claims; the Court may retain and adjudicate them or permit Plaintiffs to pursue them in state court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs contend that their state law claims survive and respectfully request the Court exercise its discretion to retain supplemental jurisdiction over Plaintiffs' remaining state law claims and permit this action to proceed before this Court.

Respectfully Submitted,

DATED: September 21, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Marcel F. Sincich*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorney for Plaintiffs*

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief is less than 15 pages and contains 4,282 words, which complies with the page limit set by this Court's Order.

DATED: September 21, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Marcel F. Sincich*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorney for Plaintiffs*